**Thomas F. Ranieri, Sr.**[1]
Ranieri & Associates, PLC
33 Cedarside Court
Front Royal, Virginia 22630
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

| | | |
|---|---|---|
| **Enrique Tarrio**, | ) | |
| | ) | |
| **Zachary Rehl**, | ) | |
| | ) | |
| **Ethan Nordean**, | ) | |
| | ) | |
| **Joseph Biggs**, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| **Dominic Pezzola** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | **Case No.:** 6:25-cv-998 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **United States of America**, | ) | |
| | ) | |
| **FBI Special Agent Nicole Miller**, | ) | |
| *sued in her individual capacity,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **John Doe Nos. I-X**, | ) | |
| *Unknown employees of the FBI and DOJ,* | ) | |
| *sued in their individual capacities,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

---

[1.] Application for admission pro hac vice pending.

**COME NOW** Plaintiffs Enrique Tarrio (hereinafter "Tarrio"), Zachery Rehl (hereinafter "Rehl"), Ethan Nordean (hereinafter "Nordean"), Joseph Biggs (hereinafter "Biggs"), and Dominic Pezzola (hereinafter "Pezzola") (collectively, hereinafter "J6 Defendants" or "Plaintiffs"), by and through undersigned counsel, and pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388, 397 (1971), against the United States of America, Federal Bureau of Investigation Special Agent Nicole Miller, and John and/or Jane Doe Nos. 1-X (collectively, hereinafter "Defendants"), and in support of same, respectfully submits the following:

**INTRODUCTION**

1.     The Plaintiffs bring this suit to seek redress for the multiple violations of their constitutional rights perpetrated by the Department of Justice and the Federal Bureau of Investigation and their agents in their political prosecution of the Plaintiffs for their alleged participation in the planning of the events of January 6, 2021.

2.     What follows is a parade of horribles: egregious and systemic abuse of the legal system and the United States Constitution to punish and oppress political allies of President Trump, by any and all means necessary, legal, or illegal. Through the use of evidence tampering, witness intimidation, violations of attorney-client privilege, and placing spies to report on trial strategy, the government got its fondest wish of imprisoning the J6 Defendants, the modern equivalent of placing one's enemies' heads on a spike outside the town wall as a warning to any who would think to challenge the status quo.

3.     In recognition of the corrupt and politically motivated persecution and imprisonment of the Plaintiffs, the Trump administration has granted pardons and/or commuted the sentences of the Plaintiffs. Ex. 1 –Pardon Order.

4. Now that the Plaintiffs are vindicated, free, and able to once again exercise their rights as American citizens, they bring this action against their tormentors for violations of their Fourth, Fifth, and Sixth Amendment Rights under *Bivens v. Six Unknown Agents*, 403 U.S. 388, 397 (1971) as well as the common law tort of malicious prosecution and false imprisonment under 28 U.S.C. § 1331.

PARTIES

5. Enrique Tarrio (hereinafter "Tarrio") is a private individual and a citizen of the United States of America. He was also the *de facto* chairman of the Proud Boys patriotic activist organization for young men. He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently pardoned by the Trump administration after the investigation and prosecution were revealed to be a political prosecution and show trial. Tarrio was prosecuted together with the other Plaintiffs as joint criminal Defendants. Ex. 1.

6. Zachery Rehl (hereinafter "Rehl") is a private individual and a citizen of the United States of America. He is also one of the managing members of the Proud Boys patriotic activist organization for young men. He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be a political prosecution show trial. Rehl was prosecuted together with the other Plaintiffs as joint criminal Defendants. *Id.*

7. Ethan Nordean (hereinafter "Nordean") is a private individual and a citizen of the United States of America. He is also one of the managing members of the Proud Boys patriotic activist organization for young men. He was arrested by the FBI and prosecuted by the DOJ

ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be a political prosecution show trial. Nordean was prosecuted together with the other Plaintiffs as joint criminal Defendants. *Id.*

8.      Joseph Biggs (hereinafter "Biggs") is a private individual and a citizen of the United States of America. He is also one of the managing members of the Proud Boys patriotic activist organization for young men. He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be a political prosecution show trial. Biggs was prosecuted together with the other Plaintiffs as joint criminal Defendants. *Id.*

9.      Dominic Pezzola (hereinafter "Pezzola") is a private individual and a citizen of the United States of America. He is also a member of the Proud Boys patriotic activist organization for young men. He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be a political prosecution show trial. Pezzola was prosecuted together with the other Plaintiffs as joint criminal Defendants. *Id.*

10.     The Proud Boys are an organization of patriotic political activists dedicated to preserving and promoting Western Civilization, in general, and American society, in particular. The Proud Boys organization and its members have been subject to systemic harassment and mischaracterization by far-left wing organizations such as the Southern Poverty Law Center and the Anti-Defamation League, and politically biased state and federal prosecutors.

11.     Lieutenant Shane Lamond (hereinafter "Lt. Lamond") was a Lieutenant and a twenty-two-year veteran with the Washington, District of Columbia Metropolitan Police Department who was a witness to events relevant and exculpatory to the Plaintiffs, and was to be a star witness for the criminal defense. SA No. 1 and No. 2 visited Lt. Lamond soon before he was set to testify on behalf of the Plaintiffs, who threatened him with obstruction of justice charges if he did not refuse to testify.

12.     Paid Confidential Informant Jen Loh (hereinafter "CI Loh") was a paid informant working on behalf of the FBI to infiltrate the Proud Boys network and gain access to information regarding the trial communications and strategies of the Plaintiff's defense attorneys, and communicated that privileged information back to the FBI and DOJ to assist the DOJ in its case against the Defendants.

13.     The Department of Justice (hereinafter "DOJ") is an executive branch department of the United States government that enforces and prosecutes violations of federal law and supervises the FBI. It is the agency responsible for the investigation and persecution of the Plaintiffs.

14.     The Federal Bureau of Investigation (hereinafter "FBI") is a federal law enforcement agency and is a Bureau located within and under the authority of the Department of Justice.

15.     FBI Special Agent Nicole Miller (hereinafter "SA Miller") is a special agent involved with the investigation and prosecution of the Plaintiffs, who, out of a personal animus against the Plaintiffs, and in coordination with other employees of the FBI and DOJ, destroyed exculpatory evidence and altered evidence to make it incriminating to the Plaintiffs. SA Miller also abused her position and authority to harass, persecute, and otherwise harm the Plaintiffs and

their families through her attempts to "de-bank" the Plaintiffs from their financial institutions, strangle their businesses, and cancel their veteran's benefits to cause the Plaintiffs families economic hardship, both to punish the Plaintiffs and to pressure them to comply with the government's demands. Ex. 2 – Miller's Cross-Examination.

16.     John and/or Jane Doe Nos. I-X (hereinafter "Doe 1", "Doe 2", etc., as needed, collectively, "Does I-X") are agents, prosecutors, and/or employees of the FBI and DOJ who violated the Plaintiffs' constitutional rights.

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331and 28 U.S.C. § 1367.

18.     Plaintiffs bring their Fourth Amendment claims for compensatory damages under *Bivens v. Six Unknown Agents*, 403 U.S. 388, 397 (1971), seeking an award of damages for acts undertaken by the Defendants in violation of their Fourth Amendment rights.

19.     Plaintiffs bring their Fifth Amendment claims for compensatory damages under *Bivens*, seeking an award of damages for acts undertaken by the Defendants in violation of their Fifth Amendment rights.

20.     Plaintiffs bring their Sixth Amendment claims for compensatory damages under *Bivens*, seeking an award of damages for acts undertaken by the Defendants in violation of their Sixth Amendment rights.

21.     This Court may exercise personal jurisdiction over the Defendants under 28 U.S.C. § 1391(e), as on Plaintiff lives in the Middle District of Florida, the harm was intended to befall Plaintiff in this District, and damages to the Plaintiff have accrued in this District, as well as under FLA. STAT. § 48.193 for the state law case of action.

22.     Venue is properly within this District under 28 U.S.C. § 1402 because it is where the Plaintiff resides and where actions undertaken by the government and the Plaintiff occurred.

STATEMENT OF FACTS

23.     All preceding paragraphs are incorporated by reference herein.

24.     On January 6, 2021, there was an incursion into the Capitol building by elements of the federal government,[2] leftist agitators,[3] and Trump supporters, cynically dubbed an insurrection[4] (hereinafter "January 6").

25.     Members of the Proud Boys, a patriotic activist organization, were present at January 6, including all Plaintiffs but Tarrio, but did not engage in violence or provocation of the crowd.

26.     The Plaintiffs, however, spoke with people who were at the Capitol before, during, and after January 6.

27.     A document was also planted in Tarrio's inbox, which the government at trial admitted he did not compose, open, read, or transmit to anyone, and which contained plans for a peaceful act of civil disobedience in protest of the election of President Joseph Biden in which the participants would stage a "sit-in" at a building adjacent to the Capitol Building, known as the "1776 returns" document (hereinafter the "1776 Doc."). Ex. 3 – 1776 Doc.

---

[2]     "DOJ watchdog says FBI had 26 confidential sources in DC for Jan. 6 riot -- but no evidence of undercover agents" Ryan King, NEW YORK POST, https://nypost.com/2024/12/12/us-news/doj-watchdog-says-fbi-had-26-confidential-sources-in-dc-for-jan-6-riot-but-no-evidence-of-undercover-agents/ (last accessed May 10, 2025).
[3]     "Who is John Sullivan? Left-wing Activist Charged in Capitol Riot" Ewan Palmer, NEWSWEEK, https://www.newsweek.com/john-sullivan-capitol-attack-leftwing-antifa-1561898 (last accessed May 10, 2025.)
[4]     "Key facts to know about the Jan. 76 insurrection" Zhoa, Jie Jenny and Logan, Erin B., LA TIMES, https://www.latimes.com/politics/story/2022-01-05/by-the-numbers-jan-6-anniversary (last accessed May 10, 2025).

28.    Based on these communications and the 1776 Doc, the government indicated, charged, and convicted the Plaintiffs of planning the incursion into the Capitol under a novel theory of criminal conspiracy called the "tool theory".[5]

*The Defendants' arrest.*

Pezzola Arrest and Imprisonment

29.    On January 15, 2021, Pezzola surrendered to federal authorities peacefully and voluntarily.

30.    Despite this, federal authorities raided Pezzola's home, subjecting his wife and children to shouting militarized policemen, Does I-X, carrying heavy weaponry (hereinafter "Raiders").  The Raiders also physically assaulted Mrs. Pezzola, who was not resisting, and caused her bodily harm.  The Raiders destroyed Pezzola's private property, damaged his residence, and nearly started an electrical fire in the home with their recklessness.

31.    The government did not have probable cause to arrest Pezzola, but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

32.    The circumstances of Pezzola's imprisonment were bleak.  He was detained without bond for two and a half years waiting for trial.  He was held in solitary confinement without cause, in addition to being subjected to unsanitary and unsafe conditions that violated basic standards usual to American jails.

33.    Pezzola was denied access to his lawyers throughout his prosecution and was refused visits from his family, often for uninterrupted months.  He was not provided medical care

---

[5]    Despite the legal jiggery-pokery employed by the government to obscure the fact, the Plaintiffs were essentially convicted of "stochastic terrorism," a leftist bugbear used to describe rhetoric offensive to them that they claim provokes violent acts.

and was denied properly prescribed medication, leading to long-term health problems that continue to this day.

34.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

35.     The Defendants' cruel and unusual treatment of Pezzola indicates an intention to make Pezzola suffer as punishment for crimes of which he had not been convicted, to satisfy the Defendants' animus against Pezzola.

<u>Biggs' Arrest and Imprisonment</u>

36.     On January 20, 2021, Biggs contacted the FBI to inquire whether there was a warrant out for his arrest.  The FBI confirmed that there was such a warrant.

37.     Biggs surrendered himself to the FBI peacefully at a pre-arranged and mutually agreed-upon location.

38.     Despite his cooperation and surrender, the FBI decided to stage a forceful raid upon his home shortly after his arrest, breaking down his front door and doing considerable property damage.  The rationale for such an approach, considering the then-suspect Biggs was already in custody, is unclear. Ex. 4 – Bigg's Investigation Report.

39.     The government did not have probable cause to arrest Biggs, but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

40.     Following his arrest, Biggs was detained without bond for over two and a half years, enduring prolonged priors in solitary confinement under deplorable and unsanitary conditions.

41.     Like the other Plaintiffs, Biggs was denied access to counsel for months at a time.

42.     Biggs was also prevented from visiting with his family and held in solitary confinement without cause for uninterrupted months.

43.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

44.     Biggs was denied adequate medical care and was refused proper medication, leading to misdiagnosis of illness, which exacerbated his prior health issues.  This has led to Biggs suffering from long-term health problems that continue to this day.

45.     The Defendants' cruel and unusual treatment of Biggs indicates an intention to make Biggs suffer in punishment for crimes he had not been convicted of to satisfy the Defendants' animus against Biggs.

<u>Nordean's Arrest and Imprisonment</u>

46.     In February 2021, Nordean's home was raided by heavily armed FBI and other federal agencies in order to secure his arrest.  The FBI utilized automatic weapons and flashbang grenades to execute their no-knock warrant, terrorizing Nordean's family, while Nordean was thrown bodily to the ground and held at gunpoint while being arrested.

47.     The government did not have probable cause to arrest Nordean or search his residence, but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

48.     Thereafter, Nordean was held in pre-trial detention without bond for two and a half years, including over a year in solitary confinement.  During his imprisonment, he was denied

access to his lawyers and his family for months at a time and subjected to deplorable and unsanitary conditions.

49.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

50.     The Defendant's cruel and unusual treatment of Nordean indicates an intention to make Nordean suffer in punishment for crimes of which he had not been convicted to satisfy the Defendants' personal animus against Nordean.

### Tarrio's Arrest and Imprisonment

51.     On the morning of March 8, 2021, the FBI raided the home of Tarrio and arrested him.

52.     The government did not have probable cause to arrest Tarrio or search his residence, but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

53.     Tarrio was held in solitary confinement nearly non-stop throughout pre- and post-trial proceedings in unsanitary and degrading conditions.

54.     Tarrio was refused access to his lawyers and his loved ones for months at a time, isolating him from his loved ones without cause.

55.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

56.     The Defendant's cruel and unusual treatment of Tarrio indicates an intention to make Tarrio suffer in punishment for crimes of which he had not been convicted to satisfy the Defendants' personal animus against Tarrio.

<u>Rehl Arrest and Imprisonment</u>

57.     Rehl was arrested at his home on March 17, 2021, by heavily armed and hostile federal agents, Does I-X ("Raiders", as above) in an early morning raid, shocking Rehl's wife, who was in her third trimester at the time.

58.     The government did not have probable cause to arrest Rehl or search his home, but it clearly hoped to find some after it had already arrested him, and it had free rein to search his home, records, documents, and computers.

59.     The magistrate judge at the jail granted him bail, but the Department of Justice refused to release him, and instead brought him before an extremely prosecution friendly District of Columbia Circuit judge, who naturally refused bail, and ordered he be held in confinement throughout his prosecution.

60.     In what by now should be a familiar refrain, Rehl was subjected to seventeen months in solitary confinement without cause.

61.     When he was transferred to the federal correctional facility in Philadelphia, he was given "diesel therapy" by the prison.  Diesel therapy is when prison officials refuse to provide sufficient food to a prisoner, and hold that prisoner in chains *while in solitary confinement*.

62.     While in prison, Rehl missed the birth and early childhood of his youngest daughter, as well as his eldest daughter's final years of high school and her graduation.

63.     Rehl's family suffered in poverty while Rehl was wrongly imprisoned, often not having enough to afford groceries for the family. Ex. 5 – August 19, 2022 Veteran's Affairs Letter.

64.     The Defendant's cruel and unusual treatment of Rehl indicates an intention to make Rehl suffer in punishment for crimes of which he had not been convicted to satisfy the Defendants' personal animus against Rehl.

*"1776 returns" document planted in Tarrio's email.*

65.     Unable to find any actual evidence that the Plaintiffs were engaged in a criminal conspiracy to overthrow the government, or, for that matter, anything illegal at all, on January 6, the government undertook to manufacture some.

66.     The "1776 returns" document (hereinafter the "1776 Doc.") was used as essential evidence to show that the Plaintiffs were engaged in a seditious conspiracy to overthrow the United States government. Ex. 6 –221121 Pre-Trial Conference, pg. 5; Ex. 3.

67.     The 1776 Doc contained a plan in which the participants intended to stage a sit-in in a building near the Capitol building in protest of Biden's election. Ex. 3.

68.     Metadata associated with the file indicated that it had been placed in Tarrio's inbox by a third-party.

69.     Tarrio denied composing, reading, or transmitting the 1776 Doc, to anyone, and the government failed provide any evidence that Tarrio composed the "1776 returns" document, let alone even opened it aside from the "fact" that they "found" it in his email. Ex. 7 – 230214 Trial Day 32, pg. 9156.

70.     The FBI forensic analyst, Ms. Jennifer Cate Caine, whose testimony was called by the prosecution, stated that the 1776 Doc was never viewed, opened, edited, or shared by Tarrio.

71.     The government was also unable to prove that any of the other Plaintiffs opened or read it, or that it had even been forwarded to them. Ex. 7, pg. 9158.

72.     Despite these glaring flaws, the 1776 Doc was used as evidence supporting probable cause for the Plaintiffs' arrest and prosecution.

*Prosecution utilized the novel and unconstitutional "tool" theory*
*of criminal liability to convict the Plaintiffs.*

73.     The Defendants utilized a novel legal theory called the "tool" theory.  Under this theory, the Defendants argued that any wrongful or illegal action taken by any member of the crowd present on January 6 was attributable to the Plaintiffs, regardless of whether any of the Plaintiffs had actually ever directed, spoken to, or even known the person committing the crime.

74.     The Plaintiffs were charged with seditious conspiracy under 18 U.S.C. § 2384[6] which meant that under the novel "tool" theory, the Plaintiffs were charged with violations of 18 U.S.C. § 1512(k)[7], 18 U.S.C. § 1512(c)(2) and 2[8], 18 U.S.C. § 231(a)(3)[9], 18 U.S.C. § 1361[10],  18 U.S.C. § 111(a)(1)[11], and 18 U.S.C. § 372[12] for actions taken by third parties present at January 6, over which the Plaintiffs had no authority, were not party to the alleged seditious conspiracy, and to whom the Plaintiffs had not directed any communications.

75.     The Plaintiffs themselves did not obstruct the proceedings at the Capitol, destroy government property, resist arrest, conspire to impede the police, or participate in civil disorder, nor did they plan for or order anyone else to do so.

76.     In convicting the J6 Defendants under 18 U.S.C. § 2384 by interpreting it as encompassing the novel criminal conspiracy "tool" theory propounded by the government, the government expanded the coverage of the statute to become "so vague as to that it fails to give

---

[6]     Seditious Conspiracy.
[7]     Conspiracy to Obstruct an Official Proceeding.
[8]     Obstruction of an Official Proceeding and Aiding and Abetting.
[9]     Civil Disorder and Aiding and Abetting.
[10]    Destruction of Government Property and Aiding and Abetting.
[11]    Assaulting, Resisting, or Impeding Certain Officers.
[12]    Conspiracy to Prevent an Officer from Discharging Any Duties.

ordinary people fair notice of the conduct it punishes . . . " because you can be convicted for conspiracy with people over whom you have no authority and to whom you gave no orders.

77.     The government's main piece of evidence to show the Plaintiffs were part of a seditious conspiracy was the 1776 Doc, which not one of the Plaintiffs had ever seen.   Then, assuming the conspiracy it had not proven, the Defendants used the "tool" theory to charge the Defendants with crimes allegedly perpetrated by people over whom they had no control by looping those crimes into the seditious conspiracy because they happened roughly around the same time and were generally related to January 6.

*Defendants spied on the Plaintiffs' trial team using paid confidential informants and monitored communications protected by attorney-client privilege.*

78.     To secure an unfair advantage in litigation, and ensure that the Plaintiffs were convicted and sent to prison regardless of the strength of the government's case, the FBI and DOJ monitored attorney-client communications and used paid confidential informants as spies on the Plaintiffs' and the Plaintiffs' defense team.  Ex. 8 – March 23, 2023 Article.

79.     SA Miller expressly states in chat logs that she has found pertinent and interesting communications between Rehl and his attorney that her colleagues should review.   Ex. 9 – SA Miller Chat Log.

80.     Further, the prosecution failed to disclose the presence of informants embedded with the Plaintiffs and their attorneys to the defense team until right before one of their informants, CI Loh, was set to testify at trial.

81.     CI Loh was involved with the Plaintiffs and their trial team from around the time of the Plaintiffs arrests throughout the trial, and at all times during that period, she was acting under the orders of the government agencies responsible for prosecuting the Plaintiffs.

82.     CI Loh provided information regarding the defense's posture, evidence, and its trial strategy to the FBI and the DOJ, all the while holding herself out to the Plaintiffs as a trustworthy friend, assistant, and ally.

83.     In fact, CI Loh was so trusted by the Plaintiffs and their attorneys that the Plaintiffs called her as a defense witness, which led to the revelation that she was a CI.

84.     After being found out, the prosecution claimed that only one CI was embedded with the Plaintiffs, but SA Miller testified that there were at least two.[13]  The only CI whose identity Plaintiffs are aware of is CI Loh.

85.     When it was revealed at trial that CI Loh was actually a paid FBI informant, the Judge refused to order a mistrial and prohibited the defense team from asking questions regarding what she did on behalf of the FBI to the Plaintiffs.  Ex. 10 – Defendants' Corrected Motion to Compel Disclosure of all FBI Interview Reports and all DOJ Memos Relating to the Recording and Reporting of the Defense Team (Case No. 1:21-cr-00175-TJK).

*Federal Bureau of Investigation agents threaten defense witness*
*to prevent his appearance at trial.*

86.     Lieutenant Shane Lamond was set to be a star witness in support of the Plaintiff's defense in their criminal trial.

87.     Lt. Lamond was particularly important to Tarrio's defense.

88.     Lt. Lamond was going to testify that Tarrio had been coordinating with the Metropolitan police to secure bicycle police to escort him throughout the National Mall on January 6, as Tarrio was scheduled to speak at several events that day.

---

[13]     "Federal prosecutors reveal Proud Boys witness was informant" Kunzelman, Michael and Whitehurst, Lindsay, ASSOCIATED PRESS, https://apnews.com/article/proud-boys-enrique-tarrio-capitol-riot-informant-ce0a1cf20c17c95b1ea3306fb70d93c4 (last accessed June 4, 2025).

89.     Lt. Lamond could also testify that Tarrio was unable to attend at the last minute, and so did not have the escort, but he was also unable to participate in any event on January 6, or communicate with anyone who was.

90.     Two unidentified FBI Agents (members of the class of Defendants Does I-X) ("Unidentified FBI Agents") visited Lt. Lamond days prior to the date he was scheduled to appear as a witness.

91.     At that time, the Unidentified FBI Agents spoke to Lt. Lamond about the case against the J6 Plaintiffs, then informed him that they were investigating him and were considering bringing charges against Lt. Lamond for obstruction of justice as a result of the Lt.'s support for the J6 Defendants.

92.     The FBI's intimidation tactics worked; Lt. Lamond refused to appear as a defense witness and his evidence was never heard by the jury.

*S.A. Miller, on behalf of the DOJ and FBI, materially altered and destroyed evidence exculpatory to the J6 Defendants.*

93.     S.A. Miller was an FBI agent assigned to the Plaintiffs' case, and was the agent given the task of gathering evidence to prove the Plaintiffs were engaged in a seditious conspiracy.

94.     As such, she was pivotal to the government's case against the Plaintiffs, as the primary charge brought against them was conspiracy.  S.A. Miller had unfettered access to and a deep understanding of the evidence – such as it was – against the Plaintiffs.

95.     SA Miller was directed to destroy evidence relevant and presumably exculpatory to the Plaintiffs, and did so.

96.     SA Miller, on another occasion, was asked to alter evidence to obscure FBI meetings with confidential informants embedded in and around the Proud Boys trial team, a charge which she again undertook.

97.     SA Miller openly expressed disdain and personal hatred for the Plaintiffs and their political views, and was motivated by a personal animus to ensure that the Plaintiffs suffered for those views, regardless of whether the Plaintiffs were innocent of the charges laid against them. Ex. 2.

*President Trump's pardon and commutation order.*

98.     On January 20, 2025, the President of the United States of America commuted the sentences of Nordean, Biggs, Rehl, and Pezzola for their alleged roles in the January 6 event.

99.     In pertinent part, that pardon states:

> This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and is a process of national reconciliation. Acting pursuant to the grant authority in Article II, Section 2, of the Constitution of the United Sates, I do hereby: (a) commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capital on January 6, 2021, to time served as January 20, 2025 [including the Plaintiffs, excepting Tarrio] . . . .[14]

(hereinafter "Pardon Order"). Ex. X – Pardon Order.

100.    On March 3, 2025, Biggs, Rehl, and Pezzola (hereinafter "Commuted Plaintiffs") filed a Motion to Dismiss Case with Prejudice Due to Prosecutorial Misconduct and Outrageous Government Conduct with the United States District Court for the District of Columbia. *U.S.A. v. Nordean et al.*, Case 1:21-cr-00175-TJK. Ex. 11 – Motion to Dismiss.

---

[14]     *Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events At or Near the United States Capitol on January 6, 2021*, Trump, Donald J., THE WHITE HOUSE, https://www.whitehouse.gov/presidential-actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/ (last accessed May 9, 2025).

101.     In that motion, the Commuted Plaintiffs respectfully requested the Court to "vacate the conviction [sic] and dismiss the case . . ." because of the "serious misconduct and constitutional violations [committed] by the prosecution . . . ." *Id.*

102.     Concurrently, the Pardon Order pardoned Enrique Tarrio for all events related to the January 6 event.

103.     Trump granted "a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." *Id.*

104.     The Pardon Order directed the "Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id.*

105.     Finally, on or around May 13, 2025, Pezzola, Biggs, Nordean, and Rehl applied to the Trump administration for pardons, and their applications are currently being considered.  Ex. 12 – Plaintiff's Pardon Applications.

**COUNT 1:**
**Bivens *Claim for Compensatory Damages for***
***Violation of Fourth Amendment of the U.S. Constitution***

106.     Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 through 105 above.

107.     The Fourth Amendment to the Constitution states, in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND.  IV.

108.    First, the Defendants had no probable cause to investigate or prosecute the Plaintiffs.  The Defendants were aware that no evidence supported the allegations and had to use underhanded and unconstitutional methods in order to convict the Plaintiffs.

109.    Second, the Defendants, acting under the color of law, violated the Plaintiffs' Fourth Amendment right to privacy by:

    a.    tapping and recording phone conversations between the Plaintiffs and their attorneys;

    b.    illegally monitoring and reviewing electronic mail communications between the Plaintiffs and their attorneys;

    c.    placing at least one paid confidential informant in the Proud Boys to monitor and report attorney-client communications and trial strategy to the government;[15]

    d.    Using the wrongfully gathered information from these activities to gain an unfair advantage in the Defendants' prosecution of the Plaintiffs.

110.    Third, the Defendants violated the Plaintiffs' right to be secure against unreasonable search and seizures by:

    a.    Monitoring private text applications between private individuals prior to and during the court proceedings regarding non-relevant communications; and,

    b.    Deliberately misrepresenting the context, attribution, and content of the text communications in order to create the implication of the Plaintiffs' guilt, such as the tactics attempted with the Proud Boys Telegram channel;

---

[15]    "FBI reveals how many undercover agents were on the ground during the January 6 riots" Spiering, Charlie, DAILYMAIL.COM, https://www.dailymail.co.uk/news/article-14187319/FBI-undercover-agents-capitol-hill-january-6th.html (last accessed June 4, 2025).

c.      Searching and seizing the Plaintiffs' private property without probable cause; and,

d.      Using the wrongfully gathered information from these activities to gain an unfair advantage in the Defendants' prosecution of the Plaintiffs.

111.    SA Miller and John Does I-X are not entitled to qualified immunity from this count. Qualified immunity does not shield government officials who clearly violate established constitutional rights through intentional or malicious conduct, such as the Defendants have demonstrated in this case.

112.    The Defendants further violated the Plaintiffs' Fourth Amendment rights by falsely imprisoning them without probable cause.

113.    Consequently, the Defendants have violated the Plaintiff's Fourth Amendment rights under the United States Constitution and are therefore liable to the Plaintiffs for compensatory and punitive damages.

### COUNT 2:
### Bivens *Claim for Compensatory Damages for*
### *Violation of Fifth Amendment of the U.S. Constitution*

114.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 through 105 above.

115.    The Fifth Amendment to the Constitution states, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. AMEND. V.

116.    "[T]he Due Process Clause prohibits the Government from 'taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *Beckles v. United States*, 580 U.S. 256, 273 (2017) (citing *Johnson v. United States*, 576 U.S. 591 (2015)). The doctrine rests on two justifications.  First, it ensures that people receive 'fair notice of what is prohibited." *Id.* (quoting *U.S. v. Williams*, 553 U.S. 285, 304 (2008)).  "Second, it safeguards the integrity of the judicial system by ensuring that criminal adjudications are not conducted in an arbitrary manner and that terms of imprisonment are not imposed 'on an ad hoc and subjective basis.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)).

117.    The Defendants utilized a novel legal theory called the "tool" theory.  Under this theory, the Defendants argued that any wrongful or illegal action taken by any member of the crowd present on January 6 was attributable to the Plaintiffs, regardless of whether any of the Plaintiffs had actually ever directed, spoken to, or even known the person committing the crime.

118.    The Plaintiffs were charged with seditious conspiracy under 18 U.S.C. § 2384[16] which meant that under the novel "tool" theory, the Plaintiffs were charged with violations of 18 U.S.C. § 1512(k)[17], 18 U.S.C. § 1512(c)(2) and 2[18], 18 U.S.C. § 231(a)(3)[19], 18 U.S.C. § 1361[20], 18 U.S.C. § 111(a)(1)[21], and 18 U.S.C. § 372[22] for actions taken by third parties present at January 6, over which the Plaintiffs had no authority, were not party to the alleged seditious conspiracy, and to whom the Plaintiffs had not directed any communications.

---

[16]    Seditious Conspiracy.
[17]    Conspiracy to Obstruct an Official Proceeding.
[18]    Obstruction of an Official Proceeding and Aiding and Abetting.
[19]    Civil Disorder and Aiding and Abetting.
[20]    Destruction of Government Property and Aiding and Abetting.
[21]    Assaulting, Resisting, or Impeding Certain Officers.
[22]    Conspiracy to Prevent an Officer from Discharging Any Duties.

119.     The Plaintiffs themselves did not obstruct the proceedings at the Capitol, destroy government property, resist arrest, conspire to impede the police, or participate in civil disorder, nor did they plan for or order anyone else to do so.

120.     In convicting the J6 Defendants under 18 U.S.C. § 2384 by interpreting it as encompassing the novel criminal conspiracy "tool" theory propounded by the government, the government expanded the coverage of the statute to become "so vague as to that it fails to give ordinary people fair notice of the conduct it punishes . . . " because you can be convicted for conspiracy with people over whom you have no authority and to whom you gave no orders.

121.     Rather, mere statements of approval, agreement, and enthusiasm are apparently enough to form a criminal conspiracy, provided the points of view are offensive enough to employees of the Federal Bureau of Investigation and the Department of Justice, no matter how attenuated from criminal action they may have been.

122.     As such, either 18 U.S.C. § 2384 or the Courts' interpretation and application of the statute is so vague and all-encompassing that it violates the Plaintiffs' Fifth Amendment rights.

123.     SA Miller and John Does I-X are not entitled to qualified immunity from this count. Qualified immunity does not shield government officials who clearly violate established constitutional rights through intentional or malicious conduct, such as the Defendants have demonstrated in this case.

124.     Consequently, the Defendants have violated the Plaintiff's Fifth Amendment rights under the United States Constitution and are therefore liable to the Plaintiffs for compensatory and punitive damages.

## COUNT 3:
### Bivens *Claim for Compensatory Damages for*
### *Violation of Sixth Amendment of the U.S. Constitution*

125.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 through 105 above.

126.    The Sixth Amendment to the Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

U.S. CONST. AMEND. VI.

127.    First, the Defendants, acting under color of law, violated the Plaintiff's Sixth Amendment right to attorney-client privilege by:

     a.    tapping and recording phone conversations between the Plaintiffs and their attorneys;

     b.    illegally monitoring and reviewing electronic mail communications between the Plaintiffs and their attorneys;

     c.    placing at least one paid confidential informant in the Proud Boys to monitor and report attorney-client communications and trial strategy to the government; and,

     d.    Using the wrongfully gathered information from these activities to gain an advantage in the Defendants' prosecution of the Plaintiffs.

128.    Second, the Defendants, acting under the color of law, violated the Plaintiff's Sixth Amendment right to have witnesses appear in their defense by threatening Lt. Lamond with criminal prosecution if he proceeded with his intention of testifying on behalf of the J6 Defendants.

129.     SA Miller and John Does I-X are not entitled to qualified immunity from this count. Qualified immunity does not shield government officials who clearly violate established constitutional rights through intentional or malicious conduct, such as the Defendants have demonstrated in this case.

130.     Consequently, the Defendants have violated the Plaintiff's Sixth Amendment rights under the United States Constitution and are therefore liable to the Plaintiffs for compensatory and punitive damages.

<u>**COUNT 4**</u>
*Malicious Prosecution*

131.     Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 through 105 above.

132.     "To make out a claim for malicious prosecution, a plaintiff generally must show three things:  (1) 'that the criminal proceeding was initiated or continued *by the defendant* without "probable cause," . . . (2) that the defendant instituted the proceeding "maliciously," . . . and (3) that "the proceedings have terminated in favor of the accused."'"  *Manuel v. City of Jolie*t, 580 U.S. 357, 378 (2017) (quoting RESTATEMENT (SECOND) TORTS,  653(b)).

133.     The Defendants prosecuted the Plaintiffs despite knowing that the Plaintiffs neither participated in the events of January 6 nor organized and coordinated them; indeed, they had to invent a whole new legal theory, stack the jury, breach attorney-client communications, and imbed a paid government informant in order to convict them.

134.     The Defendants displayed an open bias and visceral distaste for the Plaintiffs' moral, social, political, and religious viewpoints, and a desire to see them punished and personally suffer for their politically incorrect beliefs and activism, which provided the animus driving the Defendants' prosecution of the Plaintiffs.

135.    Finally, the Plaintiffs have been pardoned or had their sentences commuted pursuant to the Pardon Order issued by President Trump in order to "end[] a grave national injustice that has been perpetrated upon the American people over the last four years and is a process of national reconciliation." Ex. 1.

136.    Further, as described more fully above, Defendants, while acting individually, jointly, and in conspiracy, as well as under the color of law and within the scope of their employment, deprived the Plaintiffs of their constitutional right to be free from unlawful prosecution and continued detention without probable cause.

137.    In the manner described more fully above, the Defendants made, influenced, and/or participated in the decision to prosecute the Plaintiffs for which prosecution there was no probable cause, and which caused the Plaintiff to suffer a deprivation of liberty.

138.    The Defendants' misconduct directly resulted in the unlawful prosecution and continued deprivation of the Plaintiffs' liberty in violation of their constitutional rights.

139.    As a result of this violation of their constitutional rights, Plaintiffs suffered injuries, including but not limited to harm to their businesses and livelihoods, bodily harm, reputational damage, and emotional distress.

140.    The Defendants' misconduct was undertaken to pursue non-legal ends, namely, punishing political opponents of the Biden presidency and silencing speech offensive or damaging to the Defendants.

141.    Each element for the common law cause of action of malicious prosecution has been met, making the Defendants liable to the Plaintiffs for compensatory and punitive damages.

**WHEREFORE**, and for the foregoing reasons, the Plaintiffs respectfully request that the Court enter judgment in the Plaintiffs' favor, which:

a. Awards compensatory damages to the Plaintiffs, plus (6%) post-judgment interest;

b. Awards punitive damages to the Plaintiffs of $100,000,000, plus (6%) post-judgment interest;

c. Reasonable attorneys' fees, legal expenses, court costs, and enforcement costs; and,

d. Awards any further equitable or legal relief to the Plaintiffs as necessary to effectuate the ends of justice.

## RESERVATION OF RIGHT TO AMEND
## TO PLEAD PUNITIVE DAMAGES

Plaintiffs hereby reserves the right, pursuant to Fla. Stat. §768.72 and applicable law to seek punitive damages against the Defendants herein.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all issues so triable.

**Respectfully submitted this 6th day of June, *Anno Domini* 2025.**

  /s/ Thomas F. Ranieri
Thomas F. Ranieri, Esq.[23]
Va. Bar No.  93150
RANIERI & ASSOCIATES, PLC
33 Cedarside Court
Front Royal, Virginia 22630
Tel:  540-551-2330
Email:  ranieri@tra-lawfirm.com
*Counsel for Plaintiff*

---

[23] Application for admission pro hac vice pending.

  /s/ Augustus Invictus _____
Augustus Invictus, Esq.
Fla. Bar No. 98586
RANIERI & ASSOCIATES, PLC
424 E. Central Blvd. #731
Tel: 407-625-5636
Email: invictus@tra-lawfirm.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of June 2025, I electronically filed the Complaint with the Clerk of Court using the CM/ECF system.

I further certify that I caused a copy of the foregoing Complaint to be sent by certified mail to the following addresses:

**Civil Process Clerk**
OFFICE OF THE UNITED STATES ATTORNEY FOR
THE MIDDLE DISTRICT OF FLORIDA
400 North Tampa Street
Suite 3200
Tampa, FL 33602

**Attorney General Pamela Bondi**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

**Director Kash Patel**
FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

  /s/ Augustus Invictus _____
Augustus Invictus, Esq.