**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ENRIQUE TARRIO, ZACHARY REHL,
ETHAN NORDEAN, JOSEPH BIGGS,
AND DOMINIC PEZZOLA,

                Plaintiffs,

v.                               CASE NO. 6:25-cv-0998-WWB-DCI

UNITED STATES OF AMERICA and
NICOLE MILLER, individually,

                Defendants.
_____/

### DEFENDANT SPECIAL AGENT NICOLE MILLER'S MOTION TO DISMISS

      Special Agent ("SA") Nicole Miller, through undersigned counsel and under

Fed. R. Civ. P. 12(b)(6), moves to dismiss the Complaint and submits the following.

### SYNOPSIS

      Plaintiffs challenge their convictions for conduct related to events at the

United States Capitol on January 6, 2021. They bring three constitutional claims

under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403

U.S. 388 (1971), and one common law tort claim for malicious prosecution. The

Court should dismiss the Complaint for the following reasons: (1) all but Plaintiff

Tarrio's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) SA Miller

has absolute immunity for the common law tort claim; (3) the constitutional claims

raise new *Bivens* contexts and special factors counsel hesitation against extending

*Bivens*; and (4) SA Miller is entitled to qualified immunity because Plaintiffs fail to

plead her personal participation in a clearly established constitutional violation.

      Counsel have conferred under Local Rule 3.01(g). Plaintiffs oppose.

**BACKGROUND**

Plaintiffs Enrique Tarrio, Zachary Rehl, Ethan Nordean, Joseph Biggs, and Dominic Pezzola were prosecuted and convicted for conduct related to the events that occurred at the United States Capitol building on January 6, 2021. Compl. ¶¶ 5-9. Tarrio subsequently received a pardon. *Id.* ¶ 5. Rehl, Biggs, Nordean, and Pezzoa had their sentences commuted. *Id.* ¶¶ 6-9. These latter four plaintiffs are currently appealing their convictions. *See United States v. Nordean*, Nos. 23-3159, 23-3160, 23-3161, 23-3162 (D.C. Cir.). Nicole Miller, sued in her individual capacity, is a Special Agent with the Federal Bureau of Investigation alleged to have been "involved with the investigation and prosecution of the Plaintiffs." Compl., at 1, ¶ 15.

According to the Complaint, "[o]n January 6, 2021, there was an incursion into the Capitol building by elements of the federal government, leftist agitators, and Trump supporters." *Id.* ¶ 24. All Plaintiffs, except Tarrio, were "present" on January 6. *Id.* ¶ 25. Plaintiffs also "spoke with people who were at the Capitol before, during, and after January 6." *Id.* ¶ 26. "Based on these communications" and a document titled "1776" allegedly planted in Tarrio's email inbox, "the government [indicted], charged, and convicted the Plaintiffs of planning the incursion into the Capitol." *Id.* ¶¶ 27-28; *see also* Third Superseding Indictment, *United States v. Nordean*, No. 21-cr-175 (D.D.C. June 6, 2022) (ECF 380).[1] The Complaint alleges SA Miller was assigned to investigate the criminal case and was "pivotal to the government's case." Compl. ¶¶ 93-94. The only specific allegations are that she (1) accessed

---

[1] The Court may consider documents incorporated in the complaint. *Gill v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). The Court may also take judicial notice of filings from other proceedings under Rule 201 of the Federal Rules of Evidence. *See United States v. Humana, Inc.*, 776 F.3d 805, 811-12 & n.4 (11th Cir. 2015).

2

communications between Rehl and his attorney, (2) destroyed "presumably" exculpatory evidence, and (3) altered evidence to obscure FBI meetings with informants embedded in the Proud Boys trial team. *Id.* ¶¶ 79, 95-97.[2]

The Complaint pleads four counts. Count One pleads multiple Fourth Amendment violations for malicious prosecution, tapping, recording, and monitoring communications, placing an informant in the Proud Boys to report on trial strategy, deliberately mispresenting communications, and searching and seizing private property, all to gain an unfair advantage at trial. *Id.* ¶¶ 108-10. Count Two pleads a Fifth Amendment due process violation, alleging the seditious conspiracy statute, as applied, was unconstitutionally vague. *Id.* ¶¶ 118-22. Count Three pleads two Sixth Amendment violations: one for infringement on the right to counsel by tapping and monitoring attorney communications and placing an informant in the Proud Boys to report on trial strategy, all to gain an unfair advantage at trial; and one for infringement on the right to present a witness at trial. *Id.* ¶¶ 127-28. Finally, Count Four pleads a common law malicious prosecution claim. *Id.* ¶¶ 132-41.

## STANDARD OF REVIEW

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). The court must also eliminate any

---

[2] There is also an allegation that SA Miller attempted to "de-bank" Plaintiffs from their financial institutions. Compl. ¶ 15. The Complaint never explains that term. Nor does it plead any counts related to this allegation, presumably because there was only an alleged "attempt" and thus, no cognizable injury. In any event, this lack of specificity is insufficient under Rule 8(a)(2) of the Federal Rules of Civil Procedure to give SA Miller "fair notice" of what the claim might be and the grounds upon which it might rest. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957).

legal conclusions. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation). After isolating the "well pleaded factual allegations," the court must "then determine whether they plausibly give rise to an entitlement to relief." *Randall*, 610 F.3d at 710.

## ARGUMENT

### I. *Heck* Bars All Claims Brought by Rehl, Nordean, Biggs, and Pezzola.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Court held "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that the conviction or sentence has been" terminated in his favor. "This requirement avoids parallel litigation over the issues of probable cause and guilt." *Id.* at 484 (internal quotations and citation omitted). In *McDonough v. Smith*, 588 U.S. 109, 123 (2019), the Court extended *Heck*'s holding to ongoing prosecutions. As the Court explained, "[t]he alternative would impermissibly risk parallel litigation and conflicting judgments." *Id. Heck* applies to *Bivens* claims. *See Abella v. Rubino*, 63 F.3d 1063, 1065-66 (11th Cir. 1995).

All claims brought here challenge the underlying convictions. Compl. ¶¶ 109(d), 110(d), 112, 117-22, 127(d), 128, 133-38. Thus, the risk of parallel litigation and conflicting judgments is substantial. Indeed, in the criminal case, Plaintiffs challenged their prosecutions through multiple motions. *See United States v. Nordean*, No. 21-cr-175 (D.D.C.) (ECF 94, 434, 437, 439, 440, 473, 518, 533, 535,

536, 569, 611, 612, 679, 686, 694, 743, 1066). The district court issued orders on whether probable cause existed, whether the seditious conspiracy statute is vague, whether the prosecution impermissibly relied on a "tool" theory to support its conspiracy claim, whether Rehl waived attorney-client privilege, whether the prosecution intimidated a witness, whether the "1776" document allegedly planted on Tarrio's email inbox was admissible, whether SA Miller destroyed evidence, and whether the prosecution paid an informant to monitor the defense team. *United States v. Nordean*, No. 21-cr-175 (D.D.C.) (ECF 263, 281, 586, 625, 675, 731, 755, 792); *see also* Minute Order, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Dec. 28, 2022); Compl. ¶ 85. Each order is included in the notices of appeal from final judgment. In fact, in their most recent filing, Rehl, Pezzola, and Biggs argued their convictions should be set aside because of prosecutorial misconduct, again, raising many of the same issues alleged herein.[3] The district court in the criminal case denied that motion because the D.C. Circuit currently has jurisdiction "over those aspects of the case." Minute Order, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Apr. 17, 2025). Briefing in the D.C. Circuit concludes on June 12, 2026.

In sum, this is the very situation *Heck* was designed to prevent: dual litigation on probable cause and guilt in a criminal case directly and a civil case collaterally. For these reasons, *Heck* bars all claims brought by Rehl, Nordean, Biggs, and Pezzola (but not Tarrio) as they have ongoing prosecutions.[4]

---

[3] That motion is attached to the Complaint and thus incorporated by reference.

[4] Plaintiffs are no longer in custody. In *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), Justice Souter suggested in a concurring opinion that *Heck* may not apply to plaintiffs no longer in custody. However, "neither the Supreme Court nor [the Eleventh Circuit] has applied this exception in a published opinion." *Butler v.*

## II. SA Miller has absolute immunity on Count Four.

The Federal Employees Liability Reform and Tort Compensation Act of

1988, §§ 5, 6, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. §

2679) (Westfall Act), makes the Federal Tort Claims Act (FTCA), 28 U.S.C. §

1346(b) and §§ 2671-2680, "the exclusive remedy for most claims against

Government employees arising out of their official conduct." *Hui v. Castaneda*, 559

U.S. 799, 806 (2010). Once the Attorney General or his or her designee certifies

that the named employee was acting within the scope of employment, the common

law tort claim against the employee is dismissed based on absolute immunity and

deemed a claim against the United States under the FTCA. 28 U.S.C. § 2679(d)(1);

*see also Osborn v. Haley*, 549 U.S. 225, 229, 247 (2007). In a motion to dismiss

filed concurrently herewith, the United States has substituted itself for SA Miller on

the common law tort claim. She is thus entitled to absolute immunity on this claim.

## III. Plaintiffs Are Not Entitled to Damages under *Bivens*.

Counts One, Two, and Three seek damages under *Bivens* for alleged harms

caused by conduct undertaken pursuant to criminal process. Indeed, Plaintiffs

challenge the decision to prosecute, the alleged misuse of evidence, whether

certain charges were constitutional, whether their right to present a witness was

---

*Georgia*, No. 22-10291, 2022 WL 17484910, at *4 (11th Cir. Dec. 7, 2022). And the
Eleventh Circuit has applied *Heck* to plaintiffs no longer in custody in several
unpublished opinions. *See Reilly v. Herrera*, 622 F. App'x 832 (11th Cir. 2015);
*Vickers v. Donahue*, 137 F. App'x 285, 289-90 (11th Cir. 2005); *see also Wilson v.
Midland Cnty*, 116 F.4th 384, 396 (5th Cir. 2024) (en banc) (addressing the issue at
length and holding that *Heck* applies to those no longer in custody). In any event,
custodial status is irrelevant to the application of *Heck* here because Rehl,
Nordean, Biggs, and Pezzola have ongoing prosecutions and *McDonough* holds
the *Heck* bar squarely applies under these circumstances. 588 U.S. at 123.

infringed, and various other evidentiary issues, the harm being that the prosecution "gain[ed] an unfair advantage" at trial. Compl. ¶¶ 109-110, 120, 127-28. This all presents a new context for purposes of *Bivens* liability and *Bivens* is ill-suited to serve as a re-litigation of the criminal case, which is essentially what Plaintiffs seek. There are numerous safeguards and remedial schemes that protect one's constitutional rights during and after criminal process. Those all serve as important special factors that strongly counsel hesitation against extending *Bivens* under these circumstances. *See Vennes v. An Unknown No. of Unidentified Agents of U.S.*, 26 F.3d 1448, 1452-53 (8th Cir. 1994).

In *Bivens*, the Court first recognized an implied damages action under the Fourth Amendment against federal officials "who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). The Court has extended *Bivens* only twice. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution." *Abbasi*, 582 U.S. at 131. That is because "expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* (internal quotations and citation omitted). "In the 44 years since *Carlson*, the Supreme Court has over and over again refused to extend *Bivens* to any new context or new category of defendants." *Johnson v. Terry*, 119 F.4th 840, 847 (11th Cir. 2024) (internal quotations and citation omitted).

In every *Bivens* case, "[t]he question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 582 U.S. at 135

(internal quotations and citation omitted). "The answer most often will be Congress." *Id.* That is because "[c]reating causes of action involves complex policy considerations, including economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide." *Johnson*, 119 F.4th at 848 (internal quotations and citation omitted). Extending *Bivens* should be avoided "in all but the most unusual circumstances." *Egbert v. Boule*, 596 U.S. 482, 486 (2022). "[T]hose 'most unusual circumstances' are as rare as the ivory-billed woodpecker." *Johnson*, 119 F.4th at 848 (citation omitted).

The Court has refined its special factors analysis into a two-part inquiry. Courts must first "ask whether the case presents a new *Bivens* context," *i.e.*, is meaningfully different from the three Supreme Court *Bivens* cases. *Robinson v. Sauls*, 102 F.4th 1337, 1342 (11th Cir. 2024) (internal quotations and citation omitted). The second step asks whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Johnson*, 119 F.4th at 851 (internal quotations and citation omitted). "[I]n most every case" the answer will be: "no *Bivens* action may lie." *Egbert*, 596 U.S. at 492 (citation omitted).

> **A.    Plaintiffs' claims raise new *Bivens* contexts.**

The Supreme Court has provided a non-exhaustive list of factors that make for a new *Bivens* context:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential

special factors that previous *Bivens* cases did not consider. *Abbasi*, 582 U.S. at 139-40. Here, the Supreme Court has never recognized a *Bivens* action for Fifth Amendment due process or Sixth Amendment violations. Thus, Counts Two and Three clearly raise new contexts. *See Montalban v. Samuels*, No. 21-11431, 2022 WL 4362800, at *4 (11th Cir. Sept. 21, 2022); *see also Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023) ("The Supreme Court has never authorized a *Bivens* claim for procedural due process.").

Turning to Count One, while the Supreme Court has recognized a *Bivens* Fourth Amendment claim for the warrantless search and seizure of a person in his home, a claim may arise in a new context even if it is based on an alleged Fourth Amendment violation. *Hernandez v. Mesa*, 589 U.S. 98, 103 (2020). What matters is the Supreme Court has never recognized a *Bivens* claim for the *kinds* of Fourth Amendment violations alleged here. To begin, there is a world of difference between the investigation and gathering of evidence to build a criminal case, let alone one regarding "an incursion into the Capitol building," and the warrantless search and seizure of a person in his home. *See Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) ("These information-gathering and case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*."). That alone renders the context significantly new.

With respect to the malicious prosecution allegation, courts have almost uniformly held that a claim alleging an officer initiated a prosecution without probable cause presents a new *Bivens* context. *See Sheikh v. DHS*, 106 F.4th 918, 924-26 (9th Cir. 2024); *Quinones-Pimentel v. Cannon*, 85 F.4th 63, 71 (1st Cir. 2023); *Xi v. Haugen*, 68 F.4th 824, 834 (3d Cir. 2023); *Annappareddy v. Pascale*,

9

996 F.3d 120, 135-37 (4th Cir. 2021); *Ahmed v. Weyker*, 984 F.3d 564, 568-71 (8th Cir. 2020); *Cantu v. Moody*, 933 F.3d 414, 421-24 (5th Cir. 2019). As the Eighth Circuit explained, (1) the alleged misdeeds are different from *Bivens*; (2) the mechanism of injury "bears little resemblance to the straightforward claims from *Bivens*;" and (3) extending *Bivens* would pose a greater risk of interference with the other branches, including inquiry into decisions made by investigators, the grand jury, and prosecutors. *Farah*, 926 F.3d at 498-99. "Nothing so intrusive was required to prove the claims in *Bivens*." *Id.* at 499; *see also Tarabein v. Scott*, No. 24-328, 2025 WL 1806122, at *5 (S.D. Ala. June 6, 2025) (challenge to arrest, prosecution, and evidence presented in criminal case "are in stark contrast to the warrantless search and seizure of Bivens by narcotic agents").[5]

With respect to the allegations involving the monitoring of telephonic, electronic, and other communications, courts have held that the alleged unlawful surveillance and collection of such communications "presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest." *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019); *accord Dougherty v. DHS*, No. 22-40665, 2023 WL 6123106, at *6 (5th Cir. Sept. 19, 2023); *Patel v. Liu*, No. 23-2699, 2024 WL 4286110, at *2 (D.D.C. Sept. 25, 2024); *Gross v. Cox*, No. 23-279, 2024 WL 3249331, at *3-4 (E.D. Tex. June 7, 2024); *Cuney v. Choi*, No, 22-154, 2022 WL 16743984, at *4 (N.D.N.Y. Nov. 7, 2022); *Corsi v. Mueller*, 422 F.

---

[5] While the Eleventh Circuit recognized a *Bivens* malicious prosecution claim pre-*Abbasi* in *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998), the Supreme Court has made clear the new-context inquiry focuses on prior *Supreme Court* cases, not prior circuit court cases. *See Abbasi*, 582 U.S. at 122; *see also Francois v. United States*, No. 21-22360, 2023 WL 2715822, at *10 (S.D. Fla. Mar. 30, 2023).

Supp. 3d 51, 66 (D.D.C. 2019). The same is true for claims alleging that federal officials "interfered with communications with [one's] attorneys." *Hari v. Smith*, No. 20-1455, 2022 WL 1122940, at *16 (D. Minn. Jan. 31, 2022). That is because "*Bivens* is primarily, and very particularly, concerned with the warrantless search of a person." *Bivins v. Rodriguez*, No. 18-2671, 2020 WL 134115, at *4 (E.D. Cal. Jan. 13, 2020); *see also Tarabein*, 2025 WL 1806122, at *5 ("[C]ourts have found meaningful differences when the conduct at issue is something other than the warrantless search of a person.") (collecting cases). That would mean the allegation that private property was unlawfully searched and seized also raises a new context. *See Zhang v. Schuster*, No. 18-3283, 2022 WL 615015, at *11 (N.D. Ill. Mar. 2, 2022) ("*Bivens* did not involve the seizure of property.").

Finally, the Court can take judicial notice of the fact that all five Plaintiffs were arrested pursuant to a warrant.[6] "[T]he presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in *Bivens*." *Cienciva v. Brozowski*, No. 20-2045, 2022 WL 1791752, at *9 (M.D. Pa. July 15, 2022) (collecting cases); *see also Quinones-Pimentel*, 85 F.4th at 71-72; *Tarabein*, 2025 WL 1806122, at *5; *Senatus v. Lopez*, No. 20-60818, 2022 WL 16964153, at *4 (S.D. Fla. Oct. 12, 2022).

Because the contexts here are new, a special-factors analysis is required.

---

[6] *See United States v. Nordean*, No. 21-cr-175 (D.D.C. Jan. 20, 2021 and Mar. 8, 2022) (ECF 38, 309) (Biggs and Tarrio); *United States v. Pezzola*, No. 21-cr-51 (D.D.C. Feb. 1, 2021) (ECF 38) (Pezzola); *United States v. Nordean*, No. 21-mj-67 (W.D. Wash. Feb. 3, 2021) (ECF 1) (Nordean); *United States v. Rehl*, No. 21-mj-526 (E.D. Pa. Mar. 19, 2021) (Rehl).

**B.**    **Special factors counsel hesitation against extending *Bivens* to claims challenging criminal process.**

Counts One, Two, and Three seek damages for harms caused by conduct undertaken pursuant to criminal process. But numerous safeguards already protect a criminal defendant's constitutional rights during and after criminal process. These ample protections "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Abbasi*, 582 U.S. at 137. The starting point is the grand jury, which makes an independent probable cause finding and protects "against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974). Post-indictment, the accused can raise legal challenges for "selective or vindictive prosecution," "an error in the grand-jury proceeding or preliminary hearing," and the use of evidence illegally obtained. Fed. R. Crim. P. 12. Another Rule provides a remedy for the "unlawful search and seizure of property." Fed. R. Crim. P. 41(g). The right to a jury trial also protects against wrongful prosecutions. *See* Fed. R. Crim. P. 23-31; *United States v. Gaudin*, 515 U.S. 506, 510–11 (1995). The Rules allow for motions for mistrial, acquittal, and a new trial, Fed. R. Crim. P. 23, 26.3, 32-39, and appellate remedies. Fed. R. App. P. 4(b), 9. Finally, Congress created a process for challenging one's detention through the Bail Reform Act. 18 U.S.C. §§ 3141-51. The Act represents Congress's "careful delineation of the circumstances under which detention will be permitted." *United States v. Salerno*, 481 U.S. 739, 750-52 (1987).[7]

---

[7] Relatedly, the federal *habeas* statutes, 28 U.S.C. § 2241, *et seq.*, establish post-conviction procedures for challenging one's confinement. *Abbasi* itself recognized *habeas* as a significant remedy, emphasizing that "when alternative methods of relief are available, a *Bivens* remedy usually is not." 582 U.S. at 145.

Notably, many of these safeguards came into play here. A grand jury indicted Plaintiffs. They were arrested pursuant to warrants. Hearings were held where they challenged their detentions. Plaintiffs sought dismissal on multiple occasions, including motions based on lack of probable cause, prosecutorial misconduct, and selective prosecution. A jury returned a guilty verdict. Four Plaintiffs are appealing. And three Plaintiffs filed a motion to set aside their convictions. Clearly, these procedures provided Plaintiffs with many opportunities to challenge the conduct alleged herein and counsel strong hesitation against extending *Bivens*. *See, e.g.*, *Hari*, 2022 WL 1122940, at *17 (declining to extend *Bivens* to Sixth Amendment claim because plaintiff could have "litigat[ed] the alleged intrusions into the attorney-client relationship in criminal court"); *Quinones-Pimentel*, 85 F.4th at 74 (finding Fed. R. Crim. P. 41(g) an alternative remedy sufficient to foreclose a *Bivens* remedy for unlawful seizure of property).

In addition, Congress has decided that compensation may be awarded under certain circumstances. For example, the Hyde Amendment authorizes a court to award a defendant "a reasonable attorney's fee and other litigation expenses" if the defendant is the "prevailing party" and "the position of the United States was vexatious, frivolous, or in bad faith." 18 U.S.C. § 3006A. Congress also enacted the Unjust Conviction and Imprisonment statute to compensate those wrongfully convicted. *See* 28 U.S.C. § 2513. Finally, Congress enacted the FTCA, which permits a damages action against the United States for malicious prosecution under certain circumstances. 28 U.S.C. § 2680(h); *see also Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (finding FTCA a special factor that forecloses a *Bivens* remedy);

*Conyers v. Ayers*, No. 22-115, 2023 WL 5533504, at *8-9 (M.D. Fla. July 20, 2023).

In short, "[i]nherent in the judicial process are checks that serve to restrain prosecutorial abuse, and any abuse that does occur is subject to various self-remedying mechanisms of the adversarial process." *Gray v. Bell*, 712 F.2d 490, 498 (D.C. Cir. 1983). And where the government acts maliciously and the criminal defendant prevails or where he proves his innocence, Congress provided for compensation. What Congress did not do is create a personal damages remedy against federal officers. That reflects Congress's careful balancing of the need for robust prosecutions against the harm of wrongful prosecutions. It is the kind of judgment that warrants judicial deference and forecloses creating a *Bivens* remedy.

This is why the Eighth Circuit declined to extend *Bivens* to similar claims. *Farah*, 926 F.3d at 496-98. First, extending *Bivens* would risk "interfering with the executive branch's investigative and prosecutorial functions," as well as grand jury deliberations. *Id.* at 500. Second, Congress addressed these kinds of injuries through the Hyde Amendment and the Unjust Conviction and Imprisonment statute. *Id.* at 501-02. The court recognized costs and benefits exist to recognizing wrongful prosecution-based claims under *Bivens*, but correctly found: "[i]t is not our place to weigh these competing policy concerns." *Id.* at 502; *see also Sheikh*, 106 F.4th at 926-30; *Quinones-Pimentel*, 85 F.4th at 74; *Xi*, 68 F.4th at 834; *Annappareddy*, 996 F.3d at 137-38; *Ahmed*, 984 F.3d at 570-71; *Cantu*, 933 F.3d at 423-24; *Tarabein*, 2025 WL 1806122, at *5; *Francois*, 2023 WL 2715822, at *6.

Turning to the allegations of surveilling, monitoring, and collecting telephonic and electronic communications, Congress has extensively legislated in this area

without authorizing a damages action for Fourth Amendment violations. *See, e.g.*, the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*, which includes the Wiretap Act, 18 U.S.C. §§ 2510-2522, and the Stored Communications Act, 18 U.S.C. §§ 2701-2712. Congress' attention has been frequent and intense. As many courts have held, "[this] suggests that Congress's failure to provide a damages remedy for Fourth Amendment violations in similar factual circumstances is more than inadvertent, and *strongly* counsels hesitation before creating such a remedy ourselves." *Attkisson*, 925 F.3d at 621 (internal quotations and citation omitted) (emphasis added); *see also Dougherty*, 2023 WL 6123106, at *6; *Patel*, 2024 WL 4286110, at *3; *Cuney*, 2022 WL 16743984, at *5; *Corsi*, 422 F. Supp. 3d at 66.

One additional remedial scheme is also dispositive. The Department of Justice's Office of Inspector General (DOJ OIG) is authorized to "investigate allegations of criminal wrongdoing or administrative misconduct by [a DOJ] employee." 5 U.S.C. § 413(b)(2). The Eleventh Circuit has specifically held that the ability to lodge a complaint with the DOJ OIG is an alternative remedial process sufficient to foreclose a *Bivens* remedy. *See Robinson*, 102 F.4th at 1346-47.

These remedial schemes might not afford Plaintiffs all the relief they want, but that is of no moment. "[T]he court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Egbert*, 596 U.S. at 493 (internal quotation and citation omitted); *Johnson*, 119 F.4th at 860. If there is any

reason to think there is a "potential" for judicial intrusion to be inappropriate or harmful, "a court cannot afford a plaintiff a *Bivens* remedy." *Egbert*, 596 U.S. at 496 (internal quotations and citation omitted). That is plainly the case here. The Court should decline the invitation to extend *Bivens* for Counts One, Two, and Three.

**IV. SA Miller is entitled to qualified immunity on Counts One, Two, and Three.**

To overcome the affirmative defense of qualified immunity, a plaintiff must plead sufficient facts to allege that: (1) each defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014). A court may resolve the qualified immunity question at either prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.[8]

To start, the Complaint fails to plead SA Miller's personal involvement in the bulk of the alleged constitutional violations, let alone that she participated in a clearly established one. The general allegation she was "given the task of gathering evidence" and "pivotal to the government's case," Compl. ¶¶ 93-94, is insufficient to plead her involvement in each of the alleged acts discussed below. *Cf. Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (conclusory allegations insufficient, particularly where plaintiff sat through a criminal trial and should have no problem

---

[8] The Eleventh Circuit additionally holds that qualified immunity applies only where the defendant was acting within his or her discretionary authority. *Hunter v. Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019). Here, there can be no dispute that the pursuit and apprehension of suspected criminals is the core function of law enforcement and within an officer's discretionary authority. *Id.* at 1278 n.16.

explaining the alleged misconduct in more detail); *Lovelien v. United States*, 422 F. Supp. 3d 341, 353 (D.D.C. 2019) ("It defies 'judicial experience and common sense' to believe that Plaintiffs cannot make more specific allegations at this stage about what evidence was false, fabricated, or wrongfully withheld as part of their prosecution.") (citations omitted).

### A.    Fourth Amendment – Malicious Prosecution

The Complaint first alleges there was no probable cause to investigate or prosecute Plaintiffs. Compl. ¶ 108. SA Miller presumes this is meant to plead a malicious prosecution claim.[9] To plead such a claim, a plaintiff must allege (1) the common law elements of malicious prosecution; and (2) an unreasonable seizure. *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). The common law elements are (1) a criminal prosecution instituted by defendant; (2) with malice and no probable cause; (3) that terminated in plaintiff's favor; and (4) caused damage. *Id.* Here, any malicious prosecution claim brought by Rehl, Nordean, Biggs, and Pezzola must be dismissed because they cannot show termination as their criminal cases are still ongoing. *Laskar v. Hurd*, 972 F.3d 1278, 1293 (11th Cir. 2020).

As to all five Plaintiffs, the malicious prosecution claim fails for two additional reasons. First, Plaintiffs do not allege SA Miller instituted the prosecutions. Indeed,

---

[9] There is no such thing as an "unreasonable investigation" claim. *Shields v. Twiss*, 389 F.3d 142, 150-51 (5th Cir. 2004). And while Count One also mentions false imprisonment, Compl. ¶ 112, Plaintiffs here were first detained pursuant to a warrant. Where a plaintiff challenges a seizure, but the seizure was pursuant to criminal process, like a warrant, "any damages recoverable must be based on a malicious prosecution claim." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (citations omitted). Any separate claim for false imprisonment must be dismissed. *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020).

Rehl and Tarrio were each seized pursuant to a grand jury indictment. There is no allegation SA Miller was involved in securing these indictments or that she testified before the grand jury, let alone falsely. Pezzola, Biggs, and Nordean were each seized pursuant to criminal complaints. There is no allegation SA Miller proffered any statements respecting these initial criminal complaints.[10]

Turning to the second element, the lack of probable cause, "[p]robable cause is not a high bar" and requires only "a probability or substantial chance of criminal activity." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citations omitted). The presence of contradictory evidence or a possible defense does not bar a probable cause finding. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). Officers are not required to credit innocent explanations. *Washington v. Durand*, 25 F.4th 891, 902 (11th Cir. 2022). Nor are they required to credit exculpatory evidence unless it "obviously and definitively rules out probable cause." *Davis v. City of Apopka*, 78 F.4th 1326, 1343 (11th Cir. 2023) (providing example where perpetrator had multiple tattoos on arm and suspect did not). "The probable cause decision, by its nature, is hard to undermine, and still harder to reverse." *Kaley v. United States*, 571 U.S. 320, 339 (2014). Even if probable cause is found to be lacking under the first prong of the qualified immunity analysis, an officer is still entitled to qualified immunity under the second prong if he or she "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Wesby*, 583 U.S. at 65 (citation

---

[10] The Court can also review the criminal complaints themselves and take judicial notice of the fact that SA Miller did not proffer the supporting affidavits. Criminal Complaints, *United States v. Pezzola*, No. 21-cr-52 (D.D.C. Jan. 13, 2021) (ECF 1) (Pezzola); *United States v. Nordean*, No. 21-cr-175 (D.D.C. Jan 19 & Feb. 2, 2021) (ECF 1, 6) (Biggs & Nordean).

omitted). That includes reasonable mistakes as to fact and law. *Heien v. North Carolina*, 574 U.S. 54, 66 (2014). Thus, to overcome the second prong, Plaintiffs must allege sufficient facts to show that "every reasonable official" would have found no probable cause based on these facts. *Wesby*, 583 U.S. at 63 (citation omitted). This is a "demanding standard." *Id*.

Here, the bare allegation that no probable cause existed, Compl. ¶¶ 31, 39, 47, 52, 58, 108, is a legal conclusion not entitled to an assumption of truth. *United States v. Lindsey*, 482 F.3d 1285, 1292 n.5 (11th Cir. 2007). Otherwise, Plaintiffs make no effort to explain what about probable cause was lacking other than their blanket denials of wrongdoing. Compl. ¶ 133. That does not suffice. *Wells v. City of Union City, Ga.*, No. 21-5035, 2024 WL 3819838, at *4 (N.D. Ga. July 9, 2024). Further, probable cause determinations made by a grand jury or judicial officer create a presumption of probable cause that can only be overcome by allegations, with sufficient factual support, that the defendant "intentionally or recklessly made false statements to support the legal process justifying [the] seizure." *Laskar v. Hurd*, 972 F.3d 1278, 1297 (11th Cir. 2020); *see also Kelly v. Serna*, 87 F.3d 1235, 1242 (11th Cir. 1996); *Ware v. United States*, 971 F. Supp. 1442, 1462 (M.D. Fla. 1997). The alleged false statement must also be material, *i.e.,* after deleting it, probable cause must be lacking. *Paez*, 915 F.3d at 1287. Here, a grand jury indicted Plaintiffs. The Complaint makes no allegation anyone intentionally or recklessly made false statements to the grand jury. Nor does the Complaint allege, let alone explain, what in the indictment was knowingly false or fabricated. That plainly does not suffice to overcome the presumption.

Notably, the district court in the criminal case also reviewed the evidence and concluded the "weight of the evidence is strong . . . even after considering the evidence and arguments advanced by" Plaintiffs. *See* Detention Orders, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Apr. 20 & July 1, 2021, May 28, 2022) (ECF 65, 66, 104, 372) (Biggs, Nordean, Rehl, and Tarrio); Detention Order, *United States v. Pezzola*, No. 21-cr-52 (D.D.C. Mar. 16, 2021) (ECF 26) (Pezzola); *see also Lovelien*, 422 F. Supp. 3d at 352 & n.6 (taking judicial notice of detention orders as prima facie evidence of probable cause). The district court relied on photos of Pezzola robbing a police officer of his riot shield and using it to break a window into the Capitol. *See* Order, *United States v. Pezzola*, No. 21-cr-52 (D.D.C. Mar. 16, 2021) (ECF 25). Photo evidence of Nordean, Biggs, and Rehl inside the Capitol building was also used to support their arrests and detentions. *See* Criminal Complaints, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Jan 19 & Feb. 2, 2021) (ECF 1, 6) (Biggs & Nordean); Motion, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Mar. 27, 2021) (ECF 37) (Rehl). While Tarrio was not at the Capitol that day and the district court found no "smoking gun," the court considered Tarrio's contrary arguments and still found the evidence of his involvement in a seditious conspiracy to be "very strong." Order, *United States v. Nordean*, No. 21-c-175 (D.D.C. May 27, 2022) (ECF 370, at 11). Even if the Court concludes these findings are not dispositive as to whether probable cause was constitutionally lacking under the first prong of the qualified-immunity analysis, *i.e.*, whether a constitutional violation occurred; they are certainly dispositive as to the second prong, *i.e.*, whether any such violation was clearly established. Indeed, qualified immunity

allows for reasonable mistakes and where judges might disagree as to a legal question, the Supreme Court has held that qualified immunity for the officer is "deserve[d]." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *see also Wilson v. Layne*, 526 U.S. 603, 617 (1999). For all these reasons, SA Miller is entitled to qualified immunity on the Fourth Amendment malicious prosecution claim.

### B.  Fourth Amendment – Right to Privacy

The Complaint alleges the Fourth Amendment's right to privacy was violated by tapping and monitoring attorney communications, placing an informant in the Proud Boys to report on trial strategy, and using the information to gain an unfair advantage at trial. Compl. ¶ 109. The use of evidence to gain an unfair advantage at trial alone does not violate the Fourth Amendment, which protects against unreasonable searches and seizures. Thus, SA Miller will focus on the remainder.

While Plaintiffs broadly allege the Government tapped and monitored attorney communications, there is no allegation SA Miller did so. The Complaint does contain one example of *another agent* reviewing an email between Rehl and his attorney and reporting that to SA Miller. Compl. ¶ 79; *see also* (ECF 1-9, at 2).[11] That is insufficient to state a claim against SA Miller. Moreover, the Complaint provides no context for how the Government accessed this email sufficient for the Court to draw the plausible conclusion it constituted an unlawful search, let alone that SA Miller conducted or authorized the search. Having failed to allege a Fourth Amendment violation, let alone a clearly established one, SA Miller is entitled to

---

[11] Only Rehl would have standing to challenge this conduct. *Alderman v. United States*, 394 U.S. 165, 174 (1969) (Fourth Amendment rights are personal rights).

qualified immunity. Also, Rehl admitted in a filing that the email at issue was sent using the federal prison email system. Motion, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Mar. 13, 2023) (ECF 694, at 10); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."); *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) (same). As the district court in the criminal case noted, several courts have held that inmates using that system waive attorney-client privilege over their emails. Order*, United States v. Nordean*, No. 21-cv-175 (D.D.C. April 3, 2023) (ECF 731, at 6). That is because inmates must first consent to law enforcement monitoring and acknowledge that such consent applies to attorney communications. *Id.* at 2-3. That consent would necessarily negate any reasonable expectation of privacy necessary to plead a Fourth Amendment violation. *Kyllo v. United States*, 533 U.S. 27, 33 (2001). At the very least, this contrary case law holding that the attorney-client privilege is waived under these circumstances shows that any purported Fourth Amendment violation was not clearly established.

Plaintiffs finally allege "Defendants" placed informants in the Proud Boys to report on trial strategy. The Complaint references one informant: CI Loh. Compl. ¶¶ 80-85. But there is no allegation SA Miller handled CI Loh, communicated with her, or instructed her to do anything, let alone spy on the criminal defense team. Nor do Plaintiffs explain what was communicated to CI Loh or how that information was used against them at the criminal trial. Also, Plaintiffs cannot plausibly allege they had a reasonable expectation of privacy in communications with their attorneys when those communications occurred in the presence of a third party. *See In re*

*Photochromic Lens Antitrust Litig.*, No. 10-2173, 2013 WL 12316874, at *2 (M.D. Fla. June 11, 2013). For all these reasons, Plaintiffs fail to sufficiently plead a Fourth Amendment right to privacy violation, let alone a clearly established one.[12]

### C.   *Fourth Amendment – Search and Seizure*

The Complaint alleges the Fourth Amendment was also violated in four additional ways: monitoring text applications, misrepresenting communications to implicate Plaintiffs' guilt, searching and seizing Plaintiffs' private property, and using the information to gain an unfair advantage at trial. Compl. ¶ 110. Misrepresenting communications and the use of evidence to gain an unfair advantage at trial alone does not violate the Fourth Amendment, which protects against unreasonable searches and seizures. SA Miller will thus focus on the first and third allegations.

While Plaintiffs allege "Defendants" monitored text applications, there is no specific allegation SA Miller did so. Nor does the Complaint provide any context for how the Government accessed private text applications sufficient for the Court to draw the plausible conclusion it constituted an unlawful search, let alone that SA Miller conducted or authorized the search. With respect to the searching and seizing of property, the Complaint contains no specific allegations of who's property was searched and seized, by whom, or when. The Complaint does allege some of Pezzola and Bigg's property was destroyed, Compl. ¶¶ 30, 38.[13] But the Complaint does not allege SA Miller had anything to do with the search and seizure of their

---

[12] Moreover, as alleged, the district court in the criminal case heard arguments on this issue and apparently found nothing untoward as it denied a motion for new trial based on this allegation. Compl. ¶ 85.

[13] Only they have standing to challenge the searches. *Alderman*, 394 U.S. at 174.

private property. Having failed to allege her personal participation in a Fourth Amendment violation, let alone a clearly established one, SA Miller is entitled to qualified immunity on these aspects of the Fourth Amendment claim.

### D. *Fifth Amendment – Vagueness Challenge*

Plaintiffs allege they were convicted based on a novel "tool" theory that was so vague it violated their due process rights. Compl. ¶¶ 117-22. The Complaint contains no allegation SA Miller had any involvement in formulating the legal strategy through which Plaintiffs were prosecuted and that alone entitles her to qualified immunity. Moreover, while the Due Process Clause might prohibit the Government from prosecuting someone under a vague criminal law, *Beckles v. United States*, 580 U.S. 256, 273 (2017); courts have held "the Constitution does not recognize a *per se* cause of action for persons prosecuted under a law later deemed to be facially unconstitutional as vague or overbroad." *Richardson v. South Euclid*, 904 F.2d 1050, 1055 (6th Cir. 1990); *see also Reyes v. City of Lynchburg*, 300 F.3d 449, 456 (4th Cir. 2002); *Cooper v. Dillon*, 403 F.3d 1208, 1220-21 (11th Cir. 2005) (officers entitled to qualified immunity for arrests made before statute was declared invalid). Instead, the only process "due" is notice, an opportunity to be heard, and a trial. *Richardson*, 904 F.2d at 1053. Plaintiffs received that process here. In fact, the district court in the criminal case heard argument on this same vagueness challenge and rejected it. *See United States v. Nordean*, No. 21-cr-175 (D.D.C. Dec. 11, 2022) (ECF 586); Minute Order, *United States v. Nordean*, No. 21-cr-175 (D.D.C. Dec. 28, 2022). Even if the Court disagreed with that assessment, any difference of judicial opinion would entitle SA Miller to qualified immunity. *See al-Kidd*, 563 U.S. at 743; *Wilson*, 526 U.S. at 617.

**E.    Sixth Amendment – Right to Counsel and to Present Witnesses**

The Complaint alleges the Sixth Amendment's right to counsel was violated by tapping and monitoring attorney communications, placing an informant in the Proud Boys to report on trial strategy, and using the information to gain an unfair advantage at trial. Compl. ¶ 110. These allegations are identical to the Fourth Amendment claim, and the same arguments for qualified immunity apply here: there is no allegation SA Miller participated in these alleged violations, the claims are not plausibly pled, any privilege was waived, and Plaintiffs cannot plausibly allege they had a reasonable expectation of privacy in attorney communications when they occurred in the presence of a third party. *Supra*, at 21-23.

That just leaves the allegation "Defendants" allegedly threatened a potential witness, Lt. Lamond, with criminal prosecution if he testified at the criminal trial. Compl. ¶ 128. To plead such a Sixth Amendment violation, a plaintiff "must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). But here, the Complaint contains no allegation SA Miller interacted with Lt. Lamond, let alone threatened him. Instead, the Complaint alleges *two other unidentified agents* met with Lt. Lamond. Compl. ¶ 90. That cannot plead a cause of action against SA Miller and she is thus entitled to qualified immunity.

## CONCLUSION

The Complaint against SA Miller should be dismissed in its entirety.

This 25th day of August, 2025.                    Respectfully submitted,

                                                   BRETT A. SHUMATE
                                                   Assistant Attorney General,
                                                   Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Civil Division,
Torts Branch

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Senior Trial Attorney
Civil Division, Torts Branch
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7146
Washington, D.C.  20044-7146
202-598-3916
siegmund.f.fuchs@usdoj.gov

Attorneys for SA Miller

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

Thomas F. Ranieri, Esq.
Augustus Invictus, Esq.

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Senior Trial Attorney
Civil Division, Torts Branch
U.S. Department of Justice