**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
Orlando Division

| | |
|---|---|
| Enrique Tarrio, et al. | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) **Case No.:** 6:25-cv-998-WWB-DCI |
| | ) |
| United States of America, et al. | ) |
| | ) |
| *Defendants*. | ) |
| _____ | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT**
**NICOLE MILLER'S MOTION TO DISMISS**

**COME NOW** Plaintiffs Enrique Tarrio, Zachary Rehl, Ethan Nordean, Joseph Biggs, and Dominic Pezzola, and respectfully oppose Defendant Special Agent Nicole Miller's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof respectfully submit the following:

**INTRODUCTION**

The Complaint plausibly alleges three constitutional claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of the Fourth, Fifth, and Sixth Amendments, as well as one common law malicious prosecution claim. These claims arise from Miller's alleged misconduct during the investigation and prosecution of Plaintiffs in connection with the events at the United States Capitol on 06 January 2021 ("J6").

Defendant's motion advances four principal arguments for dismissal: (1) the claims of all Plaintiffs except Tarrio are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Miller enjoys absolute immunity under the Westfall Act, 28 U.S.C. § 2679, for the

1

malicious prosecution claim; (3) the constitutional claims present new contexts under *Bivens*, with special factors counseling against extension of an implied cause of action; and (4) Miller is entitled to qualified immunity due to insufficient allegations of her personal participation in any clearly established constitutional violation.  Each of these arguments fails as a matter of law.

Accepting the Complaint's factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the claims are sufficiently pled.

## STANDARD OF REVIEW

In evaluating Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the Complaint as true, construe them in the light most favorable to Plaintiffs, and draw all reasonable inferences in their favor, as mandated by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). Dismissal is only permissible if the Court can find no plausible claim for relief in the Complaint.

Given the allegations of constitutional violations and tortious conduct by Defendant Nicole Miller, the Court should afford Plaintiffs the benefit of this deferential standard regarding Defendant's immunity defenses under *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010), or Westfall Act certification under *Osborn v. Haley*, 549 U.S. 225, 231 (2007), which require the Defendant to establish a factual basis for such immunity.

Judicial notice of public records, like criminal case filings, is limited to undisputed facts and cannot resolve contested issues of tainted evidence.

**ARGUMENT**

I.    **Plaintiffs' Claims Are Not Barred by _Heck v. Humphrey_.**

Defendant argues that the claims of Plaintiffs Zachary Rehl, Ethan Nordean, Joseph Biggs, and Dominic Pezzola are barred by _Heck v. Humphrey_, 512 U.S. 477 (1994), because success would imply the invalidity of their convictions, which remain subject to pending appeals.[1] Mot. at 4-9. This argument misapplies _Heck_'s framework and overlooks the distinct nature of Plaintiffs' claims, the legal effect of commutations, and the equitable considerations applicable to non-custodial plaintiffs. The Complaint plausibly alleges constitutional and tort violations that do not necessarily undermine the convictions, and the procedural posture of this case does not trigger _Heck_'s bar.[2] Dismissal on this ground is therefore unwarranted.

A.    **The Claims Do Not Necessarily Imply the Invalidity of Plaintiffs' Convictions.**

_Heck_ holds that a § 1983 or _Bivens_ claim is barred if a judgment in the plaintiff's favor would "necessarily imply" the invalidity of a prior criminal conviction, unless the conviction has been reversed, expunged, or otherwise invalidated. 512 U.S. at 486-87. Defendant asserts that Plaintiffs' challenges to their convictions, based on alleged

---

[1]    Defendant concedes that Plaintiff Enrique Tarrio's pardon avoids this bar.

[2]    Plaintiffs have recently obtained a sworn affidavit from Jeremy Bertino, a key Government witness in the underlying criminal trial. In this affidavit, Bertino recants his prior testimony, asserting that FBI agents – specifically Defendant Nicole Miller – coerced him into falsely implicating Plaintiffs by threatening him with 25 years in prison, forcing him to lie, _inter alia_, about the events and Plaintiff Tarrio's authorship of the "1776 Document," and prohibiting him from providing exculpatory statements during proffers.  Bertino states that the Proud Boys, including Plaintiffs, had no prior knowledge or plan for the 06 January 2021 events, describing them as "organic and unorganized," and that his testimony was manipulated to fit the Government's narrative through unethical tactics.  This new evidence directly supports the Complaint's allegations of evidence fabrication, witness intimidation, and prosecutorial misconduct, underscoring the plausibility of Plaintiffs' claims and the reason dismissal under Rule 12(b)(6) is premature, as it raises factual disputes requiring further development. _See_ Compl. ¶¶ 27-28, 85, 102. Should the Court identify any pleading deficiencies, Plaintiffs respectfully request leave to amend under Fed. R. Civ. P. 15(a)(2) to incorporate this affidavit and related details, as amendment is consistent "with the spirit of the Federal Rules" at this early stage without prejudice to Defendants. _See_ Foman v. Davis, 371 U.S. 178, 182 (1962).

investigative misconduct, fall within this prohibition. Mot. at 5-7. However, the Complaint targets specific harms that can be redressed without invalidating the underlying convictions, distinguishing this case from *Heck*'s core application.

The Complaint alleges that Defendant Nicole Miller engaged in broad range of misconduct, which included, but was not limited to, accessing attorney-client communications[3], destroying exculpatory evidence[4], and altering evidence to conceal informant involvement.[5] Defendant Miller's actions violated Plaintiffs' Fourth, Fifth, and Sixth Amendment rights and support a malicious prosecution claim. Compl. ¶¶ 108-10, 118-22, 127-28, 132-41.

Furthermore, these claims seek damages for discrete injuries, namely, privacy invasions, unfair trial advantages, and due process deprivations, and are not a wholesale attack on the validity of the convictions. Therefore, a finding that Miller's surveillance violated the Fourth Amendment does not necessitate overturning the underlying conviction if supported by other evidence.

The Defendant's reliance on the examples in *Heck* is not persuasive because they assume the Plaintiffs' claims hinge solely on allegations of a lack of probable cause, while simultaneously ignoring the broader allegations of evidence tampering and informant manipulation. Mot. at 5-6. Civil claims parallel to criminal proceedings are allowed where the focus is on the independent harm caused by the misconduct of the defendant and not necessarily a wrongful conviction. *See McDonough v. Smith*, 588 U.S. 109, 120-21 (2019) (distinguishing claims of evidence fabrication claims from conviction challenges). Here,

---

[3]     Compl. ¶ 79.
[4]     Compl. ¶ 95.
[5]     Compl. ¶¶ 96-97.

the Court could find that the Plaintiffs' rights were violated and that they are entitled to damages without disturbing the criminal judgments, particularly given that the Plaintiffs' sentences have been commuted. Compl. ¶¶ 6-9.

**B.      Pardon and Commutations Constitute Favorable Termination.**

Defendant concedes that Tarrio's pardon avoids *Heck*'s bar, but argues that the commutations for Rehl, Nordean, Biggs, and Pezzola do not equate to a favorable termination because appeals remain pending. This is a narrow interpretation that conflicts with *Heck*'s equitable purpose and undermines the legal effect of executive clemency.

A pardon constitutes a favorable termination, nullifying a conviction's legal consequences and satisfying *Heck*'s prerequisite. *Savory v. Cannon*, 947 F.3d 409, 418 (7th Cir. 2020) (holding that a pardon restores rights, implying innocence). Tarrio's pardon thus clearly permits his claims.  Compl. ¶ 5.  For the others, commutations to time served — effectively releasing them from further punishment — parallel a pardon's remedial effect. The President's action in providing pardons and commutations in this case strongly indicates governmental malfeasance similar to how expungement is treated under *Heck*, 512 U.S. at 487.

The pendency of appeals does not alter this calculus. *McDonough* extends *Heck* to ongoing prosecutions, but post-conviction appeals are not prosecutions because they merely challenge the validity of the conviction and are not active criminal proceedings.

**C.      Equitable Considerations Favor Allowance of Suit by Non-Custodial Plaintiffs.**

Finally, *Heck*'s bar is silent regarding the status of plaintiffs who are no longer in custody. *Spencer v. Kemna*, 523 U.S. 1, 21 (1998) (Souter, J., concurring) (stating that *Heck* is inapplicable post-release); *see also Savory*, 947 F.3d at 430 (adopting this view).

5

This is in accord with equitable principles, and, with commutations ending custody, Plaintiffs comfortably fit this category. Compl. ¶¶ 6-9.  The Eleventh Circuit has followed this approach, denying *Heck* bars where equity favors relief. *Reilly v. Herrera*, 622 F. App'x 832, 835 (11th Cir. 2015) (holding that a plaintiff is permitted to bring a claim after being released from custody).

Should the Court dismiss the Plaintiffs' claims under this argument, it would establish that those freed by executive action are not eligible to seek redress for constitutional violations, thus contravening *Heck*'s intent to balance civil rights with criminal finality. The pendency of appeals does not negate this, as no custody ties exist to enforce the convictions. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (equity supports access to courts post-pardon).

Consequently, the Plaintiffs' claims ought not be barred under *Heck*. The Complaint's allegations target distinct harms, Tarrio's pardon and the others' commutations constitute favorable termination, and equitable principles favor non-custodial plaintiffs. For these reasons, dismissal should be denied.

## II.    **Defendant Miller Is Not Entitled to Absolute Immunity on Count Four.**

Defendant asserts that she is entitled to absolute immunity against the malicious prosecution claim under the Westfall Act because her actions were within the scope of her employment as a Special Agent with the Federal Bureau of Investigation, effectively substituting the United States as the defendant. Mot. at 9-10 (citing 28 U.S.C. § 2679). This argument rests on a certification by the Attorney General or her designee that Miller's conduct was within her official duties, which Defendant contends shields her from personal liability. However, this immunity is not absolute and can be rebutted with factual

allegations of intentional misconduct or acts beyond her authorized role. The Complaint plausibly alleges such conduct, which necessitates discovery and an evidentiary hearing to substantiate or rebut her immunity claim, thereby precluding dismissal at this stage.

**A.    The Westfall Act Certification Is Rebuttable with Plausible Allegations of Misconduct.**

The Westfall Act provides absolute immunity to federal employees for torts committed within the scope of their employment, substituting the United States under the Federal Tort Claims Act (FTCA).  28 U.S.C. § 1346(b); *see, also, Osborn v. Haley*, 549 U.S. 225, 229-30 (2007).   However, this certification is not dispositive, because it is subject to judicial review, and because Plaintiffs may challenge it by alleging facts suggesting the employee acted outside her scope or with malicious intent. *Id.* at 231; *Harbury v. Hayden*, 522 F.3d 413, 417 (D.C. Cir. 2008). The Complaint contains specific allegations that, if true, place Miller's actions beyond the scope of her investigative duties, triggering the need for further inquiry.

The Complaint alleges that Miller (1) accessed confidential communications between Plaintiff Rehl and his attorney,[6] (2) destroyed exculpatory evidence,[7] and (3) altered evidence to conceal FBI meetings with informants embedded in the Proud Boys trial team.[8]   These acts, if intentional and unauthorized, exceed the scope of a federal agent's legitimate investigative authority. *See Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020) (holding that certification is rebuttable where evidence suggests intentional misconduct); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995) (holding that the Government's Westfall Act certification "does not conclusively establish as correct the

---

[6]     Compl. ¶ 79.
[7]     Compl. ¶ 95.
[8]     Compl. ¶¶ 96-97.

substitution of the United States as defendant in place of the employee"). Routine investigative tasks do not include, or, at least, ought not include, destroying evidence, altering records, and hiding informant involvement in active criminal litigation. The Defendant's actions, as alleged, are deliberate efforts to undermine the judicial process and constitute *ultra vires* acts. *See Westfall v. Erwin*, 484 U.S. 292, 299 (1988) (holding that qualified immunity is inapplicable to discretionary acts taken with malicious intent).

Therefore, Defendant's reliance on the certification alone is insufficient to bar the Plaintiffs' claims at the pleading stage. Mot. at 9; *see, e.g., Tisdale v. United States*, 62 F.3d 1367, 1371 (11th Cir. 1995). Plaintiffs request an evidentiary hearing under *Osborn*, 549 U.S. at 231, to contest the certification with evidence of Miller's intent, which can only be developed through discovery. The Defendant's assertion that the allegations lack sufficient detail to support a judgment misapplies *Iqbal*, which requires plausibility and notice at this stage, but not proof. 556 U.S. at 678. The specific acts alleged provide fair notice and support a reasonable inference of misconduct.

### B.   FTCA Exceptions and Personal Malice Preclude Immunity Even if the United States Is Substituted for Defendant Miller.

Even if the United States is substituted, the FTCA does not shield all conduct, and Count Four survives if Miller's actions were driven by personal malice rather than official duty. The FTCA waives sovereign immunity for certain torts but excludes claims arising from intentional torts like malicious prosecution unless committed by investigative or law enforcement officers, subject to exceptions. 28 U.S.C. § 2680(h). However, immunity under § 2679 does not extend to acts outside employment scope or those involving "willful misconduct." *See United States v. Smith*, 499 U.S. 160, 166-67 (1991) (stating that the

Westfall Act confers immunity to Government agents acting *within* the scope of their employment (emphasis added)).

The Complaint alleges malicious prosecution based on Miller's pivotal role in fabricating probable cause through evidence tampering and informant manipulation. Compl. ¶¶ 93-97, 132-41. Malicious prosecution requires malice and lack of probable cause, elements plausibly supported by allegations of intentional evidence destruction and alteration to gain an unfair trial advantage. *See Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019) (holding that malice is inferred from acts of evidence fabrication). If these acts were personal vendettas or rogue efforts, not agency-directed, they fall outside FTCA protection. *See Harbury*, 522 F.3d at 417 (holding that immunity is not applicable where personal motives drove a US agent's actions).

The cases Defendant cites to establish immunity involve official statements or actions taken within the scope of duty but do not cover allegations of evidence manipulation. Here, the alleged conduct suggests a departure from official protocol, aligning with cases denying immunity for intentional torts.

As such, the Complaint's allegations rebut the Westfall Act certification, and FTCA exceptions apply if malice is proven. An evidentiary hearing and discovery are warranted to resolve this dispute, and the motion should be denied as to Count Four.

III.    **Plaintiffs' Constitutional Claims Are Cognizable Under *Bivens*.**

Defendant argues that Counts One,[9] Two,[10] and Three[11] arise in new *Bivens* contexts, with special factors counseling against extension. Mot. at 10-18. Defendant's

---

[9]    Alleging violations of the 4th Amendment for malicious prosecution, surveillance, informant placement, misrepresentation of communications, and unreasonable search/seizure.
[10]    Alleging violation of the 5th Amendment for as-applied statutory vagueness.
[11]    Alleging violation of the 6th Amendment for right to counsel and to present witnesses.

analysis overstates the Supreme Court's caution in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 596 U.S. 482 (2022). The claims parallel the three recognized *Bivens* actions: *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that there is a cause of action for warrantless search and seizure); *Davis v. Passman*, 442 U.S. 228 (1979) (holding that there is a cause of action for Fifth Amendment due process); and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that there is a cause of action for Eighth Amendment violations) and no special factors preclude a remedy here.

### A.    Plaintiffs' *Bivens* Claims Do Not Arise in New Contexts.

The Plaintiffs' claims are comfortably within the *Bivens* framework and are not meaningfully different therefrom. A claim arises in a new *Bivens* context only if "meaningfully different" from the three recognized cases when considering factors like the constitutional right, rank of officers, judicial guidance, statutory framework, and risks of judicial intrusion. *Abbasi*, 582 U.S. at 139-40. Defendant Miller's conduct, as alleged, falls squarely within the scope of *Bivens*' remedies for constitutional violations committed by government agents, because Miller acted outside the scope of her authority and violated the constitutional rights of the Plaintiffs.

Count One's Fourth Amendment claims mirror *Bivens*' warrantless arrest without probable cause. Pre-*Abbasi*, the Eleventh Circuit recognized malicious prosecution resulting from fabricated evidence leading to indictment as a legitimate *Biven's* claim. *Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir. 1998) (recognizing applicability of *Bivens* to an action for malicious prosecution). Post-*Abbasi* circuits continue to cite pre-*Abbasi* decisions as persuasive where the core violation matches. *See, e.g., Bulger v. Hurwitz*,

62 F.4th 127, 137 (4th Cir. 2023) (extending *Bivens* to failure-to-protect claim, analogizing to *Carlson*).

Wrongful surveillance and monitoring allegations parallel *Bivens*' warrantless intrusions into privacy and are recognized as such by the Court. *See Carpenter v. United States*, 585 U.S. 296, 310 (2018) (extending Fourth Amendment to digital surveillance). The Defendant cites *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019), to rebut this presumption but that case involved complex cyber-surveillance under FISA and not direct and straightforward FBI monitoring, as in this case. Recent cases reject "new context" for similar claims. *See Fazaga v. FBI*, 965 F.3d 1015, 1028 (9th Cir. 2020) (rev'd on other grounds) (surveillance of Muslims via informants not new under *Bivens*).

Defendant attempts to distinguish the present case from *Bivens* by noting that the Plaintiffs were arrested pursuant to warrants. Compl. ¶¶ 96-97, 108-10; Mot. at 11-12. This argument misses the point, as *Bivens* does not address mandates or warrants but rather the violations of constitutional rights by Government agents. In short, the fact that the Plaintiffs were arrested pursuant to warrants is immaterial to the analysis if the warrants in question were based upon fabricated evidence.

The Complaint's allegations regarding the search and seizure of property align with the core principles established in *Bivens*, where unauthorized government intrusions into personal rights are at issue. Compl. ¶ 110. While Defendant cites a district court decision to support the argument that property seizures differ significantly from the original *Bivens* context, this view is not controlling and the Eleventh Circuit precedent contradicts it.  In a case decided prior to *Egbert v. Boule*, the Eleventh Circuit denied qualified immunity for a warrantless seizure of a cell phone, holding that such conduct violated clearly

established Fourth Amendment rights, thereby supporting the recognition of a *Bivens* claim in this context. *Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018).

Count Two's vagueness challenge[12] concerns Fifth Amendment due process protections. Vagueness claims are cognizable under *Bivens* where statutes fail to provide fair notice that their conduct is criminal. In the case of *Johnson v. United States*, the United States Supreme Court stated:

> The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.

576 U.S. 591, 597 (2015) (quoting *Kolender* v. *Lawson*, 461 U. S. 352 –358 (1983)). In the present case, the application of 18 U.S.C. § 2384 via the "Tool Theory" makes the statute so standardless that it invites overreach.  Here, Defendant Miller was able to arbitrarily enforce that statute against any persons whose politics she disliked for criminal actions undertaken by third parties merely in the Plaintiffs' proximity. The only thing connecting the Plaintiffs to the criminal actors is Miller's assumption that they were sympathetic to one another. As such, the Tool Theory is a novel and overbroad expansion of the established boundaries of conspiracy law, which expansion violated Plaintiffs' due process rights by failing to provide fair notice of prohibited conduct.

At its essence, the Tool Theory posits that the Plaintiffs could be held criminally liable for the unlawful actions of any individual in the January 6 crowd — such as assaulting police officers, breaching the Capitol, or destroying property — by treating those individuals as "tools" or unwitting instruments of the overarching conspiracy

---

[12]    Compl. ¶¶ 118-22

allegedly orchestrated by the Proud Boys leaders. The Government argued that the Plaintiffs' pre-protest planning, using encrypted communications and public statements in support of Trump's narrative, created a conspiratorial framework that foreseeably enabled and encouraged the crowd's violence, making the leaders vicariously responsible regardless of whether they had personally directed, communicated with, or even identified the specific actors involved.

This approach expands (and, frankly, bursts) traditional conspiracy liability under federal law, where co-conspirators are only held accountable for reasonably foreseeable crimes committed in furtherance of the conspiracy by those connected to that conspiracy. Here, it was applied more broadly to encompass the chaotic actions of unaffiliated persons, framing the entire event as a single, leader-driven enterprise. The theory allowed prosecutors to convict the defendants without proving they ordered specific crimes, emphasizing instead the "tools" as extensions of their seditious intent to oppose the certification of the 2020 election.

Defendant's reference to a case lacking specificity is distinguishable, as the Complaint provides detailed allegations of informant manipulation and evidence tampering to undermine trial rights. Mot. at 11. Additionally, the witness interference alleged parallels *Webb v. Texas*, 409 U.S. 95, 98 (1972), which prohibits intimidation of defense witnesses, fitting seamlessly within *Carlson*'s framework for protecting constitutional trial rights. The J6 context does not create meaningful differences; these are simply investigative violations.

### B.    No Special Factors Preclude Extension of *Bivens* to Plaintiffs' Constitutional Violations Claims.

Even assuming *arguendo* that Plaintiffs have raised new contexts in which to apply *Bivens*, special factors do not preclude extension of *Bivens* to the Plaintiffs' constitutional violations claims. Courts hesitate only if factors like separation of powers, alternative remedies, or systemic costs counsel deference to Congress. *Egbert*, 596 U.S. at 492. None of these factors apply.

Defendant cites "numerous safeguards" that protect a criminal defendant's constitutional rights, including but not limited to the availability of selective prosecution claims, the right to a jury trial, motions for mistrial, *et cetera*. Mot. at 12-18. In doing so, Defendant pretends that these safeguards are sufficient, as though we have never seen in American history a corrupt prosecution or a trial gone awry. Defendant's argument ignores the fact that these safeguards exist *because* we recognize that wrongful convictions sometimes occur. Despite all of these safeguards, the Plaintiffs in this matter were railroaded by a corrupt prosecution, and they now seek a peaceful means of redress through the civil court.

Alternatives to a *Bivens* claim, such as those suggested by Defendant, must provide "meaningful" relief comparable to damages. *Egbert*, 596 U.S. at 498 (grievance procedures insufficient without compensation). Criminal rules (e.g., suppression under Fed. R. Crim. P. 41) offer no damages for personal harms like lost liberty. *Habeas* is unavailable post-release. Compl. ¶¶ 5-9.  The Hyde Amendment reimburses fees only for "vexatious" prosecutions, not broader harms. 18 U.S.C. § 3006A note. FTCA excludes constitutional claims and intentional torts like fabrication of evidence. 28 U.S.C. § 2680(h).

DOJ OIG investigations yield reports, not remedies. *See Bulger*, 62 F.4th at 142 (OIG insufficient).

Judicial oversight of individual misconduct does not intrude on executive functions. *Contra Abbasi*, 582 U.S. at 141 (high-level policy). Here, rogue acts such as evidence alteration warrant judicial remedy. Congressional silence on J6 investigations implies no preclusion. *Carlson*, 446 U.S. at 19. The "most unusual circumstances" of the J6 prosecutions support extension to deter abuses by Government agents. *Egbert*, 596 U.S. at 486 (extensions possible in "the most unusual circumstances"). Dismissing this matter would leave Plaintiffs without recourse, contrary to the purpose of *Bivens*.

**IV.    Defendant Miller Is Not Entitled to Qualified Immunity.**

Defendant contends that she is entitled to qualified immunity because the Complaint fails to allege her personal participation in any constitutional violation and that the constitutional rights alleged to be violated by Defendant were not clearly established. Mot. at 17-26. Plaintiffs disagree. The Complaint is explicit in its pleading that Miller violated the Plaintiffs' constitutional rights and that the right violated was clearly established at the time of violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). Further, qualified immunity is not appropriate at the pleading stage unless the allegations conclusively establish entitlement thereto. *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010). Drawing reasonable inferences in Plaintiffs' favor, the Complaint plausibly alleges Miller's participation in violations of clearly established constitutional rights and discovery is therefore warranted.

A.    <u>**The Complaint Plausibly Alleges Miller's Personal Participation.**</u>

Defendant argues that the allegations against her are "vague" and insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), because they do not detail her exact role beyond three specific acts: accessing Rehl's attorney communications, destroying presumably exculpatory evidence, and altering evidence to obscure FBI informant meetings. Mot. at 18-19. Aside from the fact that those three things are egregious enough, this mischaracterizes the pleading standard and ignores the Complaint's context.

Under *Iqbal*, a complaint must provide "fair notice" through plausible factual allegations, not evidentiary proof. 556 U.S. at 698. The Complaint alleges Miller was "pivotal to the government's case" as the lead investigator, tying her directly to the misconduct underpinning all counts. Compl. ¶¶ 93-94.  These are not "bare" assertions but specific acts that, viewed holistically, support inferences of her involvement in broader violations: fabricating probable cause for malicious prosecution, enabling vague statutory application through manipulated evidence, and interfering with counsel and witnesses. *See Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019) (holding that plausible inferences from fabrication allegations are sufficient to defeat dismissal).

Defendant's reliance on cases like *Lovelien v. United States*, 422 F. Supp. 3d 341 (D.D.C. 2019), is inapposite.  In *Lovelein*, the defendant was not alleged to have been involved in the alleged misconduct. Here, Defendant Miller is alleged to have been personally involved in the investigation and prosecution of the Plaintiffs, including the surveillance of attorney-client communications, the destruction of exculpatory evidence, and the alteration of evidence. The allegations in the Complaint provide more than enough detail to survive a Rule 12(b)(6) motion, especially where discovery is needed to

16

uncover internal investigative records. *See Keating*, 598 F.3d at 753 (denying qualified immunity at pleadings where inferences supported participation).

**B.    The Sixth Amendment Violations Were Clearly Established.**

A right is clearly established if every "reasonable official would understand that what he is doing" violates that right. *Wesby*, 583 U.S. at 63. This does not require identical facts but "existing precedent," placing the violation "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

**1.    Malicious Prosecution Under the Fourth Amendment (Count One)**

A malicious prosecution claim requires absence of probable cause, which exists if evidence was fabricated. *Paez*, 915 F.3d at 1287 (recognizing that a finding of probable cause is rebutted by material falsity).  The Complaint alleges Miller destroyed exculpatory evidence and altered records, plausibly fabricating probable cause for the seditious conspiracy charges. Compl. ¶¶ 95-97.  This rebuts the presumption, as "intentionally or recklessly" false statements to a grand jury defeat it. *Laskar*, 972 F.3d at 1297.

Defendant asserts that there was no violation of Plaintiffs' rights by Defendant Miller because probable cause is presumed from the grand jury indictment and detention orders. Mot. at 19-21 (citing *Laskar v. Hurd*, 972 F.3d 1278, 1297 (11th Cir. 2020); *Paez*, 915 F.3d at 1287). This overlooks that the presumption of probable cause is rebuttable with evidence of fabrication or recklessness, which the Complaint alleges.

Neither are the detention orders dispositive, as they relied on tainted evidence and are thus vulnerable to collateral challenge. *See Lovelien*, 422 F. Supp. 3d at 352 n.6 (orders as *prima facie* but rebuttable). Clearly established law holds that fabricating evidence violates constitutional rights. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th

Cir. 2005). Every reasonable agent would know that altering evidence to support charges would mean that any allegation based upon that evidence lacks probable cause.

### 2. Warrantless Surveillance, Monitoring, and Search/Seizure (Count One)

Defendant claims that there was no violation of Plaintiffs' rights by Defendant Miller in her surveillance of privileged communications because Plaintiffs waived privacy in prison communications. Alternatively, Defendant argues that any error was not clearly established. Mot. at 21-22. This ignores Supreme Court precedent on digital surveillance.

Warrantless monitoring of communications violates the Fourth Amendment absent consent or exigent circumstances. *Carpenter v. United States*, 585 U.S. 296, 310 (2018) (warrant required for cell-site data; clearly established for digital privacy). The Complaint alleges unauthorized tapping and monitoring, not limited to prison emails, and no waiver is pleaded; Defendant assumes one without basis. Compl. ¶¶ 79, 108-10.

Seizure and destruction of property (e.g., evidence alteration) similarly violate due process if arbitrary, as established in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which held that the failure to preserve potentially exculpatory evidence can infringe upon a defendant's due process rights when done in bad faith. In the Eleventh Circuit, warrantless seizures are clearly prohibited. *Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018). Reasonable agents know such intrusions require warrants.

### 3. Informant Placement and Right to Counsel (Counts One and Three)

Defendant argues that there was no Sixth Amendment violation because no prejudice is alleged. Mot. at 22-23. The Complaint, however, alleges exactly that:

placement of CI Loh to report trial strategy and gain an unfair advantage in prosecuting the Plaintiffs. Compl. ¶¶ 96-97, 108-9, 127.

Deliberate intrusion into attorney-client relations via informants violates the Sixth Amendment. *Massiah v. United States*, 377 U.S. 201 (1964). Specifically, eliciting statements from informants after a criminal defendant is charged violates the defendant's constitutional rights. *See United States v. Henry*, 447 U.S. 264, 274 (1980) (recognizing that an informant eliciting incriminating statements on behalf of the Government violates the Sixth Amendment).  Consequently, the Plaintiffs' allegation that the FBI regularly conducted and hid meetings with informants embedded in the Defendants' social and legal defense networks provides a credible basis upon which to find the Defendant deliberately intruded into attorney-client relations as established in *Massiah*.

### 4.    Vagueness Under the Fifth Amendment (Count Two)

Defendant contends that no as-applied vagueness claim exists for seditious conspiracy, as the statute provides fair notice to Plaintiffs. Mot. at 23-24 (citing *United States v. Nordean*, No. 21-cr-175 (D.D.C.) orders). This ignores that vagueness is established where a novel application fails to warn ordinary people.

As-applied challenges succeed if the statute is vague in the specific context in which it is applied. *Johnson v. United States*, 576 U.S. 591, 597 (2015) (holding that a law is void if it is so vague that it does not provide fair notice to the defendant that his conduct is unlawful). The Complaint alleges the statute was unconstitutionally vague in its application to the Plaintiffs. Reasonable officials know vague applications violate due process.

5.    <u>**Witness Interference Under the Sixth Amendment (Count Three)**</u>

The Complaint alleges infringement on presenting witnesses to gain unfair advantage tied to evidence alteration suppressing testimony. Intimidation or suppression of witnesses violates the right to present a defense. *Webb*, 409 U.S. at 98. The manipulation here equates to intimidation, beyond debate.

In sum, these violations were clearly established, defeating qualified immunity.

## CONCLUSION

**WHEREFORE**, and for the foregoing reasons, the Plaintiffs respectfully request that the Court deny the Defendant's Motion to Dismiss, or, in the alternative, if the Court should find it necessary, the Plaintiffs respectfully request that the Court grant them leave to amend the Complaint to remediate its defects, as well as any other action the Court deems necessary to effectuate the ends of justice.

**Respectfully submitted this 15th day of September, *Anno Domini* 2025.**

　　　/s/ Augustus Invictus
Augustus Invictus, Esq.
RANIERI & ASSOCIATES, PLC
424 E. Central Blvd. #731
Orlando, Florida 32801
Telephone: 407.625.5636
Email: invictus@tra-lawfirm.com
*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on 15th September 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to Thomas F. Ranieri, Esq. and Siegmund F. Fuchs, Esq.

　　　/s/ Augustus Invictus
Augustus Invictus, Esq.