UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ENRIQUE TARRIO, ZACHARY REHL,
ETHAN NORDEAN, JOSEPH BIGGS,
AND DOMINIC PEZZOLA,

        Plaintiffs,

v.                                        CASE NO. 6:25-cv-0998-AGM-DCI

UNITED STATES OF AMERICA and
NICOLE MILLER, individually,

        Defendants.
_____/

## DEFENDANTS' OPPOSITION TO MOTION
## FOR EVIDENTIARY HEARING AND DISCOVERY

    The United States of America and FBI Special Agent ("SA") Nicole Miller oppose Plaintiffs' request for an evidentiary hearing and discovery on whether SA Miller was acting within the scope of employment for purposes of the malicious prosecution claim. First, the Complaint's factually unsupported, conclusory allegations do not satisfy Plaintiffs' burden of rebutting the Government's certification that SA Miller was acting within the scope of employment. Second, even if the allegations were true and fairly attributed to SA Miller, the alleged conduct falls within the scope of employment under relevant law. With no factual issues to resolve, an evidentiary hearing and discovery are both unnecessary.

## BACKGROUND

    Count Four of the Complaint alleges a common law tort claim against SA Miller for malicious prosecution. ECF 1 ¶¶ 131-40. The United States has certified that SA Miller was acting within the scope of her employment for purposes of that claim and substituted itself for SA Miller under the Federal Employees Liability Reform and Tort Compensation Act of

1988, §§ 5, 6, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. § 2679) (the "Westfall Act"). ECF 31 at 7-8. The Westfall Act makes the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671-2680, "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). Once the Attorney General or his or her designee certifies that the named employee was acting within the scope of employment, the common law tort claim against the employee is dismissed based on absolute immunity and becomes a claim exclusively against the United States under the FTCA. 28 U.S.C. § 2679(d)(1); *see also Osborn v. Haley*, 549 U.S. 225, 229, 247 (2007). Plaintiffs now challenge that scope-of-employment certification and request an evidentiary hearing and discovery on the issue.

## ARGUMENT

A Westfall certification by the Attorney General's designee serves as *prima facie* evidence that the conduct at issue occurred within the scope of employment. *Omnipol, A.S. v. Multinational Def. Serv., LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022). When a plaintiff challenges that certification, the burden is on the plaintiff to provide specific facts to rebut the certification. *Id.* "[T]here is no right to even limited discovery in a Westfall Act case unless and until a plaintiff alleges sufficient facts to rebut the Government's certification." *Wuterich v. Murtha*, 562 F.3d 375, 382 (D.C. Cir. 2009); *Bolton v. United States*, 946 F.3d 256, 259-60 (5th Cir. 2019) (same); *see also Omnipol*, 32 F.4th at 1306 (where the alleged conduct plainly falls within scope of employment no additional discovery is needed); *Glover v. Donahoe*, 626 F. App'x 926, 930 (11th Cir. 2015) ("[N]othing mandates that a district court allow discovery and hold an evidentiary hearing before ruling on a Section 2679 certification."). "That bar for discovery is high, in part, because the Westfall Act confers absolute, not merely qualified, immunity upon federal employees acting within the scope of

2

their official duties." *Plevnik v. Sullivan*, 146 F.4th 1174, 1184 (D.C. Cir. 2025) (internal quotations and citation omitted). Absolute immunity "entitles government officials not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Id.* (citation omitted).

### A. Plaintiffs fail to plead facts that sufficiently rebut the Westfall Certification.

To begin, the Complaint's allegations regarding SA Miller are not well-plead and in no way rebut the Government's certification that she was acting within the scope of her employment. In fact, the Complaint itself affirmatively pleads all Defendants, including SA Miller, were acting "within the scope of their employment" for purposes of the malicious prosecution claim. ECF 1 ¶ 136. Moreover, all specific examples of alleged malfeasance are attributed to individuals *other than* SA Miller. For example, the Complaint alleges an inculpatory document, "1776 Returns," was planted on Plaintiff Tarrio's computer, but the Complaint attributes the alleged misconduct to some unknown "third-party." *Id.* ¶ 68. And despite allegations of witness intimidation and harassment, the Complaint cites only one specific example involving a witness named Lt. Lamond but then accuses two *other* agents of meeting with him. *Id.* ¶ 90 ("Two *unidentified* FBI Agents . . . visited Lt. Lamond days prior to the date he was scheduled to appear as a witness.") (emphasis added). As for the allegation SA Miller monitored attorney communications, again, the Complaint cites only one example, but it involved *another agent* reviewing an email between Plaintiff Rehl and his attorney and then reporting it to SA Miller. *Id.* ¶ 79; *see also* (ECF 1-9, at 2).[1] Finally,

---

[1] As explained in SA Miller's motion to dismiss, the district court in the criminal case reviewed this allegation and found that the communication at issue occurred over the prison email system. ECF 30 at 22. Citing a long line of cases, the district court held that prisoners waive their attorney-client privilege when they use the prison email system. *Id.*

3

Plaintiffs rely on an affidavit by Jeremy Bertino who states his testimony was coerced. ECF 41-1. The affidavit, however, makes no mention of SA Miller at all. These allegations fall woefully short and in no way satisfy Plaintiffs' burden of coming forward with specific facts to rebut the certification that *SA Miller* was acting within the scope of her employment.

That just leaves the blanket allegation that SA Miller tampered with and destroyed exculpatory evidence. There, the Complaint cites no examples of what the evidence was, how it was exculpatory, or when and how SA Miller destroyed it. Instead, the Complaint is entirely speculative on this point: "SA Miller was directed to destroy evidence relevant and *presumably* exculpatory to the Plaintiffs, and did so." *Id.* ¶ 95 (emphasis added). It is well settled that to rebut a Westfall certification, a plaintiff must provide specific facts, "not mere conclusory allegations and speculation." *Adigweme v. Dep't of Veteran Affs.*, No. 25-295, 2025 U.S. Dist. LEXIS 173516, at *14 (M.D. Fla. Sept. 5, 2025); *Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321 (M.D. Fla. 2019), *aff'd sub nom. Omnipol*, 32 F.4th 1298 (same); *see also Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009) (affirming denial of request for discovery where plaintiff's "discovery demands appear to be nothing more than a fishing expedition for facts that *might* give rise to a viable scope-of-employment claim").

    **B. Even if the Complaint's allegations of malfeasance are true and fairly attributed to SA Miller, they still do not sufficiently rebut the Westfall Certification as a matter of law.**

The Complaint's factually unsupported allegations alone warrant denying the request for an evidentiary hearing and discovery. *Glover*, 626 F. App'x at 930 ("Discovery and an evidentiary hearing are particularly unnecessary in this case, where [the plaintiff] alleged no facts to support his contention that Defendants were acting outside the scope of their employment."). But even taking the conclusory allegations as true and fairly attributed to SA Miller, the request should still be denied. The issue of whether an employee acted within

4

the scope of employment for purposes of the Westfall Act is governed by the law of the state where the incident occurred. *Omnipol*, 32 F.4th at 1305. The parties agree D.C. law governs that issue here. Under D.C. law, conduct is within the scope of employment if it (1) is of the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master. *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013). While Plaintiffs cite these factors, they never analyze them. For example, they never dispute that SA Miller's conduct occurred substantially within the authorized time and space limits (factor two), stating that the conduct occurred "during the investigation and prosecution of Plaintiffs." ECF 41 at 3. They appear to be disputing factors one and three, cursorily stating that SA Miller's alleged conduct was "motivated by personal animus, violated federal law, and fell outside the scope of her employment under District of Columbia law." *Id.* at 2. However, under D.C. law, "criminal conduct is not *per se* outside the scope of employment." *Rasul v. Myers*, 512 F.3d 644, 659 (D.C. Cir. 2008), *vacated and remanded on other grounds*, 555 U.S. 1083 (2008), *reinstated in relevant part*, 563 F.3d 527, 528-29 (D.C. Cir. 2009). And Plaintiffs' focus on (unsupported) allegations of malfeasance as opposed to the underlying dispute or controversy completely misunderstands the scope-of-employment inquiry under D.C. law.

"District [of Columbia] law requires that [courts] focus on the *type* of act . . . not the wrongful character of that act." *Jacobs*, 724 F.3d at 222. (emphasis added). Thus, the proper inquiry "focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace *any intentional tort* . . . that was originally undertaken on the employer's behalf." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) (emphasis added). "[W]ere the inquiry limited to the tortious conduct itself without

5

the underlying context, the characteristics of that conduct might misleadingly appear to be personal in nature." *Trump v. Carroll*, 292 A.3d 220, 235 (D.C. 2023). Instead, "[e]xtensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment—including specific allegations . . . of potentially criminal activities—does not take that conduct outside the scope of employment." *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018); *see also Rasul*, 512 F.3d at 659 (allegations of even serious criminal conduct, including torture, do not change the scope-of-employment analysis where the alleged conduct was incidental to authorized conduct), *vacated and remanded on other grounds*, 555 U.S. 1083 (2008), *reinstated in relevant part*, 563 F.3d at 528-29. Conduct is properly deemed to be within the scope of employment under D.C. law even if the employee's predominate purpose was personal so long as there is at least "some discernable purpose" to serve the employer. *Plevnik*, 146 F.4th at 1183. Even unauthorized conduct can be properly deemed within the scope of employment under D.C. law so long as the alleged conduct was a "direct outgrowth of" or "incidental to" official duties. *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1332-33 (D.C. Cir. 2014).

The test is applied "*very expansively*, and in essence ask[s] whether the defendant merely was on duty or on the job when committing the alleged tort." *Id.* at 1330 (citation omitted) (emphasis added). As the D.C. Circuit has explained, "[m]any states and D.C. apply the scope-of-employment test very expansively, in part because doing so usually allows an injured tort plaintiff a chance to recover from a deep-pocket employer rather than a judgment-proof employee." *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008). For Westfall purposes*,* that means "tort claims against federal government employees often

proceed against the Government itself under the FTCA rather than against the individual employees under state law." *Id.*

For example, courts have found conduct to be within the scope of employment under D.C. law where an employee, motivated by personal animus, made defamatory statements to the press because while the employee was not charged with making defamatory statements, he *was* charged with responding to press inquiries. *See, e.g.*, *Ballenger*, 444 F.3d at 664-65; *Wuterich*, 562 F.3d at 384. Courts have also found allegations of systemic abuses, including allegations of torture, to be within the scope of employment under D.C. law because while the employee was not charged with abusing enemy combatants, he *was* charged with detaining and interrogating them. *See, e.g.*, *Rasul*, 512 F.3d at 656-59, *vacated and remanded on other grounds*, 555 U.S. 1083, *reinstated in relevant part*, 563 F.3d at 528-29; *Allaithi*, 753 F.3d at 1333. Finally, courts have found conduct to be within the scope of employment under D.C. law where a laundromat employee shot a customer over a missing shirt and where a delivery man assaulted and raped a customer during a delivery-related dispute. *See, e.g.*, *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981); *Lyon v. Carey*, 533 F.2d 649, 652 (D.C. Cir. 1976). In each case, the alleged misconduct was a direct outgrowth of specific authorized conduct and incidental to official duties.

Here, the alleged tort is one for malicious prosecution. It is well-settled that the investigation and prosecution of suspected criminals is a core function of law enforcement and squarely falls within the scope of employment. *Hunter v. Leeds*, 941 F.3d 1265, 1278 n.16 (11th Cir. 2019). The allegations of "evidence tampering, witness intimidation, destruction of exculpatory material, and harassment" does not take that conduct outside of the scope of employment under D.C. law. As explained above, the focus is on the "type of

act" and the "underlying controversy"—here, the investigation and prosecution of suspected criminals—*not* the nature of the tort or the wrongful character of the alleged act. *Jacobs*, 724 F.3d at 221; *Ballenger*, 444 F.3d at 664. Even if the alleged conduct involved policy violations or criminal acts, that does not take the conduct outside the scope of employment under D.C law. *Smith*, 886 F.3d at 126. The same is true for allegations that the employee was motivated primarily by personal animus. *Plevnik*, 146 F.4th at 1183-84. That is because in prosecuting suspected criminals there is at least "some discernable purpose" to serve the employer even if the predominate purpose was allegedly personal and the intent malicious.

On this point, the Eleventh Circuit's decision in *Grider v. City of Auburn*, 618 F.3d 1240 (11th Cir. 2010), is particularly instructive. There, the court recognized one might reasonably believe that pursuing false charges and maliciously prosecuting someone, as alleged here, "is never a job-related function or within the scope of a police officer's employment." *Id.* at 1261. The court continued:

> However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally. The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (*i.e.*, job-related duties) and in furtherance of the employer's business.
>
> [Here,] we thus ask whether it was within [the officer's] job duties or scope of authority to make bribery charges against [the plaintiff], not whether he was authorized or employed to file false bribery charges in furtherance of the City's business. All of [the officer's] acts were clearly within the scope of his employment as a law enforcement officer. . . . Our inquiry is not whether [the officer] had the authority to prosecute in an unconstitutional manner and with malicious intent, but instead whether engaging in prosecutions is part of [the officer's] job-related powers and responsibilities. And, of course, law enforcement officers are empowered precisely to prosecute violations of law.

*Id.* at 1261-62.

8

The same analysis applies here with equal force. The question is not whether SA Miller was employed to tamper with and destroy evidence, intimidate/harass witnesses, or prosecute maliciously; the question is whether she was employed to investigate and prosecute crimes generally. That she allegedly engaged in malfeasance while doing so does not take the conduct outside the scope of employment under D.C. law. And because the alleged conduct falls within the scope of employment regardless of whether that conduct in fact occurred and could be fairly attributed to SA Miller, there are no fact-issues to resolve and thus, no reason to hold an evidentiary hearing or allow any discovery. Plaintiffs have simply failed at their burden of alleging facts sufficient to rebut the certification that SA Miller was acting in the scope of employment.

The citation by Plaintiffs to *Haddon v. United States*, 68 F.3d 1420 (D.C. Cir. 1995), only proves the point. There, a White House electrician threatened to beat a White House chef if he did not withdraw an Equal Employment Opportunity claim the chef filed against a work colleague. *Id.* at 1422. The D.C. Circuit agreed that the conduct was not in the scope of employment under D.C. law because the threat had nothing to do with the electrician's official duties: the "alleged tort did not arise directly out of [the electrician's] instructions or job assignment as a White House electrician." *Id.* at 1425. The court recognized the case would have been different if the electrician's threat stemmed from a dispute over the performance of *his own* work, but instead, he was randomly and personally defending a colleague. *Id.* That distinguished the case from cases like *Johnson*, 434 A.2d at 409, where a laundromat employee shot a customer over a missing shirt; and *Lyon*, 533 F.2d at 652, where a delivery man assaulted and raped a customer during a delivery-related dispute.

9

This all illustrates the main point: it is the underlying dispute or controversy, *not* the nature of the alleged wrong that governs whether conduct is in the scope of employment under D.C. law. D.C. law is purposely "broad enough to embrace *any intentional tort* . . . that was originally undertaken on the employer's behalf." *Ballenger*, 444 F.3d at 664 (emphasis added). That plainly is the case here. And this is all especially relevant in the malicious-prosecution context where virtually every malicious prosecution claim necessarily relies on an allegation that the prosecution was based on knowingly false or fabricated evidence. If that alone were sufficient to rebut a Westfall certification, then substitution would never be appropriate, and absolute immunity would be denied in virtually every case alleging a federal employee prosecuted a case maliciously. That most decidedly is not the law. *See, e.g.*, *Dolan v. United States*, 514 F.3d 587, 594 (6th Cir. 2008) ("Here, the individual federal defendants were employed by the federal government to investigate and prosecute cases . . . even if they acted improperly or maliciously in investigating or prosecuting Plaintiff . . . they were still within the scope of their employment.").

## CONCLUSION

The motion for an evidentiary hearing and discovery should be denied.

This 4th day of December, 2025.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　BRETT A. SHUMATE
　　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　　Civil Division

　　　　　　　　　　　　　　　　　　　　　C. SALVATORE D'ALESSIO, JR.
　　　　　　　　　　　　　　　　　　　　　Director, Civil Division, Torts Branch

　　　　　　　　　　　　　　　　　　　　　*/s/ Siegmund F. Fuchs*
　　　　　　　　　　　　　　　　　　　　　SIEGMUND F. FUCHS
　　　　　　　　　　　　　　　　　　　　　Senior Trial Attorney
　　　　　　　　　　　　　　　　　　　　　Civil Division, Torts Branch
　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice

P.O. Box 7146
Washington, D.C. 20044-7146
202-598-3916
siegmund.f.fuchs@usdoj.gov

Attorneys for the United States of America and SA Miller

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

  Thomas F. Ranieri, Esq.

                                    /s/ Siegmund F. Fuchs
                                    SIEGMUND F. FUCHS
                                    Senior Trial Attorney
                                    Civil Division, Torts Branch
                                    U.S. Department of Justice