**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
Orlando Division**

| | | |
|---|---|---|
| **Enrique Tarrio**, | ) | |
| | ) | |
| **Zachary Rehl**, | ) | |
| | ) | |
| **Ethan Nordean**, | ) | |
| | ) | |
| **Joseph Biggs**, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| **Dominic Pezzola** | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | **Case No.:**  6:25-cv-998 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **United States of America**, | ) | |
| | ) | |
| **FBI Special Agent Nicole Miller**, | ) | |
| *sued in her individual capacity*, | ) | |
| | ) | |
| **A.U.S.A. Jocelyn Ballantine**, **Esq.,** | ) | |
| *sued in her individual capacity*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **Unknown FBI Special Agents and/or** | ) | |
| **Assistant U.S. Attorneys Does No. I-X**, | ) | |
| *Unknown employees of the FBI and DOJ*, | ) | |
| *sued in their individual capacities*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## COMPLAINT

**COME NOW** Plaintiffs Enrique Tarrio (hereinafter "Tarrio"), Zachery Rehl (hereinafter

"Rehl"), Ethan Nordean (hereinafter "Nordean"), Joseph Biggs (hereinafter "Biggs"), and

Dominic Pezzola (hereinafter "Pezzola") (collectively, hereinafter "J6 Defendants" or

"Plaintiffs"), by and through undersigned counsel, and pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388, 397 (1971), among other causes of action, against the United States of America, Federal Bureau of Investigation Special Agent Nicole Miller (hereinafter "S.A. Miller"), Assistant U.S. Attorney Jocelyn Ballantine, Esq. (hereinafter "A.U.S.A. Ballantine"), and Unknown FBI Special Agents and/or Assistant U.S. Attorneys Does I-X (collectively, hereinafter "Defendants"), and in support of same, respectfully submits the following:

## INTRODUCTION

1.      The Plaintiffs bring this suit to seek redress for the multiple violations of their constitutional rights perpetrated by the Department of Justice and the Federal Bureau of Investigation and their agents in their political prosecution of the Plaintiffs for their alleged participation in the planning of the events of January 6, 2021.

2.      What follows is a parade of horribles: egregious and systemic abuse of the legal system and the United States Constitution to punish and oppress political allies of President Trump, by any and all means necessary, legal, or illegal.  Through the use of evidence tampering, witness intimidation, elicitation of false testimony, violations of attorney-client privilege, and placing spies to report on trial strategy, the Biden administration was able to achieve its goal of imprisoning vocal supporters of Donald Trump and silencing critics of the legitimacy of the 2020 election.

3.      In recognition of the corrupt and politically motivated persecution and imprisonment of the Plaintiffs, the Trump administration has granted a pardon to Tarrio and commuted the sentences of the remaining Plaintiffs. Ex. 1 – Pardon Order.

4.      Additionally, the Department of Justice in April 2026 moved the District of Columbia Court of Appeals to vacate the convictions of Nordean, Rehl, Biggs, and Pezzola and remand to the trial court so that their charges can be dismissed with prejudice.

5.      Now that the Plaintiffs are vindicated, free, and able to once again exercise their rights as American citizens, they bring this action against those who violated their Fourth, Fifth, and Sixth Amendment Rights under *Bivens v. Six Unknown Agents*, 403 U.S. 388, 397 (1971), malicious prosecution under D.C. law, federal malicious prosecution under 28 U.S.C. § 1331, and violations of 42 U.S.C. §§ 1985, 1986.

**PARTIES**

6.      Enrique Tarrio (hereinafter "Tarrio") is a private individual and a citizen of the United States of America.  He was also the *de facto* chairman of the Proud Boys, a patriotic activist organization for young men.  He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently pardoned by the Trump administration after the investigation and prosecution were revealed to be an unjustified and illegitimate political prosecution.   Tarrio was prosecuted together with the other Plaintiffs as joint criminal Defendants.  Ex. 1.

7.      Zachery Rehl (hereinafter "Rehl") is a private individual and a citizen of the United States of America.  He is also one of the managing members of the Proud Boys, a patriotic activist organization for young men.  He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be an unjustified and illegitimate political prosecution.  Rehl was prosecuted together with the other Plaintiffs as joint criminal Defendants.  *Id.*

8.      Ethan Nordean (hereinafter "Nordean") is a private individual and a citizen of the United States of America.  He is also one of the managing members of the Proud Boys, a patriotic activist organization for young men.  He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be an unjustified and illegitimate political prosecution.  Nordean was prosecuted together with the other Plaintiffs as joint criminal Defendants.  *Id.*

9.      Joseph Biggs (hereinafter "Biggs") is a private individual and a citizen of the United States of America.  He is also one of the managing members of the Proud Boys, a patriotic activist organization for young men.  He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be an unjustified and illegitimate political prosecution.  Biggs was prosecuted together with the other Plaintiffs as joint criminal Defendants.  *Id.*  He was an Army staff sergeant with an exceptional service record and was awarded two Purple Hearts during his time defending our country.

10.     Dominic Pezzola (hereinafter "Pezzola") is a private individual and a citizen of the United States of America.  He is also a member of the Proud Boys, a patriotic activist organization for young men.  He was arrested by the FBI and prosecuted by the DOJ ostensibly for planning the events of January 6, 2021, and subsequently had his sentence commuted by the Trump administration after the investigation and prosecution were revealed to be an unjustified and illegitimate political prosecution.  S.A. Miller and A.U.S.A. attempted to elicit false testimony from Pezzola against Biggs and threatened him with increased jail time if he failed to

agree to falsely testify against Biggs. Pezzola was prosecuted together with the other Plaintiffs as joint criminal Defendants. *Id.*

11. The Proud Boys are an organization of patriotic political activists dedicated to preserving and promoting Western Civilization, in general, and American society, in particular. The Proud Boys organization and its members have been subject to systemic harassment and mischaracterization by far-left-wing organizations such as the Southern Poverty Law Center, currently under indictment for fraud against financial institutions and its donors, and the Anti-Defamation League, and politically biased state and federal prosecutors.

12. Lieutenant Shane Lamond (hereinafter "Lt. Lamond") was a Lieutenant and a twenty-two-year veteran with the Washington, District of Columbia Metropolitan Police Department who was a witness to events relevant and exculpatory to the Plaintiffs and was to be a star witness for the criminal defense. SA No. 1 and No. 2, under direction and at the behest of S.A. Miller and A.U.S.A. Ballantine, visited Lt. Lamond soon before he was set to testify on behalf of the Plaintiffs, who threatened him with obstruction of justice charges if he provided exculpatory testimony on behalf of the Plaintiffs, and especially Tarrio.

13. Paid Confidential Informant Jen Loh (hereinafter "C.I. Loh") was a paid informant working on behalf of the FBI to infiltrate the Proud Boys network and gain access to information regarding the trial communications and strategies of the Plaintiff's defense attorneys, and communicated that privileged information back to the FBI and DOJ to assist the DOJ in its case against the Defendants. She was one of two confidential informants, but the identity of the second is currently unknown.

14.     The Department of Justice (hereinafter "DOJ") is an executive branch department of the United States government that enforces and prosecutes violations of federal law and supervises the FBI.

15.     The Federal Bureau of Investigation (hereinafter "FBI") is a federal law enforcement agency and is a Bureau located within and under the authority of the Department of Justice.  It is the agency responsible for investigating and prosecuting the Plaintiffs.

16.     FBI Special Agent Nicole Miller (hereinafter "S.A. Miller") is a special agent involved with the investigation and prosecution of the Plaintiffs, who, out of a personal animus against the Plaintiffs, and in coordination with other employees of the FBI and DOJ, destroyed exculpatory evidence and altered evidence to attempt to hide that she was involved in a conspiracy with A.U.S.A. Ballantine to embed C.I. Loh in the Plaintiffs trial team and hide their operation to wire-tap the Plaintiffs communications with their trial team and the trial team's internal communication, as well as tampered with witness to suppress exculpatory evidence and to elicit false testimony incriminating to the Plaintiffs.

17.     S.A. Miller, in cooperation with A.U.S.A. Ballantine and the Unknown FBI Special Agents and Assistant U.S. Attorneys I-X, also abused her position and authority to harass, persecute, and otherwise harm the Plaintiffs and their families through her attempts to "de-bank" the Plaintiffs from their financial institutions, strangle their businesses, and cancel their veteran's benefits to cause the Plaintiffs' families economic hardship, both to punish the Plaintiffs and to pressure them to comply with the government's demands.  Ex. 2 – Miller's Cross-Examination.

18.     Assistant United States Attorney Jocelyn Ballantine (hereinafter "A.U.S.A. Ballantine") was one of the prosecutors on the team that indicated and tried, first, just Pezzola,

and then, all of the Plaintiffs, and who, out of a personal animus against the Plaintiffs, and in coordination with other employees of the FBI and DOJ, tampered with witnesses to suppress testimony exculpatory to the Plaintiffs and elicit false testimony incriminating to the Plaintiffs and conspired with S.A. Miller and the other Unknown FBI Special Agents and Assistant U.S. Attorneys I-X to suppress or alter evidence to hide the confidential informants embedded among the Plaintiffs to spy on their attorneys and defense, and their operation to monitor and collect communications of the Plaintiffs with their trial team, and the Plaintiffs' trial team's internal communications.

19.     Unknown FBI Special Agents and Assistant U.S. Attorneys I-X are agents, prosecutors (acting as investigators), and/or employees of the FBI and DOJ who violated the Plaintiffs' constitutional rights in cooperation and conspiracy with S.A. Miller and A.U.S.A. Ballantine as described herein.

### JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331and 28 U.S.C. § 1367.

21.     Plaintiffs bring their Fourth Amendment claims for compensatory damages under *Bivens v. Six Unknown Agents*, 403 U.S. 388, 397 (1971), seeking an award of damages for acts undertaken by the Defendants in violation of their Fourth Amendment rights.

22.     Plaintiffs bring their Fifth Amendment claims for compensatory damages under *Bivens*, seeking an award of damages for acts undertaken by the Defendants in violation of their Fifth Amendment rights.

23.     Plaintiffs bring their Sixth Amendment claims for compensatory damages under *Bivens*, seeking an award of damages for acts undertaken by the Defendants in violation of their Sixth Amendment rights.

24.     Plaintiffs bring an action sounding in malicious prosecution under D.C. law, or, in the alternative, under federal law.

25.     Plaintiffs bring an action sounding in 42 U.S.C. § 1985 for conspiracy to violate their constitutional rights through witness tampering, viewpoint discrimination, and 42 U.S.C. § 1986 for failure to stop a conspiracy against constitutional rights.

26.     This Court may exercise personal jurisdiction over the Defendants under 28 U.S.C. § 1391(e), Plaintiff Biggs lives in the Middle District of Florida, the harm was intended to befall Plaintiff in this District, and damages to the Plaintiff have accrued in this District..

27.     Venue is properly within this District under 28 U.S.C. § 1402 because it is where the Plaintiff resides and where actions undertaken by the government and the Plaintiff occurred.

### STATEMENT OF FACTS

28.     All preceding paragraphs are incorporated by reference herein.

29.     On January 6, 2021, there was an incursion into the Capitol building by elements of the federal government,[1] leftist agitators,[2] and Trump supporters, cynically dubbed an insurrection[3] (hereinafter "January 6").

30.     Members of the Proud Boys, a patriotic activist organization, were present at January 6, including all Plaintiffs but Tarrio, but did not engage in an attempt to overthrow the

---

[1]     "DOJ watchdog says FBI had 26 confidential sources in DC for Jan. 6 riot -- but no evidence of undercover agents" Ryan King, NEW YORK POST, https://nypost.com/2024/12/12/us-news/doj-watchdog-says-fbi-had-26-confidential-sources-in-dc-for-jan-6-riot-but-no-evidence-of-undercover-agents/  (last accessed May 10, 2025).
[2]     "Who is John Sullivan?  Left-wing Activist Charged in Capitol Riot" Ewan Palmer, NEWSWEEK, https://www.newsweek.com/john-sullivan-capitol-attack-leftwing-antifa-1561898 (last accessed May 10, 2025.)
[3]     "Key facts to know about the Jan. 76 insurrection" Zhoa, Jie Jenny and Logan, Erin B., LA TIMES, https://www.latimes.com/politics/story/2022-01-05/by-the-numbers-jan-6-anniversary (last accessed May 10, 2025).

government, direct others to do so, have a plan to do so, or otherwise provoke the crowd into doing so.

31.    The Plaintiffs, however, spoke with people who were at the Capitol before, during, and after January 6.

32.    A document was also planted in Tarrio's inbox, which the government at trial admitted he did not compose, open, read, or transmit to anyone, and which contained plans for a peaceful act of civil disobedience in protest of the election of President Joseph Biden in which the participants would stage a "sit-in" at a building adjacent to the Capitol Building, known as the "1776 returns" document (hereinafter the "1776 Doc."). Ex. 3 – 1776 Doc.

33.    S.A. Miller, while acting under color of federal law and in her individual capacity, fabricated evidence and coerced false testimony from cooperating witness Jeremy Bertino ("Bertino") concerning the "1776 Returns" document, by coaching him to authenticate the document as being written by Tarrio – about which he had no direct knowledge – and obtaining his cooperation to falsely testify by threatening him with 25 years in prison if he did not play ball. Ex. 4 – Bertino Affidavit.

34.    Based on these communications and the 1776 Doc, the government indicated, charged, and convicted the Plaintiffs of planning the incursion into the Capitol under a novel theory of criminal conspiracy called the "tool theory".[4]

*The Defendants' arrest.*

Pezzola Arrest and Imprisonment

---

[4]    Despite the legal jiggery-pokery employed by the government to obscure the fact, the Plaintiffs were essentially convicted of "stochastic terrorism," a leftist bugbear used to describe rhetoric offensive to them that they claim provokes violent acts.

35.     On January 15, 2021, Pezzola surrendered to federal authorities peacefully and voluntarily.

36.     Despite this, federal authorities raided Pezzola's home, subjecting his wife and children to shouting militarized policemen, Does I-X, carrying heavy weaponry (hereinafter "Raiders").  The Raiders also physically assaulted Mrs. Pezzola, who was not resisting, and caused her bodily harm.  The Raiders destroyed Pezzola's private property, damaged his residence, and nearly started an electrical fire in the home with their recklessness.

37.     The government did not have probable cause to arrest Pezzola but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

38.     The circumstances of Pezzola's imprisonment were bleak.  He was detained without bond for two and a half years waiting for trial.  He was held in solitary confinement without cause, in addition to being subjected to unsanitary and unsafe conditions that violated basic standards usual to American jails.

39.     Pezzola was denied access to his lawyers throughout his prosecution and was refused visits from his family, often for uninterrupted months.  He was not provided with medical care and was denied properly prescribed medication, leading to long-term health problems that continue to this day.

40.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

41.     S.A. Miller and A.U.S.A. Ballantine also attempted to induce Pezzola to provide false testimony that Biggs was carrying a deadly weapon on January 6, and when he did not agree to do so, they increased his charges and included him in the seditious conspiracy counts, despite having recently joined the Proud Boys and had little to no interaction with Tarrio or the remaining Plaintiffs.  S.A. Miller and A.U.S.A. Ballantine knew that Biggs had not been carrying a weapon and were attempting to suborn Pezzola to strengthen their case through false testimony.

42.     The Defendants' cruel and unusual treatment of Pezzola indicates an intention to make Pezzola suffer as punishment for crimes of which he had not been convicted, to satisfy the Defendants' animus against Pezzola.

<u>Biggs' Arrest and Imprisonment</u>

43.     On January 20, 2021, Biggs contacted the FBI to inquire whether there was a warrant out for his arrest.  The FBI confirmed that there was such a warrant.

44.     Biggs surrendered himself to the FBI peacefully at a pre-arranged and mutually agreed-upon location.

45.     Despite his cooperation and surrender, the FBI decided to stage a forceful raid upon his home shortly after his arrest, breaking down his front door and doing considerable property damage.  The rationale for such an approach, considering the then-suspect Biggs was already in custody, is unclear. Ex. 5 – Bigg's Investigation Report.

46.     The government did not have probable cause to arrest Biggs but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

47.     Following his arrest, Biggs was detained without bond for over two and a half years, enduring prolonged priors in solitary confinement under deplorable and unsanitary conditions.

48.     Like the other Plaintiffs, Biggs was denied access to counsel for months at a time.

49.     Biggs was also prevented from visiting with his family and held in solitary confinement without cause for uninterrupted months.

50.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

51.     Biggs was denied adequate medical care and was refused proper medication, leading to misdiagnosis of illness, which exacerbated his prior health issues.  This has led to Biggs suffering from long-term health problems that continue to this day.

52.     The Defendants' cruel and unusual treatment of Biggs indicates an intention to make Biggs suffer in punishment for crimes he had not been convicted of to satisfy the Defendants' animus against Biggs.

<u>Nordean's Arrest and Imprisonment</u>

53.     In February 2021, Nordean's home was raided by heavily armed FBI and other federal agencies in order to secure his arrest.  The FBI utilized automatic weapons and flashbang grenades to execute their no-knock warrant, terrorizing Nordean's family, while Nordean was thrown bodily to the ground and held at gunpoint while being arrested.

54.     The government did not have probable cause to arrest Nordean or search his residence but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

55.     Thereafter, Nordean was held in pre-trial detention without bond for two and a half years, including over a year in solitary confinement.  During his imprisonment, he was denied access to his lawyers and his family for months at a time and subjected to deplorable and unsanitary conditions.

56.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

57.     The Defendant's cruel and unusual treatment of Nordean indicates an intention to make Nordean suffer in punishment for crimes of which he had not been convicted to satisfy the Defendants' personal animus against Nordean.

<u>Tarrio's Arrest and Imprisonment</u>

58.     On the morning of March 8, 2022, the FBI raided the home of Tarrio and arrested him.

59.     The government did not have probable cause to arrest Tarrio or search his residence but clearly hoped to find some *after* it had already arrested him, and it had free rein to search through his home, records, documents, and computers.

60.     Tarrio was held in solitary confinement nearly non-stop throughout pre- and post-trial proceedings in unsanitary and degrading conditions.

61.     Tarrio was refused access to his lawyers and his loved ones for months at a time, isolating him from his loved ones without cause.

62.     In addition to the cruelty of holding an accused man in solitary confinement and denying him access to his family, the Defendant's refusal to allow him to interact with his legal team had a severely negative and prejudicial detriment to the preparation of his legal defense, in violation of his Constitutional rights.

63.     The Defendant's cruel and unusual treatment of Tarrio indicates an intention to make Tarrio suffer in punishment for crimes of which he had not been convicted to satisfy the Defendants' personal animus against Tarrio.

<u>Rehl Arrest and Imprisonment</u>

64.     Rehl was arrested at his home on March 17, 2021, by heavily armed and hostile federal agents in an early morning raid, shocking Rehl's wife, who was in her third trimester at the time.

65.     The government did not have probable cause to arrest Rehl or search his home, but it clearly hoped to find some after it had already arrested him, and it had free rein to search his home, records, documents, and computers.

66.     The magistrate judge at the jail granted him bail, but the Department of Justice refused to release him, and instead brought him before an extremely prosecution-friendly District of Columbia Circuit judge, who naturally refused bail and ordered that he be held in confinement throughout his prosecution.

67.     In what by now should be a familiar refrain, Rehl was subjected to seventeen months in solitary confinement without cause.

68. When he was transferred to the federal correctional facility in Philadelphia, he was given "diesel therapy" by the prison. Diesel therapy is when prison officials refuse to provide sufficient food to a prisoner and hold that prisoner in chains *while in solitary confinement*.

69. While in prison, Rehl missed the birth and early childhood of his youngest daughter, as well as his eldest daughter's final years of high school and her graduation.

70. Rehl's family suffered in poverty while Rehl was wrongly imprisoned, often not having enough to afford groceries for the family. Ex. 6 – August 19, 2022 Veteran's Affairs Letter.

71. The Defendant's cruel and unusual treatment of Rehl indicates an intention to make Rehl suffer in punishment for crimes of which he had not been convicted to satisfy the Defendants' personal animus against Rehl.

*"1776 returns" document planted in Tarrio's email.*

72. Unable to find any actual evidence that the Plaintiffs were engaged in a criminal conspiracy to overthrow the government, or, for that matter, anything illegal at all, on January 6, the government undertook to manufacture some.

73. The "1776 returns" document (hereinafter the "1776 Doc.") was used as essential evidence to show that the Plaintiffs were engaged in a seditious conspiracy to overthrow the United States government. Ex. 7 –221121 Pre-Trial Conference, pg. 5; Ex. 3.

74. The 1776 Doc contained a plan in which the participants intended to stage a sit-in in a building near the Capitol building in protest of Biden's election. Ex. 3.

75. Metadata associated with the file indicated that it had been placed in Tarrio's inbox by a third party.

76.      Tarrio denied composing, reading, or transmitting the 1776 Doc to anyone, and the government failed to provide any evidence that Tarrio composed the "1776 returns" document, let alone even opened it aside from the "fact" that they "found" it in his email.  Ex. 8 – 230213 Trial Day 32, pg. 9156.

77.      The FBI forensic analyst, Ms. Jennifer Cate Caine, whose testimony was called by the prosecution, stated that the 1776 Doc was never viewed, opened, edited, or shared by Tarrio.

78.      The "1776 Returns" document was falsely authenticated by Bertino and was used as the main way of tying the Plaintiffs together and proving there was a seditious conspiracy. Ex. 4.

79.      The government was also unable to prove that any of the other Plaintiffs opened or read it, or that it had even been forwarded to them. Ex. 8,  pg. 9158.

80.      Despite S.A. Miller, A.U.S.A. Ballantine, and the Unknown FBI Special Agents and Assistant U.S. Attorneys knowing that the 1776 Doc was not authentic or connected to the Plaintiffs, they used the 1776 Doc as evidence supporting probable cause for the Plaintiffs' arrest, prosecution, and conviction.

*Prosecution utilized the novel and unconstitutional "tool" theory
of criminal liability to convict the Plaintiffs.*

81.      The Defendants utilized a novel legal theory called the "tool" theory.  Under this theory, the Defendants argued that any wrongful or illegal action taken by any member of the crowd present on January 6 was attributable to the Plaintiffs, regardless of whether any of the Plaintiffs had actually ever directed, spoken to, or even known the person committing the crime.

82.     The Plaintiffs were charged with seditious conspiracy under 18 U.S.C. § 2384[5] which meant that under the novel "tool" theory, the Plaintiffs were charged with violations of 18 U.S.C. § 1512(k)[6], 18 U.S.C. § 1512(c)(2) and 2[7], 18 U.S.C. § 231(a)(3)[8], 18 U.S.C. § 1361[9], 18 U.S.C. § 111(a)(1)[10], and 18 U.S.C. § 372[11] for actions taken by third parties present at January 6, over which the Plaintiffs had no authority, were not party to the alleged seditious conspiracy, and to whom the Plaintiffs had not directed any communications.

83.     The Plaintiffs themselves did not obstruct the proceedings at the Capitol, resist arrest, conspire to impede the police, or participate in civil disorder, nor did they plan for or order anyone else to do so.

84.     In convicting the J6 Defendants under 18 U.S.C. § 2384 by interpreting it as encompassing the novel criminal conspiracy "tool" theory propounded by the government, the government expanded the coverage of the statute to become so vague as to that it fails to give ordinary people fair notice of the conduct it punishes because you can be convicted for conspiracy with people over whom you have no authority and to whom you gave no orders.

85.     The government's main piece of evidence to show the Plaintiffs were part of a seditious conspiracy was the 1776 Doc, which not one of the Plaintiffs had ever seen, and was authenticated by false testimony provided by a witness intimidated and coached by S.A. Miller and A.U.S.A. Ballantine.  Then, assuming the conspiracy had not been proven, the Defendants used the "tool" theory to charge the Defendants with crimes allegedly committed by people over

---

[5]     Seditious Conspiracy.
[6]     Conspiracy to Obstruct an Official Proceeding.
[7]     Obstruction of an Official Proceeding and Aiding and Abetting.
[8]     Civil Disorder and Aiding and Abetting.
[9]     Destruction of Government Property and Aiding and Abetting.
[10]     Assaulting, Resisting, or Impeding Certain Officers.
[11]     Conspiracy to Prevent an Officer from Discharging Any Duties.

whom they had no control, by linking those crimes to the seditious conspiracy because they occurred roughly around the same time and were generally related to January 6.

*Defendants spied on the Plaintiffs' trial team using paid confidential informants and monitored communications protected by attorney-client privilege.*

86.     To secure an unfair advantage in litigation and ensure that the Plaintiffs were convicted and sent to prison regardless of the strength of the government's case, the FBI and DOJ monitored attorney-client communications and used paid confidential informants as spies on the Plaintiffs and the Plaintiffs' defense team.  Ex. 9 – March 23, 2023 Article.

87.     Specifically, S.A. Miller, while acting under color of federal law and in her individual capacity, engaged in the following misconduct that directly violated the constitutional rights of all Plaintiffs as follows:

   a.   S,A, Miller improperly surveilled Plaintiffs' jailhouse telephone calls and emails with their defense attorneys while they were held in pretrial detention and shared the contents of those monitored communications with the prosecution team.

   b.   S.A. Miller was directed by her supervisor to destroy 338 items of evidence material to Plaintiffs' defense. This directive and her involvement in the destruction were documented in S.A. Miller's internal FBI messages.  S.A. Miller expressly states in chat logs that she has found pertinent and interesting communications between Rehl and his attorney that her colleagues should review. Ex. 10 – S.A. Miller Chat Log.

   c.   When ordered by the Court to produce her internal Lync communications, S.A. Miller attempted to filter and delete messages she deemed unrelated or from the case, but many relevant contextual messages were left as "hidden rows" in the Excel spreadsheet instead of being permanently deleted. Defense counsel

discovered these hidden rows while preparing for S.A. Miller's cross-examination in March 2023.

d.  S.A. Miller harbored and acted upon personal bias against Plaintiff Tarrio specifically because of the substantial amount of money he raised in support of the January 6 defendants' defense.

e.  As to Rehl, S.A. Miller was also jealous of the level of public support and money raised for him and made derogatory statements, including that Plaintiff Rehl's wife should cheat on him while he was imprisoned.  She also stated she hopes Rehl's house would foreclose and would get beer and popcorn ready when it did.

f.  Because the United States charged Plaintiffs as part of an overarching conspiracy encompassing many January 6-related events and defendants, all J6-related materials and discovery were relevant and discoverable in Plaintiffs' criminal prosecutions. S.A. Miller's surveillance, destruction of evidence, deletion (or attempted deletion) of records, and bias therefore impaired all Plaintiffs' rights to a fair trial, access to exculpatory and impeachment material, due process of law, and effective assistance of counsel.

88.    Further, the prosecution failed to disclose the presence of informants embedded with the Plaintiffs and their attorneys to the defense team until right before one of their informants, C.I. Loh, was set to testify at trial.

89.    Specifically, while Plaintiffs Tarrio, Biggs, Nordean, and Pezzola were held in pretrial detention, S.A. Miller and the Unknown FBI Special Agents I-X directed, controlled, and/or authorized at least one confidential human source, C.I. Loh, to engage in unauthorized and intrusive communications that violated Plaintiffs' constitutional rights, as follows:

a. As to Tarrio, C.I. Loh directly communicated with Tarrio while he was incarcerated, communicated with Tarrio's defense attorneys about confidential trial strategy, communicated with Tarrio's family members, and infiltrated and participated in a private "J6ers family prayer group" that included Plaintiff Tarrio's mother and girlfriend.

b. As to Biggs, C.I. Loh communicated directly with Biggs while he was in jail and discussed trial strategy with Biggs' defense attorneys.

c. As to Nordean, C.I. Loh communicated directly with Nordean while he was in jail, discussed trial strategy with Nordean's defense attorneys, and communicated with Nordean's wife and mother.

d. As to Pezzola, C.I. Loh embedded herself with his wife and mother, and solicited information regarding Pezzola, discussing the trial, how Pezzola intended to defend himself, and other matters related to his family and his legal situation to give the investigators and prosecutors knowledge regarding his state of mind, his defense strategy, and gain leverage over him.

e. As all of the Plaintiffs were tried together, under the same theories, and by the same investigators and prosecutors working together, any information gained through unconstitutional means by C.I. Loh, which negatively impacted one of the Plaintiffs, would by extension negatively impact the rest of the Plaintiffs, and violate their rights under the Fourth, Fifth, and Sixth Amendments, in this case, including Rehl.

90.     C.I. Loh was involved with the Plaintiffs and their trial team from around the time of the Plaintiffs' arrests throughout the trial, and at all times during that period, she was acting under the orders of the government agencies responsible for prosecuting the Plaintiffs.

91.     The Plaintiffs' trial teams worked with each other to prepare the Plaintiffs' defense, and shared information and strategies with one another in the course of that preparation. As such, insight into any one of the Plaintiffs' defense team members provided insight into the others and so affected all Plaintiffs' right to counsel.

92.     C.I. Loh provided information regarding the defense's posture, evidence, and its trial strategy to the FBI and the DOJ, all the while holding herself out to the Plaintiffs as a trustworthy friend, assistant, and ally.

93.     In fact, C.I. Loh was so trusted by the Plaintiffs and their attorneys that the Plaintiffs called her as a defense witness, which led to the revelation that she was a CI.

94.     After being found out, the prosecution claimed that only one CI was embedded with the Plaintiffs, but S.A. Miller testified that there were at least two.[12]  The only CI whose identity Plaintiffs are aware of is C.I. Loh.

95.     When it was revealed at trial that C.I. Loh was actually a paid FBI informant, the Judge refused to order a mistrial and prohibited the defense team from asking questions regarding what she did on behalf of the FBI to the Plaintiffs.  Ex. 11 – Defendants' Corrected Motion to Compel Disclosure of all FBI Interview Reports and all DOJ Memos Relating to the Recording and Reporting of the Defense Team (Case No. 1:21-cr-00175-TJK).

*Federal Bureau of Investigation agents threaten defense witness*
*to prevent his appearance to present exculpatory evidence at trial and coerce false testimony*
*from another witness.*

---

[12]     "Federal prosecutors reveal Proud Boys witness was informant" Kunzelman, Michael and Whitehurst, Lindsay, ASSOCIATED PRESS, https://apnews.com/article/proud-boys-enrique-tarrio-capitol-riot-informant-ce0a1cf20c17c95b1ea3306fb70d93c4 (last accessed June 4, 2025).

96.     Metropolitan Police Department Lieutenant Shane Lamond ("Lt. Lamond") was set to be a star witness in support of the Plaintiff's defense in their criminal trial.

97.     Lt. Lamond was going to testify that Tarrio had been coordinating with the Metropolitan police to secure bicycle police to escort him throughout the National Mall on January 6, as Tarrio was scheduled to speak at several events that day.

98.     Lt. Lamond could also testify that Tarrio was unable to attend at the last minute, and so did not have the escort, but he was also unable to participate in any event on January 6 or communicate with anyone who was.

99.     A.U.S.A. Ballantine and Special Agents John Doe Nos. 1 and 2 (hereinafter "SA No. 1" and "SA No. 2"), while acting under color of federal law and in their individual capacities, obstructed Plaintiffs' constitutional right to present a defense by interfering with a key exculpatory witness, Lt. Lamond. This misconduct was directed primarily at Tarrio but substantially affected all Plaintiffs Joseph Biggs, Ethan Nordean, Zachary Rehl, and Dominic Pezzola, as follows:

    a.  Lt. Lamond possessed material, exculpatory information concerning his communications with Tarrio and facts relevant to the charges against the entire group of Plaintiffs.

    b.  SA No. 1 and SA No. 2 visited Lt. Lamond shortly before he was set to testify as a defense witness and threatened him with obstruction-of-justice charges if he testified on behalf of the Plaintiffs.

    c.  A.U.S.A. Ballantine communicated with the prosecutors assigned to Lt. Lamond's separate criminal case and actively participated in efforts to obstruct and prevent Lt. Lamond from testifying in Plaintiffs' criminal trial.

d.  As a direct result of Defendants' actions, Lt. Lamond was threatened with criminal prosecution, invoked his Fifth Amendment privilege against self-incrimination, and became unavailable to provide exculpatory testimony.

e.  This intentional obstruction of a material defense witness violated the due-process rights, compulsory-process rights (Sixth Amendment), and fair-trial rights of all Plaintiffs.

100.  The FBI's intimidation tactics worked: Lt. Lamond refused to appear as a defense witness, and his evidence was never heard by the jury.

101.  Additionally, Defendant S.A. Miller, while acting under color of federal law and in her individual capacity, fabricated evidence and coerced false testimony from cooperating witness Bertino concerning the "1776 Returns" document, which directly violated the constitutional rights of Tarrio and, by extension, Biggs, Nordean, Rehl, and Pezzola, as follows:

a.  In or around mid-2022, S.A. Miller personally showed Bertino the "1776 Returns" document and falsely told him that Tarrio authored it, possessed it, and that it was damning evidence of seditious conspiracy.

b.  In truth, Tarrio did not author, view, edit, or share the "1776 Returns" document.

c.  Bertino's initial proffer to the government exculpated the Plaintiffs.  He told the government that there had been no plan for an insurrection or any violent action, that there had been no communication regarding any such plan, and that he was not aware of anything that might incriminate them.

d.  Subsequent to the initial proffer, S.A. Miller threatened Bertino with twenty-five years in prison for being a part of a "seditious conspiracy", lied to Bertino that the "1776 Returns" document was authored by Tarrio – about which he subsequently

testified – and coached his testimony, forcing him to refrain from making any further exculpatory statements regarding the Plaintiffs, essentially coercing Bertino to allow her to testify through him.

e.  Terrified of S.A. Miller's retribution were he not to go along with the testimony she was feeding him, Bertino changed his testimony and provided false evidence against Plaintiffs at trial.

f.  Bertino has since admitted under oath (in a 2025 sworn affidavit) that S.A. Miller's lies about Plaintiff Tarrio's authorship of the document caused him to commit perjury and that he was coached by Miller and prosecutor Jocelyn Ballantine.  Ex. 4.

g.  Because the government used the "1776 Returns" document as core evidence of the alleged overarching seditious-conspiracy count against the entire group of Plaintiffs, S.A. Miller's fabrication and witness coercion impaired the fair-trial rights, due-process rights, and Sixth Amendment rights of all Plaintiffs – this document was the rope that hung them together and on which the government's case rested, and it was fabricated evidence authenticated by false testimony elicited by S.A. Miller and Ballantine.

102.    S.A. Miller, A.U.S.A. Ballantine, Unknown FBI Special Agents and/or Assistant U.S. Attorneys also attempted to elicit false testimony from Pezzola against Biggs.

103.    After he was indicted, Pezzola was approached by a group of agents and prosecutors, including S.A. Miller and A.U.S.A. Ballantine, who threatened him with serious charges if he refused to testify that Biggs brought a deadly weapon to January 6.

104. At the time, Pezzola was not part of the prosecution being brought under seditious conspiracy charges against Tarrio, Nordean, Biggs, and Rehl.

105. S.A. Miller, A.U.S.A. Ballantine, and the Unknown FBI Special Agents and/or Assistant U.S. Attorneys knew that Biggs had not brought such a weapon to January 6, and Pezzola knew it as well.

106. After refusing to provide false testimony against Biggs, and in retaliation by S.A. Miller and A.U.S.A. Ballantine, Pezzola's charges were increased to include the seditious conspiracy charges, among others, and included in the prosecution against Tarrio et al., rather than in a separate trial for lower offenses.

107. Prior to the trial, Pezzola had only just joined the Proud Boys and was not close with or in communication with Tarrio, Biggs, and Nordean.

*S.A. Miller, on behalf of the DOJ and FBI, materially altered and destroyed evidence exculpatory to the J6 Defendants.*

108. S.A. Miller was an FBI agent assigned to the Plaintiffs' case, and was the agent given the task of gathering evidence to prove the Plaintiffs were engaged in a seditious conspiracy.

109. As such, she was pivotal to the government's case against the Plaintiffs, as the primary charge brought against them was conspiracy. S.A. Miller had unfettered access to and a deep understanding of the evidence – such as it was – against the Plaintiffs.

110. S.A. Miller was directed to destroy evidence relevant and exculpatory to the Plaintiffs and did so.

111. Specifically, S.A. Miller, while acting under color of federal law and in her individual capacity, altered evidence to conceal improper FBI contacts with confidential

informants who had infiltrated the defense team, which violated the constitutional rights of Rehl and Tarrio in particular and, by extension, Biggs, Nordean, and Pezzola, as follows:

a. Throughout the pretrial and trial periods (2022–2023), S.A. Miller was directed to, and did, alter evidence specifically to obscure and hide FBI meetings and communications with confidential informants embedded in and around the Proud Boys trial team.

b. This alteration of evidence is documented in S.A. Miller's own Lync messages.

c. The misconduct had a more provably direct and substantial impact on the defense of Rehl and Tarrio because the Lync messages contained direct evidence of the embedded informants' communications with their attorneys, families, and trial strategy, though not all messages and communications between S.A. Miller, Ballantine, and Does I-X were provided to the Plaintiffs at the time.

d. As a direct and foreseeable result of S.A. Miller's evidence alteration, the full scope of the government's infiltration of the defense team was concealed from all Plaintiffs, impairing their ability to detect, challenge, or mitigate the intrusions.

e. This misconduct violated the due-process rights, Sixth Amendment right to counsel, and fair-trial rights of all Plaintiffs, because all Plaintiffs were tried under common factual circumstances and charges, were prosecuted by the same prosecutorial team, had a common trial, and their defenses were prepared by defense attorneys working with each other on the group's defense. As such, infiltration of one node of the defense team, or alteration of evidence related to one of the Plaintiffs, had a knock-on effect on the remaining Plaintiffs, violated their constitutional rights, and adversely affected their defense.

112.    S.A. Miller openly expressed disdain and personal hatred for the Plaintiffs and their political views and was motivated by personal animus to ensure that the Plaintiffs suffered for those views, regardless of whether the Plaintiffs were innocent of the charges brought against them.  Ex. 2.

*President Trump's pardon and commutation order.*

113.    On January 20, 2025, the President of the United States of America commuted the sentences of Nordean, Biggs, Rehl, and Pezzola for their alleged roles in the January 6 event.

114.    In pertinent part, that pardon states:

> This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and is a process of national reconciliation.  Acting pursuant to the grant authority in Article II, Section 2, of the Constitution of the United Sates, I do hereby: (a) commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capital on January 6, 2021, to time served as January 20, 2025 [including the Plaintiffs, excepting Tarrio] . . . .[13]

(hereinafter "Pardon Order").  Ex. 1 – Pardon Order.

115.    On March 3, 2025, Nordean, Biggs, Rehl, and Pezzola (hereinafter "Commuted Plaintiffs") filed a Motion to Dismiss Case with Prejudice Due to Prosecutorial Misconduct and Outrageous Government Conduct with the United States District Court for the District of Columbia.  *U.S.A. v. Nordean et al.*, Case 1:21-cr-00175-TJK.  Ex. 12 – Motion to Dismiss.

---

[13]    *Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events At or Near the United States Capitol on January 6, 2021*, Trump, Donald J., THE WHITE HOUSE, https://www.whitehouse.gov/presidential-actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/ (last accessed May 9, 2025).

116.    In that motion, the Commuted Plaintiffs respectfully requested the Court to "vacate the conviction [sic] and dismiss the case . . ." because of the "serious misconduct and constitutional violations [committed] by the prosecution . . . ." *Id.*

117.    Concurrently, the Pardon Order pardoned Tarrio for all events related to the January 6 event.

118.    Trump granted "a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." *Id.*

119.    The Pardon Order directed the "Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id.*

120.    On or around May 13, 2025, Pezzola, Biggs, Nordean, and Rehl applied to the Trump administration for pardons, and their applications are currently being considered.  Ex. 13 – Plaintiff's Pardon Applications.

121.    On April 14, 2026, the Justice Department made an unopposed Motion to Vacate Convictions and Remand for Dismissal with Prejudice to the United States Court of Appeals for the District of Columbia, asking that Court to vacate Nordean, Rehl, Biggs, and Pezzola's convictions and remand those convictions to the trial court to be dismissed with prejudice.  Ex 14 – DOJ Motion.

122.    At this juncture, it seems likely that Nordean, Rehl, Biggs, and Pezzola's convictions will soon be vacated and dismissed with prejudice by the time this suit has reached trial.

123.    The Defendants' wrongful acts have resulted in serious harm to the Plaintiffs.

124.    Due to their arrest, prosecution, and imprisonment, the Plaintiffs lost significant income from employment and/or the destruction of businesses they had built prior to that time.

a.    Prior to the Defendants' wrongful acts, Tarrio had multiple online stores and a thriving podcast with many listeners.  His income from these sources was in the tens of thousands of dollars per month.  Upon his imprisonment, Tarrio's multiple business ventures failed, and ceased providing income, and his finances have not recovered since his release.  Tarrio served three years in prison, two of which were in solitary confinement.

b.    Prior to the Defendants' wrongful acts, Biggs was employed and was receiving a monthly stipend resulting from his military retirement benefits.  Biggs lost his position and his military benefits, which have not been restored to him, and he cannot seek treatment for injuries sustained during his service from the Veterans Administration.  Additionally, Biggs was attacked in prison and sustained multiple injuries and developed a chronic medical condition due to his imprisonment and requires medical treatment for the injuries he sustained to this day.  Biggs served four years in prison, two of which were in solitary confinement.

c.    Prior to the Defendants' wrongful acts, Rehl had taken a job at a prominent financial firm, which was sponsoring him for wealth management certification, without which sponsorship, he would not be able to receive certification.  Due to his imprisonment, he lost both his position and his certification, which destroyed his ability to generate income.  He has had job offers rescinded for positions he is qualified for because of the reputational damage he has suffered.  Additionally,

the Veterans Administration is attempting to collect $93,138 in restitution benefits it paid him as a veteran after retroactively canceling his benefits. The Veterans Administration also canceled his disability payments, which are an annual benefit he would have received for decades. Rehl was injured by inmates at his prison, had his teeth broken, contracted a serious viral infection from the prison water supply, and requires medical treatment for the injuries he sustained to this day. Rehl served four years in prison, two of which were in solitary confinement.

d.  Prior to the Defendants' wrongful acts, Nordean was working at his father's business and was in the process of taking over ownership and control of it so his father could retire. After being released from prison, Nordean cannot take control or even work at the business because the reputational damage resulting from the accusations against him would cause the business a serious diminution of goodwill and community opposition – in fact, members of the community threatened employees and executives of the company because of Nordean, and promised damage and protest if Nordean's father restored Nordean to his previous position. Nordean, while in prison, suffered from kidney stones resulting from mistreatment and endured significant pain when the prison medical staff misdiagnosed his illness. Nordean served four years in prison, two of which were in solitary confinement.

e.  Prior to the Defendants' wrongful acts, Pezzola had a successful commercial flooring business. That business failed while he was imprisoned. Now that he has been released, he is facing serious difficulties restarting his business because of the damage to his reputation with both customers and subcontractors, who are

worried about the consequences for their own businesses if they were to work with Pezzola. Pezzola is unable to find gainful employment for the same reason and has been fired from other flooring firms due to reputational damage. Pezzola served four years in prison, two of which were in solitary confinement.

125.    Additionally, since their release, and as a direct result of the government's actions, the plaintiffs have struggled to find gainful employment or restore their businesses to their prior level of success.

126.    The Plaintiffs have also suffered significant reputational harm, with several consequences. Their convictions have branded them as pariahs among half of the American population, making it practically impossible to get a job, continue a career, or open a successful business. Certain segments of the public are openly hostile towards them, making public appearances difficult and potentially dangerous for them and their families.

127.    The Plaintiffs have also been placed in physical danger. There has been a rise in left-wing violence against those it perceives as being against its principles and beliefs, and there is popular support for leftists who engage in political violence. The continued insistence of the left that the events of January 6 were an insurrection, and that even those who merely attended are traitors, means that a significant portion of the population believes that, despite Presidential pardon and commutation, and the recent filings of the Department of Justice to remand and dismiss Rehl, Nordean, Pezzola, and Biggs' charges with prejudice, my clients are traitors and rebels against the United States. Assassination attempts have been made against more prominent people for less serious accusations in the last year.

128.    Consequently, even if the reputational damages were not enough, the physical safety of my clients, and the safety of those they would work around, or with, or their customers,

would be in doubt while in public, further complicating any attempts they might make at living a normal life or holding a job or opening a business.

129.    The Plaintiffs' lives, as they once knew them, were taken from them by the federal government and cannot be returned to them.  For these harms, the Defendants owe the Plaintiffs compensation.

**COUNT 1:**
*Bivens* **Claim for Compensatory Damages for**
**Violation of the Fourth Amendment of the U.S. Constitution**
(*All Plaintiffs against S.A. Miller, A.U.S.A. Ballentine, and*
*Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X*)

130.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 129 above.

131.    The Fourth Amendment to the Constitution states, in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND.  IV.

132.    First, the Count 1 Defendants had no probable cause to investigate or prosecute the Plaintiffs.  The Count 1 Defendants were aware that no evidence supported the allegations and had to use underhanded and unconstitutional methods in order to convict the Plaintiffs.

133.    Second, the Count 1 Defendants, acting under the color of law, violated the Plaintiffs' Fourth Amendment right to privacy by:

    a.    tapping and recording phone conversations between the Plaintiffs and their attorneys;

Page **32** of **48**

b.   illegally monitoring and reviewing electronic mail communications between the Plaintiffs and their attorneys;[14]

c.   placing at least one paid confidential informant in the Proud Boys to monitor and report attorney-client communications and trial strategy to the government;[15]

d.   Using the wrongfully gathered information from these activities to gain an unfair advantage in the Defendants' prosecution of the Plaintiffs.

134.   Third, the Count 1 Defendants violated the Plaintiffs' right to be secure against unreasonable search and seizures by:

a.   Monitoring private text applications between private individuals prior to and during the court proceedings regarding non-relevant communications; and,

b.   Deliberately misrepresenting the context, attribution, and content of the text communications in order to create the implication of the Plaintiffs' guilt, such as the tactics attempted with the Proud Boys Telegram channel;

c.   Searching and seizing the Plaintiffs' private property without probable cause; and,

d.   Using the wrongfully gathered information from these activities to gain an unfair advantage in the Defendants' prosecution of the Plaintiffs.

---

[14]   "One of the messages revealed in court discussed communications between one of the Proud Boys now on trial and his attorney at the time . . . It's unclear how the FBI had access to the communications and whether the communications are protected by attorney-client privilege." Lybrand, Holmes and Gannon, Casey, WRAL.COM, "Prosecutors mistakenly turn over potentially FBI classified material to Proud Boys on trial", https://wral.com/prosecutors-mistakenly-turn-over-potentially-fbi-classified-material-to- proud-boys-on-trial/20755787/ (last accessed April 29, 2026).

[15]   "FBI reveals how many undercover agents were on the ground during the January 6 riots" Spiering, Charlie, DAILYMAIL.COM, https://www.dailymail.co.uk/news/article-4187319/FBI-undercover-agents-capitol-hill-january-6th.html (last accessed June 4, 2025).

135.    S.A. Miller and Unknown FBI Special Agents Does I-X are not entitled to qualified immunity, from this count.  Qualified immunity does not shield government officials who clearly violate established constitutional rights through intentional or malicious conduct, such as the Defendants have demonstrated in this case.

136.    A.U.S.A. Ballantine and Unknown Assistant U.S. Attorneys are not entitled to prosecutorial immunity because, in illegally monitoring privileged communications, their actions were investigative in nature.

137.    The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

138.    Consequently, the Count 1 Defendants have violated the Plaintiff's Fourth Amendment rights under the United States Constitution and are therefore liable to the Plaintiffs for compensatory and punitive damages under *Bivens*.

**COUNT 2:**
***Bivens* Claim for Compensatory Damages for**
**Violation of the Fifth Amendment of the U.S. Constitution**
(*All Plaintiffs against S.A. Miller, A.U.S.A. Ballantine, and*
*Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X*)

139.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 138 above.

140.    The Fifth Amendment to the Constitution states, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. AMEND.  V.

141.    "[T]he Due Process Clause prohibits the Government from 'taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary

people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *Beckles v. United States*, 580 U.S. 256, 273 (2017) (citing *Johnson v. United States*, 576 U.S. 591 (2015)).  The doctrine rests on two justifications.  First, it ensures that people receive 'fair notice of what is prohibited." *Id.* (quoting *U.S. v. Williams*, 553 U.S. 285, 304 (2008)).  "Second, it safeguards the integrity of the judicial system by ensuring that criminal adjudications are not conducted in an arbitrary manner and that terms of imprisonment are not imposed 'on an ad hoc and subjective basis.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)).

142.    The Count 2 Defendants advanced a novel legal theory known as the "tool" theory.  Under this theory, the Count 2 Defendants argued that any wrongful or illegal action taken by any member of the crowd present on January 6 was attributable to the Plaintiffs, regardless of whether any of the Plaintiffs had actually ever directed, spoken to, or even known the person committing the crime.

143.    The Plaintiffs were charged with seditious conspiracy under 18 U.S.C. § 2384[16] which meant that under the novel "tool" theory, the Plaintiffs were charged with violations of 18 U.S.C. § 1512(k)[17], 18 U.S.C. § 1512(c)(2) and 2[18], 18 U.S.C. § 231(a)(3)[19], 18 U.S.C. § 1361[20], 18 U.S.C. § 111(a)(1)[21], and 18 U.S.C. § 372[22] for actions taken by third parties present at January 6, over which the Plaintiffs had no authority, were not party to the alleged seditious conspiracy, and to whom the Plaintiffs had not directed any communications.

---

[16]    Seditious Conspiracy.
[17]    Conspiracy to Obstruct an Official Proceeding.
[18]    Obstruction of an Official Proceeding and Aiding and Abetting.
[19]    Civil Disorder and Aiding and Abetting.
[20]    Destruction of Government Property and Aiding and Abetting.
[21]    Assaulting, Resisting, or Impeding Certain Officers.
[22]    Conspiracy to Prevent an Officer from Discharging Any Duties.

144.    The Plaintiffs themselves did not obstruct the proceedings at the Capitol, destroy government property, resist arrest, conspire to impede the police, or participate in civil disorder, nor did they plan for or order anyone else to do so.

145.    In convicting the Plaintiffs under 18 U.S.C. § 2384 by interpreting it as encompassing the novel criminal conspiracy "tool" theory propounded by the government, the government expanded the coverage of the statute to become "so vague as to that it fails to give ordinary people fair notice of the conduct it punishes . . . " because you can be convicted for conspiracy with people over whom you have no authority and to whom you gave no orders.

146.    Rather, mere statements of approval, agreement, and enthusiasm are apparently enough to form a criminal conspiracy, provided the points of view are offensive enough to employees of the Federal Bureau of Investigation and the Department of Justice, no matter how attenuated from criminal action they may have been.

147.    As such, either 18 U.S.C. § 2384 or the Court's interpretation and application of the statute is so vague and all-encompassing that it violates the Plaintiffs' Fifth Amendment rights.

148.    S.A. Miller, A.U.S.A. Ballantine, and Unknown FBI Special Agents and Assistant U.S. Attorneys I-X are not entitled to qualified immunity from this count.  Qualified immunity does not shield government officials who clearly violate established constitutional rights through intentional or malicious conduct, such as the Defendants have demonstrated in this case.

149.    The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

150.    Consequently, the Count 2 Defendants have violated the Plaintiff's Fifth Amendment rights under the United States Constitution and are therefore liable to the Plaintiffs for compensatory and punitive damages under *Bivens*.

**COUNT 3:**
*Bivens* **Claim for Compensatory Damages for**
**Violation of the Sixth Amendment of the U.S. Constitution**
*(All Plaintiffs against S.A. Miller, A.U.S.A. Ballentine, and*
*Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X)*

151.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 150 above.

152.    The Sixth Amendment to the Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

U.S. CONST. AMEND. VI.

153.    First, the Count 3 Defendants, acting under color of law, violated the Plaintiff's Sixth Amendment right to counsel by:

a.    tapping and recording phone conversations between the Plaintiffs and their attorneys;

b.    illegally monitoring and reviewing electronic mail communications between the Plaintiffs and their attorneys;

c.    placing at least one paid confidential informant in the Proud Boys to monitor and report attorney-client communications and trial strategy to the government; and,

d.    Using the wrongfully gathered information from these activities to gain an advantage in the Defendants' prosecution of the Plaintiffs, thereby undermining their right to counsel and due process rights.

154. Second, the Count 3 Defendants, acting under the color of law, violated the Plaintiff's Sixth Amendment right to have witnesses appear in their defense by threatening Lt. Lamond with criminal prosecution if he proceeded with his intention of testifying on behalf of the J6 Defendants and by eliciting false incriminating testimony from Bertino using threats of prosecution and jail.

155. Third, the Count 3 Defendants tampered with, destroyed, and altered evidence, in particular fabricating the "1776 Returns" document and using false testimony to authenticate said document during trial, and destroying evidence of their witness tampering and monitoring.

156. The Count 3 Defendants are not entitled to qualified immunity from this count. Qualified immunity does not shield government officials who clearly violate established constitutional rights through intentional or malicious conduct, such as the Defendants have demonstrated in this case.

157. A.U.S.A. Ballantine and Unknown Assistant U.S. Attorneys are not entitled to prosecutorial immunity because, in illegally monitoring privileged communications, tampering with witnesses, and altering, concealing, or destroying evidence, their actions were investigative in nature.

158. The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

159. Consequently, the Count 3 Defendants have violated the Plaintiff's Sixth Amendment rights under the United States Constitution and are therefore liable to the Plaintiffs for compensatory and punitive damages under *Bivens*.

COUNT 4:
**Common Law Malicious Prosecution
under District of Columbia Law**
*(All Plaintiffs against S.A. Miller, A.U.S.A. Ballentine, and
Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X)*

160.   Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 159 above.

161.   The Count 4 Defendants' malicious prosecution of the Plaintiffs – trial, incarceration, and conviction – took place in the City of Washington in the District of Columbia.

162.   "[T]o establish a case of malicious prosecution[,] there must be (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'Malice,' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice."  *DeWitt v. District of Columbia*, 43 A.3d 291, 296 (D.C. Ct. App. 2012) (quoting *Jarett v. Walker*, 201 A.2d 523, 526 (D.C. 1964)).

163.   Plaintiffs were arrested, tried, and convicted based on fabricated evidence, tampered witnesses, and an unconstitutional theory to justify the indictment.  No probable cause existed because the investigators and prosecutors created the evidence needed to justify his arrest.

164.   The Count 4 Defendants held personal animus towards Nordean because of his political beliefs and his support for President Trump, and desired to punish him for those beliefs and, in so doing, cause other Trump supporters to withdraw their support for him.

165.   The Count 4 Defendants displayed an open bias and visceral distaste for the Plaintiffs' moral, social, political, and religious viewpoints, and a desire to see them punished

and personally suffer for their politically incorrect beliefs and activism, which provided the animus driving the Defendants' prosecution of the Plaintiffs.

166.    Tarrio was pardoned.

167.    Nordean, Biggs, Rehl, and Pezzola's sentences were commuted, and now the Department of Justice has moved to the D.C. Court of Appeals to vacate their convictions and remand their case to the trial court so that the charges can be dismissed with prejudice. If the court finds a favorable termination not yet final for any plaintiff, that plaintiff seeks an abatement, a stay, or leave to amend rather than dismissal with prejudice.

168.    In order to effectuate the malicious prosecution, the Count 4 Defendants invented a new legal theory, intimidated witnesses to prevent them from testifying in support of Tarrio, tampered with a witness to elicit false, incriminating testimony, breached attorney-client communications, and embedded a paid government informant to convict them.

169.    The Count 4 Defendants prosecuted the Plaintiffs despite knowing that the Plaintiffs neither participated in the events of January 6 nor organized and coordinated them. The main piece of evidence for their position was the "1776 Returns" document, which Bertino falsely authenticated at the behest of S.A. Miller and A.U.S.A. Ballantine.

170.    Thus, the Count 4 Defendants knew they lacked probable cause against Tarrio and Biggs and proceeded anyway.

171.    As a result of this violation of their constitutional rights, Plaintiffs suffered injuries, including but not limited to harm to their businesses and livelihoods, crushing attorneys' fees, years of unjust imprisonment, bodily harm, reputational damage, and emotional distress.

172.    The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

173.    Therefore, the Count 4 Defendants are liable for malicious prosecution under District of Columbia law.

## COUNT 5:
### Federal Malicious Prosecution
*(All Plaintiffs against the United States, and in the alternative*
*to Count 4, as against S.A. Miller, A.U.S.A. Ballentine, and Unknown*
*FBI Special Agents and Assistant U.S. Attorneys Does I-X)*

174.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 173 above.

175.    All preceding paragraphs are incorporated by reference herein.

176.    "To make out a claim for malicious prosecution, a plaintiff generally must show three things:  (1) 'that the criminal proceeding was initiated or continued *by the defendant* without "probably cause," . . . (2) that the defendant instituted the proceeding "maliciously," . . . and (3) that "the proceedings have terminated in favor of the accused."'" *Manuel v. City of Joliet*, 580 U.S. 357, 378 (2017) (quoting RESTATEMENT (SECOND) TORTS,  653(b)).[23]

177.    Generally, the United States has sovereign immunity from the tort of malicious prosecution, but "the United States may still be liable for those torts when federal 'investigative or law enforcement officers' commit them." *Bonilla v. United States*, 652 Fed. Appx. 885, 899 (11th Cir. 2016) (citing 28 U.S.C. § 2680(h) and *Nguyen v. United States*, 556 F.3d 1244, 1260 (11th Cir. 2009)).

178.    Defendants S.A. Miller, A.U.S.A. Ballentine, and the Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X prosecuted the Plaintiffs despite knowing that

---

[23]    The tort of malicious prosecution under the FTCA is separate and distinct from an action brought under *Bivens* for violation of the Fourth Amendment of the Constitution.  While they both address constitutional violations, they are distinct causes of action with different elements, legal foundations, and scopes.  A *Bivens* action is a direct remedy for constitutional violations by Federal officials, whereas a malicious prosecution claim is a common-law tort claim with a different test and standard for recovery.  As such, Counts 1 and 5 are not mutually exclusive, and both can be pled.

Tarrio was not present for the events of January 6, that Tarrio and the other Plaintiffs did not organize, coordinate, or seditiously conspire to overthrow the government on or before January 6.

179.    In order to bring a prosecution against the Plaintiffs, the Defendants had to unconstitutionally expand the definition of conspiracy, intimidate witnesses into giving false testimony, intimidate exculpatory witnesses into not appearing to testify on the Plaintiffs' behalf, breach attorney-client communications by illegal wiretapping and monitoring, and embed a paid government informant with the Plaintiffs family, friends, and defense attorneys to monitor their trial strategy, in order to secure a conviction against the Plaintiffs.

180.    Defendants S.A. Miller, A.U.S.A. Ballantine, and the Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X displayed an open bias and visceral distaste for the Plaintiffs' moral, social, political, and religious viewpoints, and a desire to see them punished and to have them personally suffer for their politically incorrect beliefs and activism, which provided the animus driving the Defendants' prosecution of the Plaintiffs.

181.    Further, as described more fully above, the Count 9 Defendants, while acting individually, jointly, and in conspiracy, as well as under the color of law and within the scope of their employment, deprived the Plaintiffs of their constitutional right to be free from unlawful prosecution.

182.    As a result of the Defendants' wrongful acts and malicious prosecution, Plaintiffs suffered injuries, including but not limited to harm to their businesses and livelihoods, bodily harm, reputational damage, and emotional distress.

183. The Defendants' misconduct was undertaken to pursue non-legal ends, namely, to punish political opponents of the Biden presidency and to silence speech offensive to or damaging to the Defendants.

184. As this Count alleges malicious prosecution against federal investigators and/or law enforcement officers, in particular S.A. Miller, and alleges that the prosecutors in the criminal case against the Plaintiffs, in particular A.U.S.A. Ballantine, were acting as investigators, by altering evidence, eliciting false testimony from witnesses under threat of prosecution, intimidating exculpatory witnesses from testifying on the Plaintiffs' behalf, and monitoring attorney-client communications, the United States is a properly named Defendant.

185. Tarrio was pardoned, and Nordean, Rehl, Pezzola, and Biggs had their sentences commuted pursuant to the Pardon Order issued by President Trump in order to "end[] a grave national injustice that has been perpetrated upon the American people over the last four years and is a process of national reconciliation."

186. Now the Department of Justice has moved in the D.C. Court of Appeals to vacate the convictions of Nordean, Rehl, Pezzola, and Biggs and remand their case to the trial court so that the charges against them can be dismissed with prejudice.

187. Plaintiffs have all submitted written petitions to the DOJ as required by the FTCA, but no determination on them has yet been made. If the court finds a favorable termination not yet final for any plaintiff, that plaintiff seeks an abatement, a stay, or leave to amend rather than dismissal with prejudice.

188. The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

189.    Each element for the common law cause of action of malicious prosecution has been met, and, as such, the Count 5 Defendants are liable to the Plaintiffs for compensatory and punitive damages.

**COUNT 6:**
**Conspiracy to interfere with civil rights (42 U.S.C. § 1985)**
*(All Plaintiffs against S.A. Miller, A.U.S.A. Ballentine, and*
*Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X)*

190.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 189 above.

191.    "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . ." 42 U.S.C. § 1985(2).

192.    "[O]r if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; . . ." 42 U.S.C. § 1985(3).

193.    Then, "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

Page **44** of **48**

194.    As stated above, the Count 6 Defendants, working in concert, tampered with witnesses by threatening Lt. Lamond if he were to provide exculpatory evidence and by threatening Bertino to provide false testimony to authenticate a document necessary to establish probable cause for the crimes the government charged against the Plaintiffs.

195.    S.A. Miller and A.U.S.A. Ballantine, in particular, also attempted to tamper with Pezzola, threatening him to provide false testimony against Biggs, specifically inducing him to lie that Biggs had a weapon with him at January 6, when Pezzola, S.A. Miller and A.U.S.A. Ballantine knew that Biggs had no such weapon in violation of 42 U.S.C. § 1985(2).

196.    As described in the statement of facts, the Count 6 Defendants, and in particular S.A. Miller, also spied on privileged attorney-client communications using both confidential informants, such as C.I. Loh, and use of electronic monitoring of telecommunications, between the Plaintiffs and their defense attorneys, fabricated, altered, and concealed exculpatory evidence,  and tampered with witness, thereby denying the equal protection of the laws to the Plaintiffs by interfering with their Fourth, Fifth, and Sixth Amendment rights under the U.S. Constitution in violation of 42 U.S.C. § 1985 (2).

197.    The actions of S.A. Miller and A.U.S.A. Ballantine would not have been possible without the knowing participation or consent of Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X, and that participation and consent furthered the ends of the conspiracy.

198.    The Count 6 Defendants held personal animus against the Plaintiffs for their political views, and in particular, for their support and advocacy for President Trump, and desired to punish them for those beliefs by instituting baseless criminal charges against them, in violation of 42 U.S.C. § 1985(3).

199.    The Plaintiffs have been damaged by these acts, causing them to spend a fortune in legal fees fighting the baseless prosecution, losing their reputation, putting their safety at risk because a significant number of their fellow citizens now believe that they are insurrectionists and traitors, causing fear for their lives, and permanently hindering their ability to make a living, among other things.

200.    The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

201.    As such, the Count 6 Defendants, acting in concert with one another, were in a conspiracy to deprive the Plaintiffs of their rights under the United States' Constitution, have so deprived them of those rights, and as a result, have damaged them, and are therefore liable for damages under 42 U.S.C. § 1985(3).

**COUNT 7:**
**Failure to prevent conspiracy**
**to interfere with civil rights (42 U.S.C. § 1986)**
*(All Plaintiffs against S.A. Miller, A.U.S.A. Ballentine, and*
*Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X)*

202.    Plaintiffs reiterate and adopt each of the allegations set forth in paragraphs 1 – 201 above.

203.    42 U.S.C. § 1986 makes any person who knows of a conspiracy to commit the wrongs contained in 42 U.S.C. § 1985 and that those acts are about to be committed, who has the power to prevent or assist in preventing those wrongs, and neglects or refuses to prevent or assist in preventing them, liable to those to whom the wrong was done.

204.    The Count 7 Defendants actively engaged in the conduct described in the statement of facts and in Count 10, knowing that their conduct was improper and violated the Plaintiffs' rights.

205.    As investigators and prosecutors, each of the Count 7 Defendants had the power to prevent those wrongs or to make an effort to do so, and did not do so, whether as a result of malice or negligence.

206.    As S.A. Miller and A.U.S.A. Ballantine were both involved in the conspiracy described in ¶¶ 191-201, they knew of the conspiracy, knew and likely directed or influenced the other participants, Unknown FBI Special Agents and Assistant U.S. Attorneys Does I-X, and were uniquely placed to prevent or expose the conspiracy to deprive the Plaintiffs of their Constitutional Rights, and did not do so.

207.    The Plaintiffs have been harmed as detailed in ¶¶ 123-129.

208.    As a result, the Count 7 Defendants are liable to the Plaintiffs for the wrongs done to them as a result of the conspiracy to deprive them of their Constitutional rights.

## AD DAMNUM

**WHEREFORE**, and for the foregoing reasons, the Plaintiffs respectfully request that the Court enter judgment in the Plaintiffs' favor, which:

a.    Awards compensatory damages to the Plaintiffs, plus (6%) post-judgment interest;

b.    Awards punitive damages to the Plaintiffs of $100,000,000, plus (6%) post-judgment interest;

c.    Reasonable attorneys' fees, legal expenses, court costs, and enforcement costs; and,

d.    Awards any further equitable or legal relief to the Plaintiffs as necessary to effectuate the ends of justice.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all issues so triable.

**Respectfully submitted this 15th day of May,** *Anno Domini* **2026.**


\_\_/s/ Thomas F. Ranieri_____
Thomas F. Ranieri, Esq.
Va. Bar No.  93150
RANIERI & ASSOCIATES, PLC
212 East 6th Street, Suite B
Front Royal, Virginia 22630
Tel:  540-551-2330
Email:  ranieri@tra-lawfirm.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of May 2026, I electronically filed the Complaint with the Clerk of Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

**Siegmund F. Fuchs, Esq.**

I further certify that I caused a copy of the foregoing Complaint to be sent by certified mail to the following addresses:

**Jocelyn Ballantine**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530


\_\_/s/ Thomas F. Ranieri_____
Thomas F. Ranieri, Esq.