**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ENRIQUE TARRIO, ZACHARY REHL,
ETHAN NORDEAN, JOSEPH BIGGS,
AND DOMINIC PEZZOLA,

                Plaintiffs,

  v.

UNITED STATES OF AMERICA and
NICOLE MILLER, individually,

                Defendants.

Case No.: 6:25-cv-00998-AGM-DCI

### METROPOLITAN AFRICAN METHODIST EPISCOPAL CHURCH'S MOTION TO INTERVENE TO ENFORCE EQUITABLE LIEN

Pursuant to Federal Rule of Civil Procedure 24(a)(2), Metropolitan African Methodist Episcopal Church ("Metropolitan AME" or the "Church") respectfully moves to intervene in the above-captioned action for the limited purpose of enforcing its court-ordered equitable lien (the "Lien") on any "Net Proceeds recovered by [] Henry 'Enrique' Tarrio and Ethan Nordean through judgment or settlement" of this lawsuit. *See* **Exhibit A** at 1. The Church requests that the Court ensure that any proceeds recovered by Tarrio or Nordean (together, the "Judgment Debtors") through this case are distributed in a manner consistent with the Lien. The Church also requests, similar to the intervenor in *Babbitt* v. *United States*, that the Court order the parties to this

action to notify the Church of the status of any settlement discussions on an ongoing basis. Case No. 1:24-cv-01701-ACR, 5/12/2025 Minute Order (D.D.C.) (granting lienholder's motion to intervene "for the limited purpose of being kept aware of ongoing settlement discussions between the parties" and ordering the parties to notify the creditor within 24 hours of any final settlement agreement). For the avoidance of doubt, the Church does not seek to intervene with respect to any substantive matter in this action.

## BACKGROUND

Metropolitan AME is a historic church located in downtown Washington, D.C. It is affiliated with the African Methodist Episcopal Church, a predominantly African American Methodist denomination that was the first independent Protestant denomination founded by Black people in the United States.

On December 12, 2020, a mob of Proud Boys attacked Metropolitan AME, trespassing on the Church's property and tearing down and destroying the Church's Black Lives Matter banner. On January 4, 2021, Metropolitan AME filed a lawsuit in the Superior Court for the District of Columbia against the Judgment Debtors, among other known and unknown individuals. The Church asserted claims for conspiracy under the D.C. Bias-Related Crime Act of 1989, D.C. Code §§ 22-3701 and 22-3704; conversion; trespass to chattel; trespass to realty; and intentional damage or destruction of religious property

2

under the federal Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a)(3).

On June 30, 2023, following a two-day evidentiary hearing, Judge Neal Kravitz of the D.C. Superior Court entered a default judgment (the "Judgment") in favor of the Church against Judgment Debtors, jointly and severally, for $1.03 million in damages. *See* **Exhibit B** at 13; **Exhibit C** at 33–34. The court concluded the Proud Boys, led by Judgment Debtors, "executed a coordinated attack on protestors and bystanders throughout the downtown area of DC," and ultimately "participated in the trespass and destruction of Metropolitan AME's property." **Exhibit C** at 13–14.

Subsequent orders by the D.C. Court increased the total judgment to more than $2.8 million, and added Judgment Debtor Nordean to the judgment. *See* **Exhibit B** at 10, 13. The judgment has now grown to more than $3.2 million with accrued interest. Onorati Decl. ¶ 5. The Church has recovered just under $8,000 in satisfaction of the judgment to date. *Id.*

The Judgment Debtors reside in Florida. The Church domesticated the $2.8 million default judgment in Florida on January 27, 2025, **Exhibit B**, and also obtained a Florida judgment lien, **Exhibit D**.

On June 6, 2025, the Judgment Debtors—along with others—filed the instant action against the United States, asserting *Bivens* claims related to damages allegedly suffered as a result of their arrests and prosecutions in

connection with the January 6, 2021 attack on the U.S. Capitol.  ECF No. 1. The Judgment Debtors seek to recover $100 million in purported damages.  *Id.* at 27.  Although the Judgment Debtors' claims appear to be meritless, *see* ECF No. 31 (Defendant United States of America's Motion to Dismiss), any such recovery would allow the Judgment Debtors to satisfy the Church's judgment.

Tarrio, however, has refused to commit to using any proceeds from this action to pay down his obligations to the Church.  Asked during a deposition whether he had "any present intention to satisfy [the Church's] judgment against [him] and other defendants in this case," Tarrio replied that he "plan[s] on fighting it."  **Exhibit E** at 65:13-66:3.  He has also continued to publicly showcase his contempt towards the Church's judgment.  On February 4, 2025, for example, Tarrio told the *Washington Post*: "I wipe my a-- with the Judge's decision," referring to a court order in the Church's favor.[1]  Moreover, the Judgment Debtors have demonstrated a continued pattern of noncompliance and defiance of court orders.  They have refused in whole or in part to participate in post-judgment discovery, and ignored court orders to compel responses. The D.C. Court ultimately held Judgment Debtors in contempt and imposed daily fines against each of them.  **Exhibit F** at 4; **Exhibit G** at 2.

---

[1]    Peter Hermann, "Black D.C. church vandalized by Proud Boys awarded control of group's name," WASH. POST (Feb. 4, 2025), www.washingtonpost.com/dc-md-va/2025/02/04/dc-black-church-proud-boys-name-trademark-rights.

Most recently, the D.C. Court issued an arrest warrant for Tarrio due to his willful refusal to comply with discovery orders. **Exhibit H**.

Given this history of defiance of court orders, and concerned that Judgment Debtors would quickly dissipate any funds that they received through the resolution of this case, the Church sought an equitable lien in D.C. Superior Court on any such funds. After a hearing, which Tarrio attended, Judge Julie Becker of the D.C. Superior Court granted the Church's motion on September 12, 2025, ordering an equitable lien "on any proceeds recovered by [Tarrio, Nordean, and co-defendant Joseph Biggs] through judgment or settlement of a lawsuit for damages" in this action. **Exhibit I** at 2. Judge Becker ordered that "Mr. Tarrio, Mr. Nordean, and Mr. Biggs may not transfer or in any way dispose of any proceeds recovered in *Tarrio v. United States* until the outstanding balance of this Court's judgment against Defendants and in favor of the Plaintiff has been satisfied." *Id.*

The Church moved in parallel to open proceedings supplementary—a statutory judgment enforcement proceeding—in Florida state court, seeking to enforce its judgment against assets located in Florida that belong to the Judgment Debtors. Following a motion hearing on October 22, 2025, the Florida court held that the Church's motion "satisfied the prerequisites" of the proceedings supplementary statute on October 31, 2025. **Exhibit J**.

The Church subsequently moved in the Florida proceedings supplementary for imposition of an equitable lien—similar in form to the lien awarded by the D.C. Court—on any proceeds recovered by Tarrio and Nordean in the instant action. Following a special-set evidentiary hearing, on March 3, 2026, Judge Joseph Perkins of the Eleventh Judicial Circuit of Florida granted the Church's motion, finding that the Church had fulfilled all applicable due process requirements and was entitled to an equitable lien on the "Net Proceeds recovered by Defendants Henry 'Enrique' Tarrio and Ethan Nordean through judgment or settlement" of this case.[2] **Exhibit A** at 1**.** The order defines "Net Proceeds" as "all funds due to Mr. Tarrio and Mr. Nordean pursuant to any judgment or settlement agreement in [this action], excluding (1) attorney's fees and costs in connection with services rendered in the Federal Action; and (2) funds statutorily exempt from attachment."[3] *Id.* at 1–3. Judge Perkins further ordered Tarrio and Nordean to "in no way dissipate the Net

---

[2]  The Church did not move for relief against Judgment Debtor Joseph Biggs in Florida pursuant to discussions with his newly retained counsel there, but reserves all rights to do so.

[3]  Because the Lien attaches to the proceeds to be received by Tarrio and Nordean, the Anti-Assignment Act—which "merely forbids an assignment of the right to be paid directly from the United States Treasury"—does not preclude its enforcement. *U.S.* v. *Kim*, 806 F.3d 1161, 1165 (9th Cir. 2015); *see* 31 U.S.C. § 3727. The Church does not seek an assignment of Tarrio and Nordean's rights to payment from the U.S. Treasury; instead, it intends to assert its Lien once the "proceeds of the claim have already been paid out"—e.g., by being placed into a settlement trust. *Kim*, 806 F.3d at 1177.

6

Proceeds pending Plaintiff's enforcement of its rights pursuant to this Order." *Id.* at 2.

## ARGUMENT

Two state courts have entered orders imposing an equitable lien on the net proceeds of this action and directing the Judgment Debtors not to dissipate those funds.  The Church nevertheless faces a concrete risk that, absent limited intervention in this case, any settlement or judgment proceeds could be transferred before the lien is honored.  That concern is not speculative.  Tarrio has made clear in sworn testimony that he has no intention of paying the Church's judgment.  *See* **Exhibit E** at 65:13–66:3.  Judgment Debtors also have a history of attempting to shield assets from garnishment.  For example, in February 2025, Tarrio and Nordean announced that they were issuing a cryptocurrency coin to raise funds.[4]  Tarrio has since refused to cooperate with any discovery requests related to his devices and cryptocurrency accounts, culminating in a civil bench warrant for his arrest.  This pattern of behavior and history of flouting court orders demonstrates that, in the event a settlement is reached, there is a significant risk that Judgment Debtors will not comply with the Church's lien.  The Church therefore seeks limited

---

[4]  *See* Naomi Feinstein, "Enrique Tarrio, Proud Boys Launch New Crypto Meme Coin," MIAMI NEW TIMES (Feb 13, 2025), *available at* https://www.miaminewtimes.com/news/enrique-tarrio-launches-new-crypto-meme-coin-with-proud-boys-22462953.

intervention under Rule 24(a)(2) to protect its judicially-recognized interest in its lien.

All of the conditions and requirements for intervention as of right are satisfied. Rule 24(a)(2) requires: (i) a timely motion; (ii) an interest relating to property or a transaction that is the subject of the action; (iii) a risk that disposition of the action may, as a practical matter, impair the applicant's ability to protect that interest; and (iv) inadequate representation by existing parties.

The Eleventh Circuit requires that a nonparty's interest be "direct, substantial, and legally protectable" to support intervention. *United States* v. *South Florida Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991). A party may intervene as to a single issue for which they have a sufficient interest. *See Howard* v. *McLucas,* 782 F.2d 956, 960–61 (11th Cir. 1986) (permitting intervenors to participate in the remedial issue for which they had standing.) The Church satisfies each of these requirements.

## A.    This Motion is Timely

Courts consider four factors to assess timeliness for either intervention of right or permissive intervention:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of

his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*United States* v. *Jefferson County,* 720 F.2d 1511, 1516 (11th Cir. 1983). "The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Georgia* v. *U.S. Army Corps of Engr's*, 302 F.3d 1242, 1259 (11th Cir. 2002) (quoting *McDonald* v. *E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

The Church's motion is timely. The Church moved to intervene 11 weeks after entry of the Florida court's lien order—well within the period that courts in this circuit have found timely.[5] *See, e.g.*, *U.S. Army Corps of Engr's,* 302 F.3d at 1259–60 (delay of six months does not "in itself constitute[] untimeliness" because the "intervention did not delay the proceedings and the court had yet to take significant action."). Moreover, the existing parties will suffer no prejudice from the Church's limited intervention. The Church seeks only to protect its interest in its lien on any proceeds of a settlement or judgment and does not seek to participate in the merits of the litigation or alter any existing deadlines.

---

[5] Intervenors awaited the resolution of Defendants' Motions to Dismiss and, after the Court ordered dismissal without prejudice, the filing of the Amended Complaint.

9

## B.    The Lien Relates to Property That is the Subject of the Action

With respect to the second Rule 24(a)(2) factor, the Church's equitable lien creates a direct interest in property that is the subject of this action. Florida law specifically recognizes an equitable lien under two bases, one of which is when "a court declares that the equitable lien is necessary out of general considerations of justice." *See In re Dorado Marine, Inc.*, 321 B.R. 581, 587 (Bankr. M.D. Fla. 2005).  Judge Perkins's holding in favor of the Church's equitable lien satisfies this requirement.

With respect to intervention, courts distinguish between a generalized economic interest—insufficient to support intervention—and a legally protectable interest in a specific fund that is directly affected by the litigation. As this Court held in *TIG Specialty Ins. Co.* v. *Financial Web.com, Inc.*, 208 F.R.D. 336 (M.D. Fla. 2002), while "the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give that party a right to intervene . . . the interventor's interest in a *specific* fund *is* sufficient to entitle intervention in a case affecting that fund." *Id.* at 338 (citing *Mountain Top Condo. Assoc.* v. *David Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) (emphasis in original)).  Other courts have repeatedly reiterated that principle where the intervenor holds a lien on the specific proceeds of the litigation. *See Lalic* v. *Chicago, B. & Q. R. Co.*, 263 F. Supp. 987, 988 (N.D. Ill. 1967) ("intervention by a party, whose only interest in the

10

litigation is a lien on the proceeds, is proper at any time before final judgment"); *Spencer* v. *DTE Elec. Co., LLC*, 2015 WL 13049899 (E.D. Mich. Oct. 6, 2015) (recognizing an interest in a lien and granting a motion to intervene).

In *Midland Plastering Co., Inc.* v. *M&I Marshall & Illsley Bank*, 2008 WL 4282592, at *2 (E.D. Wis. Sept. 17, 2008), for example, the intervenor-creditor's lien arose from plaintiff-debtor's default on a loan unrelated to the action subject to intervention. The *Midland* court, noting that "[c]ase law makes it clear that lien holders do have a sufficient enough interest to act as intervenors," again squarely recognized the creditor-intervenor's interest in ensuring that "any funds [plaintiff-debtor] might recover . . . are then paid to [creditor-intervenor] to help satisfy" the lien. *Id.* (noting that creditor-intervenor's interest was in "those very assets at stake in the case at hand.").

Here, the Church's interest in the specific proceeds of this litigation is crystal clear: it holds equitable lien orders—entered after notice and hearing in both D.C. and Florida—attaching specifically to the "Net Proceeds" recovered by Tarrio and Nordean in this action. *See* **Exhibit A** at 1–2; **Exhibit I** at 2. The Church therefore does not assert a generalized creditor interest; it claims a judicially-recognized lien on the "very assets at stake in the case at hand," *Midland Plastering Co., Inc.*, 2008 WL 4282592, at *2, and is therefore entitled to intervention. *See also TIG Specialty Ins. Co.*, 208 F.R.D. at 338

11

(permitting intervention where the litigation could "potentially deprive[] Intervenors of a source from which to recover"); *Lalic*, 263 F. Supp. at 988; *Ghazarian*, 177 F.R.D. at 482 (C.D. Cal. 1997) (recognizing an interest in a lien and granting a motion to intervene); *Spencer* v. *DTE Elec. Co., LLC*, 2015 WL 13049899 (E.D. Mich. Oct. 6, 2015) (same).

## C.    Disposition of the Action Would Impair the Church's Ability to Protect its Interest

The third factor—impairment—is also satisfied.  Rule 24(a)(2) requires only that the intervenor show it would be "practically disadvantaged" if intervention is denied.  *Huff* v. *Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014).  That standard is easily met here.  If settlement or judgment proceeds in this case were disbursed without notice to the Church, those funds could be transferred or dissipated before the lien is enforced, necessitating collateral proceedings and frustrating the lien's purpose.  Allowing the Church to protect its lien interest within this action promotes the efficiency concerns underlying Rule 24.  *See Nuesse* v. *Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *see also Adana Investing, Inc.* v. *Forrest Cap. Partners, Inc.*, 2016 WL 7438832, at *2 (S.D. Fla. July 12, 2016).

This risk is not speculative: as described above, Tarrio has explicitly stated he will refuse to satisfy the Church's judgment, which no doubt extends to satisfying the Church's judgment from potential proceeds of this action.

**Exhibit E** at 65:13–66:3.  He is further unconcerned with the consequences of disobeying court orders and, in response to his civil bench warrant, stated that rather than complying, "the Judge can hold me in jail INDEFINITELY." **Exhibit K**.  Both Tarrio and Nordean have been held in contempt for failing to comply with post-judgment court orders in the D.C. Action.  *See* **Exhibits F**, **G**.  By their words and actions, the Judgment Debtors have committed to refuse to pay the Church at any cost.

**D.     The Church's Interest Is Not Adequately Represented by the Parties**

Finally, the Church has satisfied its "minimal" burden of showing that its interest in this action is not adequately represented by the existing parties. *Trbovich* v. *United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). Where a lienholder "must intervene in the pending matter in order to enforce [a] lien," courts have found that the lienholder's interests are not adequately represented by any existing party to the lawsuit. *Watkins* v. *Vestil Mfg. Corp.*, 2008 WL 5102885, at *6 (N.D. Ga. Dec. 1, 2008).

Here, neither the Government nor the Judgment Debtors have an interest in ensuring that the Church's lien is satisfied.  The Government's interest is in defending this lawsuit and minimizing the Judgment Debtors' recovery.  *See, e.g.*, ECF Nos. 30, 31 (motions to dismiss).  The Judgment Debtors, meanwhile, are openly adverse to the Church's efforts to enforce its

13

lien.  *See, e.g.*, **Exhibit E** at 65:13-66:3 (Tarrio declaring intent to "fight" the Church's judgment collection efforts).  Because no existing party "seeks the same objectives as the would-be interveners," *Sierra Club, Inc.* v. *Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007), the Church has met its burden to show that the parties will not adequately represent its interests.

**E.      In Addition, the Court Should Order the Parties to Inform the Church as to Any Settlement Discussions**

Whether or not the Court orders intervention as of right, it should also order the parties to inform the Church as to the status of any settlement negotiations on an ongoing basis.  Such a remedy would, at a minimum, prevent Judgment Debtors from secretly dissipating any proceeds received through a settlement conducted outside the Court's purview.  Courts have granted creditor's requests to be kept in the loop as to settlement discussions under comparable circumstances.  *See, e.g.*, *Babbitt* v. *United States*, Case No. 1:24-cv-01701-ACR, 5/12/2025 Minute Order (D.D.C.) (granting lienholder's motion to intervene "for the limited purpose of being kept aware of ongoing settlement discussions between the parties" and ordering the parties to notify the creditor within 24 hours of any final settlement agreement); *National Bulk Carriers, Inc.* v. *Princess Management Co.*, 597 F.2d 819, 825 n.13 (2d Cir. 1979) (granting creditor the right to attend hearings and to receive five days' advance notice of any proposed settlement).

14

## CONCLUSION

For the foregoing reasons, the Church respectfully requests that the Court (1) grant its motion to intervene as of right for the limited purpose of enforcing the Lien; (2) ensure that any proceeds recovered by Tarrio or Nordean are distributed in a manner consistent with the Lien; and (3) order the parties to this action to notify the Church of the status of any settlement discussions on an ongoing basis. In compliance with Federal Rule of Civil Procedure 24(c), the Church's proposed complaint in intervention is attached as **Exhibit L**.

DATED:  May 26, 2026

Respectfully submitted,

**STEARNS WEAVER MILLER**

By: */s/ Joseph J. Onorati*
Joseph J. Onorati (Florida Bar No. 92938)
Jason P. Hernandez (Florida Bar No. 18598)
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Tel: (305) 789-3200
Email: jonorati@stearnsweaver.com
          jhernandez@stearnsweaver.com

*Counsel for Plaintiff Metropolitan African Methodist Episcopal Church*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Paul D. Brachman*
    Paul Brachman (*pro hac vice* forthcoming)
     2001 K Street, NW
    Washington, DC 20006-1047
    Tel: (202) 223-7300
    Fax: (202) 223-7420
    Email:   pbrachman@paulweiss.com

*Counsel for Plaintiff Metropolitan African Methodist Episcopal Church*

16

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on May 26, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

Siegmund F. Fuchs
Thomas F. Ranieri, Sr.

*/s/ Joseph J. Onorati*
Joseph J. Onorati

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

I HEREBY CERTIFY that on May 19 and 20, 2026, counsel for the Church conferred with counsel for Defendants and Plaintiffs via email regarding this motion.  Defendants' counsel, Siegmund F. Fuchs, advised that Defendants do not take a position on the instant motion.  Plaintiffs' counsel, Thomas F. Ranieri, Sr., advised that Plaintiffs oppose the motion.

*/s/ Joseph J. Onorati*
Joseph J. Onorati

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ENRIQUE TARRIO, ZACHARY REHL, ETHAN NORDEAN, JOSEPH BIGGS, AND DOMINIC PEZZOLA,<br><br>            Plaintiffs,<br><br> v.<br><br>UNITED STATES OF AMERICA and NICOLE MILLER, individually,<br><br>            Defendants. | Case No.: 6:25-cv-00998-AGM-DCI |

## <u>DECLARATION OF JOSEPH J. ONORATI</u>

I, Joseph J. Onorati, hereby declare under penalty of perjury:

1.     I am an attorney admitted to practice in the state of Florida and am a shareholder at Stearns Weaver Miller, attorneys for putative intervenor Metropolitan African Methodist Episcopal Church ("Metropolitan AME" or the "Church") in this case. I submit this declaration in support of the Church's Motion to Intervene to Enforce Equitable Lien. The facts set forth in this declaration are based upon my personal knowledge, information that I obtained from other personnel in the regular course of business, and records maintained in the regular course of business.

2.     On June 30, 2023, the D.C. Superior Court granted the Church's

Motion for Default Judgment and Injunctive Relief against Henry "Enrique" Tarrio, Joseph R. Biggs, Jeremy Bertino, John Turano, and Proud Boys International, L.L.C.  The Court entered judgment for compensatory and punitive damages in the amount of $1,036,626.78 plus costs and interest.

3.     On August 17, 2023, the Court added Ethan Nordean to the judgment and certified the judgment as final.

4.     On December 6, 2023, the Court granted the Church's motion for attorneys' fees, awarding the Church a total of $1,848,769.58 in fees.

5.     To date, the Church has collected $7,855.31 of the $3,283,494.31 (counting accrued interest) owed to it.  $1,500 of this sum was the result of a settlement agreement with a non-party over the Proud Boys trademark, not any payments by Judgment Debtors.  The remaining $6,355.31 came from a legal fund for Joseph R. Biggs against which the Church obtained a condemnation judgment in D.C. Superior Court.

6.     Attached hereto as **Exhibit A** is a true and correct copy of an Order dated March 3, 2026 in *Metropolitan African Methodist Episcopal Church* v. *Bertino*, Case No. 2025-001304-CA-01 (Fla. 11th Judicial Circuit) (hereinafter the "Florida Action").

7.     Attached hereto as **Exhibit B** is a true and correct copy of a Notice of Recording of Foreign Judgment, signed and sealed by the Clerk of the

Court and Comptroller of Miami-Dade County Circuit and County Courts, dated January 30, 2025.

8. Attached hereto as **Exhibit C** is a true and correct copy of an Order dated June 30, 2023 in *Metropolitan African Methodist Episcopal Church* v. *Proud Boys International, L.L.C.*, Case No. 2021-CA-000004-B (D.C. Sup. Ct.) (hereinafter the "D.C. Action").

9. Attached hereto as **Exhibit D** is a true and correct copy of a judgment lien certified by the Florida Secretary of State, dated July 23, 2025.

10. Attached hereto as **Exhibit E** is a true and correct copy of the transcript of the deposition of Henry "Enrique" Tarrio taken in the D.C. Action on July 22, 2025.

11. Attached hereto as **Exhibit F** is a true and correct copy of an Order dated February 6, 2025, in the D.C. Action.

12. Attached hereto as **Exhibit G** is a true and correct copy of an Order dated February 27, 2025, in the D.C. Action.

13. Attached hereto as **Exhibit H** is a true and correct copy of an Order dated January 29, 2026, in the D.C. Action.

14. Attached hereto as **Exhibit I** is a true and correct copy of an Order dated September 12, 2025, in the D.C. Action.

15. Attached hereto as **Exhibit J** is a true and correct copy of an

Order dated December 11, 2025, in the Florida Action.

16.    Attached hereto as **Exhibit K** is a true and correct copy of a post by user @NobleOne on the website X.com, dated January 27, 2026.

17.    Attached hereto as **Exhibit L** is a true and correct copy of the Church's proposed complaint in intervention.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 26, 2026 at Miami, Fla., USA.

*/s/ Joseph J. Onorati*
Joseph J. Onorati