**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ENRIQUE TARRIO, *et al.*,

Plaintiffs,

v. CASE NO. 6:25-cv-0998-AGM-DCI

UNITED STATES OF AMERICA, *et al.*,

Defendants.
_______________________________________/

**DEFENDANTS' MOTION TO TRANSFER**

Defendants United States America, Special Agent (SA) Nicole Miller, and Deputy Chief Jocelyn Ballantine, through undersigned counsel and 28 U.S.C. §§ 1441, 1446, move to transfer this case to the United States District Court for the District of Columbia.

**SYNOPSIS**

Plaintiffs challenge their convictions for conduct related to events at the United States Capitol on January 6, 2021. However, the Court lacks personal jurisdiction over newly added Defendant Deputy Chief Ballantine and venue is improper, as explained in her concurrently filed motion to dismiss. Transfer to the United States District Court for the District of Columbia is appropriate because that is the *only* district court where personal jurisdiction exists over all defendants and where venue is proper. Moreover, none of the events giving rise to this action occurred in this District; they occurred in the District of Columbia, where the United States Capitol is located and where the underlying prosecution occurred. Given these facts, the risk of duplicative litigation, and the Court's burdensome caseload, transfer of this entire case to the District of Columbia is warranted.

## BACKGROUND

"On January 6, 2021, there was an incursion into the Capitol building by elements of the federal government, leftist agitators, and Trump supporters." ECF 82 ¶ 28. Plaintiffs Enrique Tarrio, Zachary Rehl, Ethan Nordean, Joseph Biggs, and Dominic Pezzola were prosecuted and convicted for conduct related to those events, all of which occurred in the District of Columbia. *Id.* ¶¶ 6-10. The prosecution proceeded in the United States District Court for the District of Columbia. *See United States v. Nordean*, No. 21-cr-175 (D.D.C.). SA Nicole Miller was "involved with the investigation and prosecution of the Plaintiffs" and Deputy Chief Ballantine was "one of the prosecutors on the team." ECF 82 ¶¶ 16-18. Both are sued here in their individual capacities. *Id.* at 1. Plaintiffs now challenge the decision to prosecute as well as certain conduct that occurred during the prosecution.

In a motion filed concurrently, newly added Defendant Deputy Chief Ballantine has moved to dismiss this case against her for lack of personal jurisdiction and improper venue. As explained in that motion, Plaintiffs do not allege she is a Florida resident. Nor do they allege she directed any of her activities here. There simply is no allegation that she or this lawsuit has any connection to Florida, let alone this District. However, because courts prefer transfer over dismissal when personal jurisdiction or venue over one defendant is lacking, *see infra.* at 4, Defendants move to transfer this entire case to the District of Columbia, where jurisdiction lies over all Defendants and venue is proper.

## STANDARD OF REVIEW

Under 28 U.S.C. § 1406(a), if a district court deems venue improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer under § 1406(a) is available regardless of

whether the defect lies with personal jurisdiction or venue. *See Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962).

In addition to § 1406(a), courts may also transfer a civil action under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 57-58 (2013). Under that section, a district court may transfer a civil case—even where personal jurisdiction lies and venue is proper as to all defendants—"[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When applying § 1404(a), courts undertake a two-step analysis. *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016). First, courts determine "whether the case could have been filed in the proposed district." *Id.* Second, courts assess "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* (citation omitted). In analyzing the second prong, courts consider the following factors: (1) convenience of the witnesses; (2) location of relevant documents and the ease of access to sources of proof; (3) convenience of the parties; (4) locus of operative facts; (5) availability of process to compel unwilling witnesses; (6) relative means of the parties; (7) a forum's familiarity with the governing law; (8) any weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## ARGUMENT

### I. Transfer of this entire action is appropriate under Section 1406(a).

Transfer of this entire action to the District of Columbia is warranted under § 1406(a). In a concurrently filed motion, Deputy Chief Ballantine has already explained why the Court lacks both personal jurisdiction over her and why venue is improper. Namely,

she is not alleged to be a Florida resident and the events or omissions giving rise to the claims against her did not occur in this District. No allegation connects her or this lawsuit to Florida, let alone this District, other than one Plaintiff's residence here. ECF 82 ¶ 27. But for purposes of determining personal jurisdiction and venue, it is the activities of the defendant that matter, *not* the plaintiff. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("the plaintiff cannot be the only link between the defendant and the forum" for purposes of personal jurisdiction); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372-73 (11th Cir. 2003) (venue "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff").

Because personal jurisdiction is lacking and venue is improper, the Court must either dismiss Deputy Chief Ballantine under § 1406(a) or, in the interests of justice, transfer all or part of this case to any district where this action could have been brought. 28 U.S.C. § 1406(a). While a decision to dismiss or transfer is left to the sound discretion of the district court, "the interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it." *Hemispherx Biopharma, Inc. v. Mid-South Cap., Inc.*, 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009); *see also Ellert v. Yamaha Motor Corp., U.S.A., Inc.*, No. 25-1588, 2026 WL 1162391, at *6 (M.D. Fla. Apr. 29, 2026) ("Courts also transfer cases [as opposed to dismissing them] when the defendant asks for the transfer.") (collecting cases); *Brannigan v. Anthem Ins. Cos., Inc.*, No. 21-2353, 2022 WL 17370470, at *7 (M.D. Fla. Nov. 7, 2022) ("In general, transfer is preferable to dismissal—it saves the parties time, energy, money, and inconvenience."); 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ("In most cases of improper venue, the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation.").

The threshold question for transfer under § 1406(a)—and § 1404(a)—is whether the case could have been brought in the proposed transferee court. Here, all claims against all Defendants could have been brought in the United States District Court for the District of Columbia, the court that issued the arrest warrants for Plaintiffs and where the underlying prosecution occurred. Because a substantial part of the acts or omissions giving rise to the claims in this case occurred in the proposed transferee court, the threshold criterion for transfer under § 1406(a)—and § 1404(a)—is easily satisfied.

On this point, the Eleventh Circuit's decision in *Kapordelis v. Danzig*, 387 F. App'x 905 (11th Cir. 2010), is particularly instructive. In that case, the plaintiff was convicted in the Northern District of Georgia on multiple counts for possession of child pornography. *Id.* at 906. In a subsequent civil suit filed in the Eastern District of New York, the plaintiff alleged no probable cause supported his prosecution and the government acted maliciously. *Id*. He filed suit in the Eastern District of New York because that was the district where he was first interviewed, arrested, and detained prior to his extradition to the Northern District of Georgia. *Id*. The Eastern District of New York transferred the case to the Northern District of Georgia and on appeal, the Eleventh Circuit upheld the transfer. In doing so, the Eleventh Circuit reasoned that the Northern District of Georgia issued the warrant for the plaintiff's arrest and that was where he was prosecuted. *Id.* To the extent the defendants fabricated evidence, that evidence was presented to a grand jury in the Northern District of Georgia. *Id.* Although the plaintiff was interviewed, arrested, and detained in the Eastern District of New York, those facts, while relevant to the wrongful prosecution-based claims, did not "give rise" to them. *Id.* at 906-07. Notably, the Eleventh Circuit held that even if venue was proper in the Eastern District of New York, transfer to the Northern District of

Georgia was still appropriate under § 1404(a) because the Northern District of Georgia was most familiar with the underlying facts and the convenience of the parties and witnesses and the interests of justice all supported transfer. *Id.* at 907.

In line with *Kapordelis*, district courts routinely rely on § 1406 to transfer a civil case challenging a prosecution to the district where the prosecution occurred. *See Gaikwad v. Hanson*, 828 F. Supp. 3d 224, 233 (D. Mass. 2026); *Carter v. Buzbee*, No. 25-86, 2026 WL 891840, at *19 (S.D. Ala. Mar. 31, 2026); *Mheid v. Minchew*, No. 22-2225, 2023 WL 12208234, at *2 (N.D. Ga. Sept. 21, 2023); *Yarborough v. Tooele Cnty. Det. Ctr.*, No. 22-96, 2023 WL U1415568, at *3 (W.D. Mich. Jan. 31, 2023); *Green v. Duffy*, No. 22-22514, 2022 WL 3279543, at *2 (S.D. Fla. Aug. 11, 2022).

Moreover, transfer of this entire action is warranted in the interests of justice to avoid duplicitous, piecemeal litigation. Without transfer, the parties would likely be required to litigate the same issues in two separate courts. Indeed, all counts are brought against Deputy Chief Ballantine and SA Miller jointly as they are alleged to have conspired together. Further, Plaintiffs sue all Defendants, including the United States, for malicious prosecution, meaning if this entire action is not transferred, two courts will have to evaluate whether probable cause existed to support the underlying prosecution.

Faced with similar scenarios, courts routinely transfer entire cases under § 1406(a) to keep all claims against all defendants together to be litigated in a single action. *See Carter*, 2026 WL 891840, at *19; *Ford v. Supreme Court of Florida*, No. 06-03, 2006 WL 1382075, at *6-7 (M.D. Fla. May 18, 2006); *Adstep, Inc. v. Freeman Decorating Co.*, No. 02-1002, 2003 WL 25276323, at *10 (M.D. Fla. Sept. 16, 2003); *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) (district court "should not sever if the defendant

over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places") (citation omitted); *Aqeel v. Liberty Ins. Corp.*, No. 21-181, 2026 WL 124240, at *5 (M.D. Tenn. Jan. 16, 2026) ("[C]ourts frequently transfer an entire case pursuant to 28 U.S.C. § 1406(a)".); *Sleekez, LLC v. EquiGroomer*, No. 22-149, 2022 WL 18775903, at *4 (D. Colo. Nov. 8, 2022) ("Courts have found that the interest of justice weighs in favor of a transfer of the entire action where the court lacks venue over a portion of the claims or in the related situation where the Court does not have venue over some of the defendants."); *Ghebreyesus v. Federal Democratic Republic of Ethiopia*, No. 21-2865, 2022 WL 4534631, at *5 (D.D.C. Sept. 28, 2022) ("This approach allows a single court to decide this entire controversy over both sets of defendants."); *Gore v. Air & Liquid Sys. Corp.*, No. 15-465, 2016 WL 11680149, at *4 (M.D.N.C. June 21, 2016) ("Such duplicative, piecemeal litigation is contrary to notions of judicial economy and efficiency."); *Duarte v. Cal. Hotel & Casino*, No. 08-185, 2009 WL 4668739, at *5 (D. Haw. Dec. 4, 2009) ("[C]ourts often find that the interests of justice warrant transfer of an entire action as opposed to splitting the action between two different venues.").

For all these reasons, transfer of this entire action to the United States District Court for the District of Columbia is warranted under § 1406(a).

## II. Transfer of This Entire Action Is Appropriate Under Section 1404(a).

Transfer is also warranted under § 1404(a). As previously explained, because this case could have been brought in the proposed transferee court, the threshold criterion for transfer under § 1404(a) is easily satisfied. *See supra* at 4-5. An analysis of the remaining

§ 1404(a) considerations—the convenience of the parties and witness and the interests of justice—also justifies transfer. 28 U.S.C. § 1404(a).

**A. Section 1404(a)'s convenience analysis strongly supports transfer.**

Section 1404(a) first instructs courts to consider the convenience of the parties and witnesses. 28 U.S.C. § 1404(a). To evaluate overall convenience, the Eleventh Circuit instructs courts to consider the location of the relevant documents and ease of access to courses of proof, the locus of operative facts, to what extent the parties and witnesses can be compelled to testify, the relative means of the parties, the forum's familiarity with the governing law, and the plaintiff's choice of forum.[1]

With the increased prevalence of electronic evidence, the location of relevant documents and ease of access to courses of proof have largely become irrelevant. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1282 (S.D. Fla. 2020). However, to the extent this factor still has some significance, all relevant documents related to the underlying prosecution are in Washington, D.C. The familiarity with the governing law is considered "one of the least important factors" as district courts are equally equipped at analyzing federal law and the law from other states. *Trump v. Simon & Shuster, Inc.*, No. 23-2333, 2023 WL 5000572, at *8 (N.D. Fla. Aug. 4, 2023). However, as this case involves D.C. law, all else being equal, this factor favors transfer to the District of Columbia. The plaintiff's choice of forum is generally given some deference; however, "multiple district courts within the Eleventh Circuit have found . . . that Plaintiff's choice of forum should be entitled to less weight where the locus of operative facts is outside the chosen forum." *Internap Corp. v. Noction Inc.*, 114 F. Supp. 3d 1336, 1342 (N.D. Ga. 2015); *see also Carucel Invs., L.P. v.*

---

[1] This convenience analysis incorporates factors (1)-(8) of the Eleventh Circuit's § 1404(a) test. *See Manuel*, 430 F.3d at 1135 n.1.

*Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1225 (S.D. Fla. 2016) ("However, where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.").

Along these lines, many courts find the locus of operative facts to be a "key factor" in evaluating a motion to transfer. *See Nat'l Tr. Ins. Co.*, 223 F. Supp. 3d at 1245; *Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*, No. 13-20177, 2013 WL 1836450, at *3 (S.D. Fla. May 1, 2013) ("The locus of operative facts is an important factor to be considered in deciding where a case should be tried.") (internal quotations and citation omitted). Here, all operative facts underlying each and every claim unquestionably occurred in Washington, D.C., where the United States Capitol is located, where the events on January 6 occurred, and where Plaintiffs were detained, indicted, and prosecuted.[2] Also, the United States District Court for the District of Columbia is uniquely familiar with January 6-related litigation given that virtually all January 6 prosecutions occurred there. In fact, if transferred, this case will likely be assigned as a "related case" to the original district judge who tried the criminal case. He would be the jurist most familiar with the underlying legal and evidentiary issues as he ruled on most if not all of them during the prosecution. For all these reasons, the locus of operative facts—a "key factor"—strongly supports transfer.

Turning to the remaining convenience factors—the convenience of the witnesses and parties—the true concern here is not "convenience," but the likelihood individual witnesses and parties will be able to testify at trial. *See O'Hare v. GHP Grp., Inc.*, No. 24-1948, 2025 WL 3301558, at *2 (N.D. Ga. Mar. 14, 2025) (quoting *Sarvint Techs., Inc. v. Omsignal, Inc.*, 161 F. Supp. 3d 1250, 1267 (N.D. Ga. 2015)). Courts find party convenience to be

[2] That one out of four Plaintiffs was arrested in this District is not an "operative" fact for purposes of evaluating transfer of a case involving malicious prosecution. *See Kapordelis*, 387 F. App'x at 906-07.

significantly less important than witness convenience because "[p]arty witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *O'Hare*, 2025 WL 3301558, at *2 (quoting *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004)); *see also LaPenna v. Cooper Tire & Rubber Co.*, No. 10-1018, 2011 WL 2669469, at *5 (M.D. Ala. July 7, 2011) (courts give more weight to witness convenience than party convenience). However, while convenience has historically been treated as one of the most important factors when considering a motion to transfer, *Central Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000), courts have more recently stated that in today's world, overall convenience has become far less important: "Convenience to the parties and nonparty witnesses is less important in a world where technology makes it easy to conduct discovery from anywhere, few cases go to trial, and technology makes remote trial testimony more feasible." *Key v. Sprout Foods, Inc.*, No. 21-2391, 2021 WL 4061735, at *1 (N.D. Cal. Sept. 7, 2021).

Here, in terms of witness convenience, most non-party witnesses who assisted in the underlying prosecution are located or at least work in Washington, D.C. But, as they are mostly federal employees and the United States is a party, they can be compelled to testify and their convenience is thus accorded less weight. *Sorenseon v. Am. Airlines, Inc.*, No. 22-20265, 2022 WL 2065063, at *5 (S.D. Fla. June 8, 2022). None of the non-party witnesses mentioned in the third amended complaint—CI Loh, Jeremy Bertino, Shane Lamond—reside in this District. As far as Defendants were last aware, one resides in Texas (Loh), one in North Carolina (Bertino), and one in Virginia under home confinement (Lamond). Defendants are not aware of any non-party witness residing in this District. While Plaintiff

Biggs may argue he has family member-witnesses residing here and willing to testify about his alleged damages, the convenience of damages witnesses is far less important than the convenience of liability witnesses "due to the fact that without liability, there are no damages to recover." *O'Hare*, 2025 WL 3301558, at *2 (quoting *Ramsey*, 323 F. Supp. 2d at 1357).[3]

As for party convenience, because Deputy Chief Ballantine and SA Miller are federal employees and the United States is a party, they can be compelled to testify even though they are sued in their individual capacities and thus, their convenience is accorded less weight. *Sorenseon*, 2022 WL 2065063, at *5. On the Plaintiffs' side, one Plaintiff resides in this District (Biggs) and another resides in the Southern District of Florida (Tarrio). The remaining three Plaintiffs reside in Washington (Nordean), New York (Pezzola), and Pennsylvania (Rehl). However, courts give this factor much less weight when the locus of operative facts arises elsewhere and the only connection to the forum is one plaintiff's residence there. *See McGovern v. Burrus*, 407 F. Supp. 2d 26, 28 (D.D.C. 2005) (placing much less emphasis on plaintiff's residency where claims and facts arise elsewhere); *Central Money*, 122 F. Supp. 2d at 1346 ("Convenience of the parties is practically irrelevant to whether the motion to transfer should be granted."); 14D Fed. Prac. & Proc. Juris. § 3849 (4th ed.) ("Courts interpreting Section 1404(a) . . . have given this factor considerably less emphasis.").

In the end, when the parties and witnesses are located all over the country—as is the case here—convenience tends to drop out as a substantive consideration and courts instead focus on the other § 1404(a) factors, such as the locus of operative facts, to determine

[3] Further, any presence in this District of family member-witnesses for one plaintiff would be nullified by family member-witnesses for the four other plaintiffs likely residing elsewhere.

whether transfer is appropriate. *See* 17 Moore's Fed. Prac. § 111.13; *see also* 14D Fed. Prac. & Proc. Juris. § 3851 (4th ed.) (while convenience is important, it still "must be weighed against the other relevant factors that typically are considered"). As one major treatise has explained, "[i]f none of the operative events in the lawsuit took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed." 17 Moore's Fed. Prac. § 111.13(1)(d)(i). Moreover, courts routinely transfer entire cases regardless of convenience if that means the case will be litigated in a single forum so that witnesses do not have to testify twice in two separate forums. *See, e.g.*, *Central Money*, 122 F. Supp. 2d at 1346; *Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*, 212 F. Supp. 2d 1101, 1104 (E.D. Mo. 2002).

For all these reasons, the convenience prong strongly supports transfer of this entire case under § 1404(a).

**B. Section 1404(a)'s interests-of-justice analysis strongly supports transfer.**

Section 1404(a) next instructs courts to consider whether the interests of justice support transfer. 28 U.S.C. § 1404(a). In evaluating the interests of justice, the Eleventh Circuit instructs courts to consider trial efficiency and the totality of the circumstances.[4] Moreover, courts often consider the comparative caseloads of the transferor and transferee courts to determine if one docket is more congested than the other. *See, e.g.*, *United States v. APTIM Fed. Servs., LLC*, No. 23-607, 2024 WL 3597164, at *3 (M.D. Fla. July 31, 2024); *Frybarger v. Salemme*, No. 22-61437, 2022 WL 18530012, at *13 (S.D. Fla. Dec. 28, 2022); *see also Atl. Marine*, 571 U.S. at 62 n.6 (identifying docket congestion as potential factor); *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003)

[4] This part of the analysis incorporates factor (9) of the Eleventh Circuit's § 1404(a) test. *See Manuel*, 430 F.3d at 1135 n.1.

(while docket congestion cannot standing alone justify transfer, it "may be an appropriate consideration in a § 1404 motion to transfer"). Finally, courts will consider whether there are any "local interest in having localized controversies decided at home." *Atl. Marine*, 571 U.S. at 62 n.6.

As the Court pointed out in a recent standing order, the Middle District of Florida is "one of the busiest [districts] in the nation." *Standing Order Requiring Disclosure of the Use of Artificial Intelligence*, U.S. District Court, Middle District of Florida (May 5, 2026); *see also APTIM Fed. Servs.*, 2024 WL 3597164, at *3 ("Indeed, we are often recognized as carrying one of the heaviest overall caseloads in the United States."). By way of comparison, in 2025, this District had 769 cases per judgeship (with 609 being civil cases) and the United States District Court for the District of Columbia had 348 cases per judgeship (with 300 being civil cases).[5] That is a significant difference. This factor readily supports transfer, especially where the judge likely to be assigned post-transfer will have an unmatched familiarity with the legal and evidentiary issues in this case and can probably adjudicate them most efficiently.

Next, the "local interest" factor also favors transfer. Not only would the District of Columbia have a strong local interest in the events that occurred on January 6, but it is also well-accepted that the place where the prosecution occurred "has a natural interest in determining the extent to which resort to its legal processes is to be inhibited by the possibility that a person making use of these processes will be held liable for malicious prosecution or abuse of process." *Restatement (Second) of Conflicts of Laws* §155 cmt. b

[5] *See* Admin. Off. of the U.S. Courts, *U.S. District Courts-Weighted and Unweighted Filings per Authorized Judgeship* (Dec. 31, 2025), *available* at https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fwww.uscourts.gov%2Fsites%2Fdefault%2Ffiles%2Fdocument%2Fstfj_x1a_1231.2025.xlsx&wdOrigin=BROWSELINK (last visited Aug. 20, 2026).

(1971). In fact, it is "relatively rare" that a state other than the one where the prosecution occurred would ever have a greater interest. *Id.*; *see also New Life Ventures, Inc. v. Locke Lorde LLP*, No. 18-24551, 2019 WL 2193508, at *6 (S.D. Fla. Apr. 24, 2019) (transferring malicious prosecution case to place where prosecution occurred because that community has "the most interest in the matter") (citation omitted).

Finally, turning to the overall interests of justice, transfer of this entire case under § 1404(a) is all but required. That is because personal jurisdiction and venue over Deputy Chief Ballantine is lacking. And much like courts applying § 1406(a), courts applying § 1404(a) routinely transfer entire cases to keep all claims against all defendants together to be litigated in a single action. *See, e.g.*, *Frybarger*, 2022 WL 18530012, at *14 (collecting cases); *Constance Joy II, LLC v. MTU Am., Inc.*, No. 20-61377, 2020 WL 10762266, at *7 (S.D. Fla. Aug. 24, 2020) (collecting additional cases); *Clausen v. Burns & Wilcox, Ltd.*, No. 19-605, 2020 WL 2425671, at *3 (M.D. Fla. May 12, 2020); *McCullogh v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1353 (S.D. Fla. 2017); *Adstep, Inc.*, 2003 WL 25276323, at *10 (collecting additional cases); *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1303-05 (S.D. Fla. 2002). As the Supreme Court has long recognized, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960), *superseded by statute on other grounds, as observed in Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524 (10th Cir. 1987). That being the case here, both the convenience and the interests-of-justice prongs strongly support transfer of this entire case under § 1404(a).

## CONCLUSION

For all these reasons, the motion to transfer this entire case to the United States District Court for the District of Columbia should be granted.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel have conferred under Local Rule 3.01(g) via email. Plaintiffs oppose.

## CERTIFICATION UNDER PENALTY OF PERJURY THAT ARTIFICIAL INTELLIGENCE WAS NOT USED IN THE PREPARATION OF THIS FILING

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of this filing in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an affirmative obligation to read each case cited in this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

This 20th day of August, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

PAUL E. WERNER
Assistant Director

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Senior Trial Counsel
Civil Division, Torts Branch
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
202-598-3916
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

Thomas F. Ranieri, Esq.

/s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Senior Trial Counsel
Civil Division, Torts Branch
U.S. Department of Justice