**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
Orlando Division

| | | |
|---|---|---|
| **Enrique Tarrio, et al.**, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | **Case No.:** 6:25-cv-998-WWB-DCI |
| | ) | |
| **United States of America, et al.** | ) | |
| | ) | |
| *Defendants*. | ) | |
| ______________________________ | ) | |

**MEMORANDUM IN OPPOSITION TO**
**METROPOLITAN AFRICAN EPISCOPAL CHURCH'S**
**MOTION TO ENFORCE EQUITABLE LEIN AND MEMORANDUM IN SUPPORT**

**COMES NOW** Plaintiffs Enrique Tarrio, Zachary Rehl, Ethan Nordean, Joseph Biggs, and Dominic Pezzola (collectively, "Plaintiffs"), by and through undersigned counsel, and respectfully submits this, its Memorandum in Opposition to the Intervenor Metropolitan African Episcopal Church ("Church")'s Motion to Intervene and Memorandum in Support, and in support of same, respectfully submits the following:

**STATEMENT OF RELEVANT FACTS**

On December 12, 2020, individuals associated with the Proud Boys organization, including Enrique Tarrio and Ethan Nordean, allegedly trespassed on the property of Metropolitan African Methodist Episcopal Church in Washington, D.C., and destroyed the Church's Black Lives Matter banner. On January 4, 2021, the Church filed suit in the Superior Court for the District of Columbia against Tarrio, Nordean, and among other defendants.

On June 30, 2023, following a two-day evidentiary hearing, the D.C. Superior Court entered a default judgment in favor of the Church against Tarrio and others in the amount of $1,036,626.78, plus costs and interest. Notably, the Tarrio and Nordean (hereinafter "Judgment

Plaintiffs") could not have effectuated a defense, as they were wrongfully incarcerated at the time the suit was filed and default judgment entered against them. Subsequent orders by the D.C. Superior Court increased the total judgment to approximately $2.8 million and added defendant Ethan Nordean to the judgment.

On January 27, 2025, the Church domesticated the $2.8 million D.C. judgment in Florida state court and obtained a Florida judgment lien. On March 3, 2026, the Florida state court (Eleventh Judicial Circuit) granted the Church's motion for an equitable lien on net proceeds recovered by Enrique Tarrio and Ethan Nordean through judgment or settlement of the instant federal action.[1] On September 12, 2025, the D.C. Superior Court granted the Church's motion for an equitable lien on any proceeds recovered by Tarrio and Nordean in the federal action, and on March 3, 2026, the Florida state court granted a similar equitable lien order. Following a motion hearing on October 22, 2025, the Florida court held that the Church's motion satisfied the prerequisites of the proceeding's supplementary statute on October 31, 2025.

The federal action was filed on June 6, 2025. The Church obtained its Florida equitable lien order on March 3, 2026, approximately nine months after the federal action commenced. The Church did not file its motion to intervene in this federal action until eleven months later, and eleven weeks after receiving its Florida judgement, on May 26, 2026.

**ARGUMENT**

The Church moves to intervene in the current action under Fed. R. Civ. Pro. 24(a)(2) – and this rule only – for the purposes of enforcing ana equitable lien on the proceeds of a judgment or settlement in the above-captioned case which might inure to the benefit of Tarrio

[1] The Florida court defined net proceeds as all funds due to Tarrio and Nordean pursuant to any judgment or settlement agreement in this action, excluding attorneys' fees and costs in connection with services rendered in the federal action and funds statutorily exempt from attachment.

and Nordean. Fed. R. Civ. Pro. 24(a)(2) states that "[o]n timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Church's Motion to Intervene fails to satisfy any of the four requirements for intervention as of right or merit permissive intervention under Fed. R. Civ. Pro. 24 and Eleventh Circuit precedent.

I. Motion for Intervention.

The Church's Motion to Intervene fails to satisfy any of the four requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) and Eleventh Circuit precedent. First, the motion is untimely under the four-factor test established by the Eleventh Circuit. The Church knew or should have known of its interest in this federal litigation, if such there is, when the case was filed in June 2025, and certainly by September 2025 when it obtained its D.C. lien order. Yet the Church waited nearly eleven months before seeking their original intervention, and, of course, their renewed motion is even later than the current. This substantial delay prejudices the existing parties, who have already invested significant resources, and Plaintiffs are unaware of any unusual circumstances excusing the delay.

Second, the Church lacks a direct, substantial, and legally protectable interest in this action. The Church's interest is fundamentally a generalized creditor interest, not an interest in a specific fund that is the subject of this action. Allowing intervention would improperly require this federal court to supervise collateral collection disputes involving net proceeds calculations, exemptions, and fee carve-outs. Further, the Church's asserted interest in hypothetical future net

proceeds is speculative and contingent, dependent entirely on uncertain litigation outcomes. No fund currently exists, and the Government has moved to dismiss the action.

Third, the Church has failed to demonstrate practical impairment. The Church already possesses state-court orders restricting dissipation of proceeds and has access to multiple alternative remedies, including supplementary proceedings, post-judgment garnishment, levy, and contempt sanctions. These remedies are adequate to protect the Church's interests without requiring party status in this federal action.

Fourth, existing parties adequately represent the Church's interests, such as they are in this litigation. The Government has a strong institutional interest in ensuring that any settlement or judgment complies with applicable federal law, including the Anti-Assignment Act. The Judgement Plaintiffs' counsel will advise them to comply with state-court lien orders to avoid additional contempt liability, and their interest is to maximize settlement or the judgment of damages, not dissipating settlement funds and incurring further legal difficulties. The Church's interests are adequately protected by these in-built incentives.

Additionally, the Church's request for ongoing notice of settlement discussions should be denied as an unnecessary and potentially disruptive intrusion into confidential settlement negotiations.

*i. Timeliness*

The timeliness of a motion to intervene is committed largely to the district court's discretion, reviewed only for abuse of discretion. *United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983). A district court must consider four factors in assessing timeliness:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of its interest in the case before petitioning for leave to intervene; (2) the extent of prejudice to existing parties as a result of the would-be intervenor's failure to apply as soon as it knew or

> reasonably should have known of its interest; (3) the extent of prejudice to the would-be intervenor if its petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id.*

Applying these factors demonstrates that the Church's August 14, 2026, motion is substantially delayed and prejudicial to the parties already engaged in this litigation.

The Church's knowledge of its potential interest in this federal litigation arose no later than June 6, 2025, when the above-captioned case was filed. The Church had already obtained its D.C. default judgment in mid-2023 and had increased that judgment to over $3.2 million with interest through subsequent orders. By January 2025, the Church had domesticated its judgment in Florida. When the federal case naming Tarrio and Nordean was filed in June 2025, the Church-as a judgment creditor with a domesticated Florida judgment-had reason to monitor the case and consider protective measures and did not do so.[2]

The Church's argument that it awaited the resolution of the Government's motions to dismiss is insufficient. The Church could have filed a motion to intervene conditionally or sought preliminary protective measures much earlier. The Church's strategy of first obtaining state court lien orders and then seeking federal intervention does not excuse the delay in seeking federal intervention.

The Church's stated purpose, that is, to enforce state-court equitable lien orders and to receive ongoing notice of settlement discussions, would unnecessarily complicate settlement

---

[2] At the absolute latest, the Church's interest became unmistakable on September 12, 2025, when the D.C. equitable lien order was entered, and certainly by March 3, 2026, when the Florida equitable lien order was entered. These orders explicitly attached the Church's lien to any net proceeds Tarrio and Nordean might recover. Yet the Church waited until May 26, 2026-nearly eleven months after the federal case was filed, more than eight months after securing its D.C. lien order, and eleven weeks after obtaining its Florida lien order-before moving to intervene. This delay is substantial and demonstrates a lack of diligence.

negotiations and case management. Existing parties have proceeded on the assumption that they are the only stakeholders in this litigation. The sudden introduction of a judgment creditor seeking to monitor and potentially claim portions of any recovery would disrupt the parties' reasonable expectations and would almost certainly derail or impede settlement discussions. While the requirement of timeliness must have "accommodating flexibility" toward both the court and the litigants, *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242. 1259 (11th Cir. 2002) [internal citation omitted], the Church's eleven-month delay at this stage of litigation is prejudicial and unnecessary.

The Church points to no unusual circumstances that would excuse its eleven-month delay in seeking intervention. The Church's strategy appears to have been to pursue its judgment and lien orders through state-court proceedings first, and only after securing those orders to seek insertion into federal litigation. Rule 24 timeliness requires prompt action once an interest is known but does not permit a party to pursue parallel remedies in state court and only then intervene once the state-court proceedings have concluded. Further, if the Church was concerned about the Judgement Plaintiffs' ability to satisfy a judgment, that concern existed long before June 2025 and certainly before May 2026.

Conversely, the Church would suffer minimal prejudice if its motion to intervene is denied. The Church need not participate in the federal litigation itself to protect its financial interest; it can monitor the case through public filings and can enforce its liens once recovery occurs.

*ii. The Church has no protectable interest in this action.*

Under Eleventh Circuit law, a nonparty seeking to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) must demonstrate that the applicant claims an interest in the

property or transaction that is the subject of the action and that the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest. Critically, to support intervention, a nonparty's interest must be characterized as direct, substantial, and legally protectable. *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991). The Church cannot satisfy this foundational requirement.

Most crucially, a judgment creditor's desire to reach potential future proceeds does not translate into a legally protectable interest for purposes of Rule 24(a)(2). Courts distinguish between a generalized economic interest-which is insufficient to support intervention-and a legally protectable interest in a specific fund directly affected by the litigation. *TIG Specialty Ins. Co. v. Fin. Web.com, Inc.*, 208 F.R.D. 336, 338 (M.D. Fla. 2002) [internal citation omitted]. The Church's position amounts to a request that this Court recognize and protect an interest that arises from separate state-court enforcement proceedings and that depends on calculations and determinations, such as the definition of net proceeds, the identification of exempt funds, and the carve-out of attorneys' fees and costs that are not properly the subject of this action.

This approach contradicts the concern of Rule 24(a), which "expresses a concern for the extent to which a nonparty risks his interest in the property or transaction involved in the action" and Rule 24(b) "where the nonparty may have a common question of law or fact determined to his disadvantage." *United States v. Jefferson County*, 720 F.2d 1511, 1517 (11th Cir. 1983). The Church was not involved in the events of January 6.[3] The Church has no interest in the constitutional violations suffered by the Plaintiffs; its only interest is obtaining its pound of flesh.

---

[3] Thought, the Church certainly felt comfortable using the Plaintiffs' wrongful incarceration against them, however, and feel a need to chase the Plaintiffs wherever they go to attempt to squeeze anything out of people who have been impoverished by their experiences.

The Church's equitable lien orders were issued in separate litigation in D.C. Superior Court and Florida state court. Those orders do not create a cognizable interest in the property or transaction that is the subject of this federal damages action. Rather, they create a claim against whatever recovery the Judgment Plaintiffs might obtain claim which can be asserted through post-judgment collection procedures, garnishment, or other remedies available under state law and federal law governing judgment enforcement. The Church's remedy lies in those collection mechanisms, not in intervention in this federal action.

The Church's asserted interest in this federal action is fundamentally speculative and contingent. The Church bases its claim to intervention on equitable lien orders that purportedly attach to net proceeds that Tarrio and Nordean might recover in this federal case. However, no such proceeds currently exist. The Church's interest depends entirely on a future event that may never transpire: a judgment in favor of the Judgement Plaintiffs and subsequent collection of damages from the United States or settlement. An interest that exists only in the hypothetical future, dependent on uncertain litigation outcomes and speculative recovery, does not constitute the kind of direct and substantial interest that Rule 24(a)(2) contemplates. *See TIG Specialty Ins. Co., supra,* at 337-39 (holding that the intervenors had a direct and substantial interest in the case because the outcome would affect the intervenor's rights under a contract.). Without an identifiable, present fund before the Court, and no interest in the facts or law of the underlying case, the Church cannot demonstrate that its interest is anything more than a speculative hope. If such a fund were to one day materialize, the Church may have a right to intervene, but that day is not today.

Further, allowing the Church to intervene and become a party would require this federal court to supervise disputes over the calculation and distribution of net proceeds, the identification

of exempt funds, and the allocation of attorneys' fees and costs in the event of a dispute between the Judgment Plaintiffs and the Church. These are quintessentially collateral matters that should be resolved through post-judgment collection procedures, not through intervention in the underlying federal action. The federal court's role is to adjudicate the merits of the damages claim, not to serve as an arbiter of competing creditor claims or to police the boundaries of net proceeds as defined in state-court lien orders.

Moreover, even if a recovery were to occur, the Church's interest would be subject to numerous contingencies and calculations that would require ongoing federal court supervision.[4] The Church's lien purports to attach to net proceeds excluding attorneys' fees, costs, and exempt funds. Determining what constitutes net proceeds in the context of a federal damages judgment, accounting for the Judgement Plaintiffs' attorneys' fees, litigation costs, applicable exemptions, as well as how the Plaintiffs have decided amongst themselves how to divvy up any settlement, would require the federal court to engage in collateral disputes that are beyond the scope of the underlying action and that properly belong in state-court collection proceedings. The Church does not have a judgment against all the Plaintiffs, after all, and their rights and apportionments may be prejudiced by the Chruch's intervention in the settlement process.

*iii. Disposition of this action will not impact the Church's ability to protect its rights.*

To establish intervention as of right under Federal Rule of Civil Procedure 24(a)(2), an applicant must demonstrate that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest. Fed Rules Civ Proc R 24(a)(2).

---

[4] As a corollary issues, The Church's intervention would also create the risk of conflicting orders and inconsistent rulings, as the federal court would need to coordinate with state courts regarding the scope and application of the Church's liens. This coordination problem further demonstrates that the Church's interest is not the kind of direct, substantial, and legally protectable interest that Rule 24(a)(2) is designed to protect.

"Intervention as of right must be supported by 'direct, substantial, legally protectible interest in the proceeding.'" *Athens Lumber Co. v. Fed. Elect. Com.*, 690 F.2d 1364, 1366 (11th Cir. 1982) [internal citations omitted]. "In essence, the intervenor must be at least a real party in interest in the transactions which is the subject of the proceeding." *Id.*

The Church has failed to demonstrate practical impairment. They have no interest in the underlying circumstances of the lawsuit, so its interest is purely financial. In the absence of a specific fund to which they have a special right and where they have adequate means to protect their interest elsewhere, it is not enough to justify intervention. In *First Fin. Bank v. CS Assets, LLC*, the Court held that the intervenors "failed to show that their ability to protect their interest in recovering [their] property would be impaired in any material way by adjudication of the . . . issues in [the] lawsuit . . ." where the intervenors had recorded interests (a *lis pendens*) already protecting that interest. 2009 U.S. Dist. LEXIS 12870, *10-14 (S.D. Ala. 2009). Here, the Church has already outlined all the ways in which it has already safeguarded its interests.

Moreover, the Church's impairment argument rests on a speculative foundation: the assumption that a fund will exist from which the Church can recover. However, the disposition of this federal action may result in no recovery whatsoever. The case may be dismissed, settled for nominal or no consideration, or resolved in a manner that generates no proceeds. Until a judgment is entered and funds are received by the Judgment Plaintiffs, there is no present fund to dissipate and no concrete interest that can be impaired by the disposition of this action.

The Church's concern about future dissipation of hypothetical proceeds is the type of theoretical impairment that does not satisfy Rule 24(a)(2). The practical impairment test requires more than speculation about what might happen if a judgment is obtained and if Judgment Plaintiffs then refuse to comply with collection efforts. The Church must demonstrate that the

disposition of this particular action will impair its ability to protect an existing, concrete interest and not a contingent interest dependent on events that may never occur.

Permitting the Church to intervene, however, would prejudice the rights of Rehl and Pezzola. The Church has no judgments against these two Plaintiffs (and limited rights against Biggs). Each has a right to pursue its claims without interference from a third party with which they have no relationship, and each has a right to negotiate a settlement without the Church's supervision. Encumbering the rights of Rehl and Pezzola, and potentially delaying dispersal of the settlement or judgment proceeds, because of a judgment or lien the Church has against their co-Plaintiffs, is unfair.

The Church utilizes the Judgment Plaintiffs' refusal to enter a stipulation with the Church as evidence that the Plaintiffs intend to not abide by the liens it has on the Judgment Plaintiffs. Dkt. 85, pg. 16. This is the most nefarious interpretation of the Plaintiffs' decision. There are other reasons that may have impacted that decision, such as concern by the Plaintiffs regarding the method and proportions by which the Church wanted to sequester portions of any settlement in escrow, the requirement that the Church provide written approval before proceeds from the escrowed settlement amounts, and concerns that the Church might attempt to force the Plaintiffs to allocate the settlement in line with the Church's preferences and refuse to provide written approval until its demands were met.

The cases cited by the Church in support of its position here, in addition to not being 11th Circuit precedent, are also inapposite. The Illinois District Court in *Lalic v. Chicago* permitted intervention where the lien by statute which directly connected the liens to proceeds from person injury cases for which the government had paid benefits; in other words, the intervenor was directly connected to the underlying cause of action and fact pattern related to the lien. 263 F.

Supp. 987, 988 (N.D. Ill. 1967). Similarly, the intervenor in *Babbitt v. U.S.* was the plaintiff's previous attorney who had undertaken significant work on the case prior to the plaintiff's engagement of another attorney, and so was directly involved in the case itself, and was not attempting to get a charging lien from an unrelated action. Case No. 1:24-cv-01701-ACR, Dkt. 47-47-1 (D.D.C. 2025) [attached hereto as Exhibit A].

The Church has already obtained equitable lien orders from both D.C. and Florida courts that prohibit dissipation of proceeds. These orders provide the Church with the legal protection it seeks. The existence of these state-court judgments and orders means that the Church's interest is not dependent on intervention in this federal action.

*iv. The Church has adequate collection remedies available.*

The Church possesses multiple collection tools that do not require party status in this federal action, and so it need not intervene to protect its own interests. The Church has already initiated Florida supplementary proceedings, which provide a direct mechanism for collecting judgments and investigating the Judgement Plaintiffs' assets and ability to pay. Fla. Stat. § 56.29. Once any judgment or settlement proceeds are received by the Judgement Plaintiffs, the Church can pursue garnishment and levy proceedings in state court to satisfy its lien without requiring intervention in the federal action. Fla. Stat. § 77.01. The Church can seek contempt sanctions in the state courts that issued the dissipation prohibitions if the Judgement Plaintiffs violate those orders. The D.C. and Florida courts that issued the equitable lien orders retain jurisdiction to enforce those orders and to ensure compliance with dissipation restrictions. These alternative remedies are adequate to protect the Church's interests and render intervention unnecessary. The availability of these collection tools demonstrates that the disposition of the

federal action will not, as a practical matter, impair the Church's ability to protect its claimed rights.

Converting this federal court into a collection forum for a separate state judgment would raise significant federalism concerns and create administrative burdens. The Church's equitable lien arises from state-court proceedings in D.C. and Florida. The enforcement of that lien is properly the province of those state courts, which have already issued orders addressing dissipation concerns and which retain ongoing jurisdiction over collection matters. Federal courts should not be transformed into collection agencies for state judgments. The Church has adequate state-court remedies and state-court orders to protect its interests. Permitting intervention would blur the proper boundaries between state and federal judicial authority and would require this federal court to supervise collection efforts that are more appropriately handled by the state courts that issued the underlying judgments.

*v. Existing parties adequately represent the Church's interests.*

The Government's primary interest is in defending this Bivens action and minimizing the plaintiffs' recovery. This interest does not conflict with the Church's interest in protecting its lien. The Church's interests are adequately protected by the Government's obligation to comply with federal law and by the Government's role as a sophisticated party with substantial experience in federal litigation and settlement negotiations.

The Judgment Plaintiffs' interest is in maximizing their recovery in this federal action, not in dissipating settlement proceeds. The Judgment Plaintiffs' counsel will advise them that violating the state-court equitable lien orders would expose them to additional contempt liability, further legal proceedings, and potential criminal sanctions. The Judgment Plaintiffs have every incentive to comply with the lien orders to avoid compounding their legal difficulties.

The Church's concern about the Judgment Plaintiffs stated refusal to pay the Church's judgment in the separate D.C. action does not establish that the Judgement Plaintiffs will violate the equitable lien orders in this federal action. The equitable lien orders are court orders, and violation of them would constitute contempt of court-a serious matter with significant consequences. The Judgement Plaintiffs' counsel will ensure that they understand the legal consequences of violating the lien orders and will advise them accordingly.

The Church argues that the Judgement Plaintiffs are openly adverse to the Church's efforts to enforce its lien. However, the Judgement Plaintiffs' opposition to the Church's intervention motion does not establish that they will not adequately represent the Church's interest in the federal action. These interests are not necessarily adverse; they can coexist. Conversely, Plaintiffs' counsel is concerned that the inclusion of the Church will impair his ability to freely negotiate and settle the case. Despite its protestations to the opposite, if permitted to intervene, the Church would have the standing to interject itself in delicate, high-stakes litigation and interfere with settlement discussion with the government.

II. The Church's Request for Notice of Settlement Discussions

Even if the Court were inclined to grant the Church's motion to intervene, the Church's request for ongoing notice of settlement discussions should be denied. The Church does not cite to any controlling 11th Circuit precedent or rule permitting this this proposal and permitting them to do so will be injecting a party into settlement discussion in which they have no stake but do have an incentive to meddle in order to ensure the settlement meets their preferred outcomes.

This request would complicate settlement negotiations and delay resolution of the case. Settlement discussions are often conducted on a confidential, without-prejudice basis. Requiring the parties to notify the Church of settlement discussions would undermine the confidentiality of

those discussions and could complicate negotiations by introducing a third party with financial interests in the outcome.

Moreover, the Church's request for notice is not necessary to protect its lien interest; in fact, it's unclear how being made aware of settlement negotiations protects its lien interests at all. The Church can obtain information about settlement through public filings, discovery, and communication with the Judgement Plaintiffs' counsel. The Church can monitor the case through the federal docket and can enforce its liens once settlement proceeds are received. The only reason to be notified of a settlement discussion is to interject yourself in it. The Church's desire for real-time notice of confidential settlement discussions does not rise to the level of a legally protectable interest that would justify imposing notice obligations on the parties.

**WHEREFORE** and for the forgoing reasons, the Plaintiffs respectfully request that this Court deny the Metropolitan African Methodist Episcopal Church's Motion to Intervene to Enforce the Equitable Lien in its entirety, or, in the alternative, if the Court does permit the Church to intervene, to deny its request to be notified of any settlement discussions between the Plaintiff and the Defendant as unnecessary and unduly burdensome to the litigation and settlement process, and any other remedy or action the Court deems correct and just.

**Respectfully submitted this 28th day of August, *Anno Domini* 2026.**

__/s/ Thomas F. Ranieri______
Thomas F. Ranieri, Esq.
RANIERI & ASSOCIATES, PLC
33 Cedarside Court
Front Royal, Virginia
Telephone: 540-550-2330
Email: ranieri@tra-lawfirm.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 28, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

Siegmund F. Fuchs, Esq.

Joseph J. Onorati

Paul D. Brachman

___/s/ Thomas F. Ranieri____
Thomas F. Ranieri, Esq.

**Certification Under Penalty of Perjury that Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: This memorandum in opposition was based on the prior opposition to the Church's motion, in which initial research on relevant case law was conducted using AI and assistance with organizing the relevant facts. AI was also used in identifying additional case law in this memorandum in opposition. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person singing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.