**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ESTATE OF ASHLI BABBITT and AARON BABBITT, individually and on behalf of the ESTATE OF ASHLI BABBITT | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 1:24cv1701-ACR |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

**MOTION TO INTERVENE TO ENFORCE CHARGING LIEN FOR ATTORNEY'S FEES AND GRANT OTHER EQUITABLE RELIEF**

Terrell N. Roberts, III, pursuant to F.R.Civ.P. 24, moves to intervene in this case to enforce the movant's charging lien against any judgment or settlement in this case and to grant equitable relief to impose conditions to ensure payment of the fee.

This motion is made upon the following grounds:

1. Terrell N. Roberts, III ("the Attorney") is a licensed attorney with offices in the State of Maryland. He is admitted to practice law in both state and federal courts in that State as well as the District of Columbia and the Commonwealth of Virginia.

2. On January 6, 2021, a United States Capitol Police officer shot and killed Ashli Babbitt in the United States Capitol.

3. On January 18, 2021, the Plaintiff Aaron Babbitt ("the Client") retained the Attorney to prosecute all "civil claims" to recover damages arising from the death of his wife, Ashli Babbitt. Under a written retainer agreement, the Client agreed to compensate his Attorney on a contingency fee (40%) from "money paid by way of settlement or judgment."

4. On February 25, 2022, the Attorney terminated his representation for cause, fully advising the Client of the reasons.

5. Before his withdrawal from the case, the Attorney's performed extensive services. He led an investigation over a 1-year period in which he gathered and analyzed a massive amount of video evidence and identified and interviewed numerous witnesses. In addition, he gathered necessary background information and records needed for the case, filed a lawsuit to obtain records of the Metropolitan Police Department's investigation of the shooting, secured two highly qualified experts needed to prove two key elements of damages, sent the required notice of claim under the Federal Tort Claims Act, maintained and managed secured a large amount of crowd-funding for litigation expenses, assisted his client in finding and hiring an attorney to open an estate in the State of California, and laid the groundwork for the lawsuit to be filed—all of which is in furtherance of a judgment or settlement for the Client's benefit. In so doing, the Attorney substantially performed, and he is entitled to his contingent fee under his agreement with the client.[1]

6. The Attorney has cooperated in the Client's transition to another attorney, turning over 110.75 GB of data that included videos, photos, interviews, documents, investigation analysis, power points, diagrams, attorney filings, expert work product.[2]

**WHEREFORE**, the Attorney moves the Court for an order for the following relief:

1. An order that establishes a charging lien in favor of the Attorney against a recovery by way of judgment or settlement for the Client and the Estate;
2. The Court's exercise of its equitable powers over a judgment or settlement to ensure payment of the Attorney's lien;

[1] The contingent fee must conform to the FTCA requirements which provide a lower percentages than set forth in the retainer agreement.
[2] 100 GB of data is equivalent to 20,000 hours of music, 50,000 high resolution photos or 2 million emails. It is a massive amount of data. https://www.megadisk.net/blog/how-much-is-100-gb-of-data-explained/.

3. An order which adjudicates the amount of the charging lien following judgment or settlement, if that occurs; and

4. For such other and further relief as may be just.

/s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III
Bar ID No. 965061
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
TRoberts@robertsandwood.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Motion to Intervene, with a Supporting Memorandum of Law, was electronically filed on February 11, 2025, via the CM/ECF File & Serve system and an electronic copy was e-served on:

Robert Patrick Sticht
*Attorney for Plaintiffs*
JUDICIAL WATCH, INC.
425 Third St., SW, Suite 800
District of Columbia, DC 20024
rsticht@judicialwatch.org

Joseph Alfonso Gonzalez, Esq.
Brian J. Boyd, Esq.
Sarah Elisabeth Whitman, Esq.
United States Department Of Justice
Civil Division, Torts Branch
175 N Street, NE
Washington, DC 20002
joseph.a.gonzalez@usdoj.gov
brian.j.boyd@usdoj.gov
sarah.whitman@usdoj.gov

/s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III

**IN THE UNITED DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ESTATE OF ASHLI BABBITT and<br>AARON BABBITT, individually and on<br>behalf of the ESTATE OF ASHLI BABBITT | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 1:24cv1701-ACR |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE TO ENFORCE CHARGING LIEN FOR ATTORNEY'S FEES**

Terrell N. Roberts, III, pursuant to F.R.Civ.P. 24, submits this memorandum of law in support of his motion to intervene to enforce a charging lien for attorney's fees.

## I. BRIEF STATEMENT OF FACTS

After being retained, Terrell N. Roberts, III (the "Attorney") commenced an investigation of the facts and circumstances of the case, which was a substantial undertaking. Nearly everyone at the Capitol on January 6th had a cellphone and recorded the event, resulting in an abundance of video evidence in the hands of many people. Mr. John Sullivan, who provided the original televised video recording of the shooting to a news outlet, agreed to provide the Attorney with an exact copy of his video. (The Attorney's investigator succeeded in obtaining exact copies of original footage from many other sources.) Obtaining a copy of the original footage is vastly superior to obtaining a "compressed" copy from the internet which is significantly inferior as a piece of evidence. The investigator also collected exact copies of the video from freelance journalists and ordinary citizens who were present at the event.

In addition, the investigator conducted internet research of news and public information sources, including C-Span footage of the Capitol and interviews of congressmen regarding the events at the Capitol on January 6th. The examination of the video footage and audio recordings

was of obvious importance. It helped document in detail not only the actions of the shooter but also what was going on in the Speaker's Lobby and the House chamber at the time of the shooting, which was relevant to the alleged threat posed by Ashli Babbitt's entry.

The Attorney filed an action in the Superior Court of the District of Columbia to obtain the records of the Metropolitan Police Department which was the police agency asked to investigate the shooting of Ashli Babbitt. The District of Columbia contested the action and moved to dismiss the action. Eventually, the District provided records of its investigation, including witness interviews which were taped and transcribed. Considerable time was devoted to studying these records. The identities of witnesses were redacted, and the Court upheld the redactions over the Attorney's objection. However, the Attorney was able to identify nearly all of the witnesses interviewed. The Attorney assigned his investigator to listen to all of the audiotaped interviews and provided frequent updates.

The Attorney was able to gain access through FOIA to the clothing worn by Mrs. Babbitt at the time of the shooting. He also obtained the autopsy report and related materials, including autopsy photographs, and toxicology reports, and interviewed the medical examiner.

High-ranking officials of the Capitol Police were adamant in refusing to disclose to the public the identity of the officer who shot Ashli Babbitt. Utilizing video and still images, and comparing them with photographic evidence of Lt. Michael Byrd, the Attorney's investigator was able to identify with certainty Lt. Byrd as the shooter in February 2021 – well before anyone else in the news media who was intensely interested.

Much time and effort were devoted to investigating Lt. Byrd's history and background. The fruits of that investigation – a massive amount of data-- were turned over to the Client's new lawyers. This included photographic and video evidence of the House chamber and the Speaker's

Lobby of Lt. Byrd's activities and movements prior to the shooting as well as the actions of persons inside the House chamber and whether they were in a position to witness the shooting.

The Attorney sent a preservation letter to the Capitol Police's General Counsel asking that all relevant footage from cameras inside the Capitol be preserved. Additional preservation letters were sent to Sprint and Lt. Byrd's attorney.

The Attorney thoroughly investigated Ashli Babbitt's history and background and interviewed her family, friends, and acquaintances, including persons knowledgeable about her military service.

In sum, the investigation of the case was extensive and redounds to the Client's benefit in his civil action.

The Attorney handled press and media inquiries and appeared on several television and radio programs. He also managed a large sum of money obtained through crowdfunding, which was used to defray the expense of the investigator, the cost of hiring the pathologist to evaluate the case and pay for the cost of records.

In regard to proof of damages, the Attorney selected an experienced economist, Dr. Thomas Borzilleri, who provides expert opinions on economic losses in wrongful death and other tort cases in the Washington, D.C. metropolitan area. The Attorney obtained the necessary financial records to enable Dr. Borzilleri to evaluate the loss of income resulting from the decedent Ashli Babbitt's death as well as the cost of replacement services she would have performed in the marital relationship. He issued a report detailing his findings and opinions concerning economic losses, and the Attorney provided this report to the government in support of the F.T.C.A claim for monetary damages.

The Attorney also selected a well-qualified forensic pathologist to determine the mechanism of injury resulting in Ashli Babbitt's death and where she experienced conscious pain and suffering before she died. The pathologist came to opinions valuable to the Client's case. He not only opined as to the precise injuries suffered by Ashli Babbitt, but he also determined that she had to suffer conscious pain and suffered before she died and for a significant period of time. The pathologist is expected to express additional opinions which will redound to the benefit of the Client's case.

The Attorney took steps to preserve the client's legal claims under the Federal Tort Claims Act. He timely filed the appropriate Form 95 and supplemented and amended the claim to expand the legal claims and damages sought.

In sum, the legal work performed by the Attorney to the point of his withdrawal placed the Client in a position to achieve a successful outcome on his lawsuit.

## II. LAW

In *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996), the District of Columbia Court of Appeals stated:

> The common law as applied in the District of Columbia recognizes two distinct types of liens applicable to a claim against a client for attorneys' fees: the "retaining lien" and the "charging lien." The retaining lien attaches to property of the client in the possession of the attorney and entitles the attorney to retain possession of that property until the fee is paid. *See Lyman v. Campbell,* 87 U.S.App.D.C. 44, 45–46, 182 F.2d 700, 701–02 (1950). The "charging lien" arises when an attorney obtains a judgment or decree for a client, and has been characterized as " 'merely a claim to the equitable interference by the court to have that judgment held as security for his debt [the attorneys' charges against the client].' " *Id.* at 46, 182 F.2d at 702 (quoting *Barker v. St. Quintin,* 12 M. & W. 441 (1844)). Unlike the retaining lien, the charging lien is not dependent on possession. *Id.*
>
> The District's rule on charging liens is narrower than the English common law rule. *Lyman, supra,* 87 U.S.App.D.C. at 46, 182 F.2d at 702. In order for a charging lien to attach in this jurisdiction, "it is indispensable that there exist between the client and his attorney an agreement from which the conclusion *may reasonably be*

*reached* that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered." *Elam [v. Monarch Life Ins. Co,* 598 A.2d 1167,1169, n. 5 (D.C. 1991)](*quoting Pink v. Farrington,* 67 App.D.C. 314, 316, 92 F.2d 465, 467, *cert. denied,* 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 572 (1937)). A charging lien does *not* depend upon an agreement that the attorney shall have a *lien* upon the judgment; in fact, only in the absence (or inadequacy) of an express lien does the question of a possible equitable lien arise. 1 SPEISER § 2.33.

During the progress of a suit, an attorney under a contingent fee contract is "vested with an interest in the cause of action." *Kellogg v. Winchell*, 51 App.D.C. 17, 19-20, 273 F. 745, 747-48, 16 A.L.R. 1159 (1921)("the trend of modern decisions [is] to protect the right of the attorney to receive compensation for his services"). He may intervene to protect this interest. *Continental Casualty Co. v. Kelly*, 70 App.D.C. 320, 322, 106 F.2d 841, 843 (1939). The "broader rule we discern in the cases [is] that 'generally … where an attorney contracts for the prosecution for a contingent fee, payable out of the fund recovered, … an equitable lien is created against the fund and attaches to it *when it is recovered*.'" *Elam v. Monarch Life Ins. Co.*, *supra*, 1171(*quoting Wardman v. Leopold*, 66 App.D.C. 111, 114, 85 F.2d 277, 280, *cert. denied*, 299 U.S. 570 (1936)(*emphasis in the original*).

The right to intervene as of right is governed by F.R.Civ.P. 24(a):

> On timely motion, the court must permit anyone to intervene who: …(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**III. ARGUMENT**

Based upon well-established case law and Rule 24(a)(2), the Attorney has a right to intervene to protect his right to compensation for services rendered to the Client in this matter. As the Attorney and Client's retainer agreement makes clear, "they contracted with the understanding that the Attorney's charges were to be paid out of the judgment recovered." Thus, a charging lien attaches in favor of the Attorney against the fund created by way of judgment or settlement in favor

of the Client. The Attorney has the right to intervene in this case and invoke "the equitable interference by the court to have the judgment or settlement as the case may be held as security for his debt." *Lyman v. Campbell*, 87 U.S.App.D.C. 44, 46, 182 F.2d 700, 702 (1950).

/s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III
Bar ID No. 965061
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
TRoberts@robertsandwood.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Memorandum of Law in Support of Motion to Intervene, with a Supporting Memorandum of Law, was electronically filed on February 11, 2025, via the CM/ECF File & Serve system, and an electronic copy was e-served on:

Robert Patrick Sticht
*Attorney for Plaintiffs*
JUDICIAL WATCH, INC.
425 Third St., SW, Suite 800
District of Columbia, DC 20024
rsticht@judicialwatch.org

Joseph Alfonso Gonzalez, Esq.
Brian J. Boyd, Esq.
Sarah Elisabeth Whitman, Esq.
United States Department Of Justice
Civil Division, Torts Branch
175 N Street, NE
Washington, DC 20002
joseph.a.gonzalez@usdoj.gov
brian.j.boyd@usdoj.gov
sarah.whitman@usdoj.gov

/s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III