**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**
Orlando Division

| | | |
|---|---|---|
| **Enrique Tarrio, et al.**, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | **Case No.:** 6:25-cv-0998-AGM-DCI |
| | ) | |
| **United States of America, et al.** | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFFS' RENEWED MOTION FOR LIMITED DISCOVERY ON WESTFALL ACT CERTIFICATION AND MEMORANDUM IN SUPPORT**

**COME NOW** Plaintiffs Enrique Tarrio, Zachary Rehl, Ethan Nordean, Joseph Biggs, and Dominic Pezzola, by and through Undersigned Counsel, and pursuant to 28 U.S.C. § 2679(d), Federal Rule of Civil Procedure 43, and Local Rule 3.01(b), move the Court for limited discovery on the United States' Westfall Act certification (Doc. 88-1) and, by the separate Request for Evidentiary Hearing filed under Local Rule 3.01(i), for an evidentiary hearing on the scope question. In support of this Motion, Plaintiffs state:

1. On August 20, 2026, the United States certified that Special Agent Nicole Miller and former Defendant Jocelyn Ballantine were acting within the scope of employment as to the incidents out of which Count IV arose. Doc. 88-1.

2. Ballantine has been dismissed. Docs. 92, 95. The live certification is Miller's.

3. A Westfall certification is reviewable *de novo*. *Osborn v. Haley*, 549 U.S. 225, 229–31 (2007). Plaintiffs challenge Doc. 88-1 on the ground that the Millers acts as alleged in the Third Amended Complaint — intercepting attorney-client communications, destroying 338 items of evidence, coaching Jeremy Bertino, and directing the visit to Lieutenant Shane Lamond — were actuated by personal animus and were not of the kind Miller was employed to perform. Dkt. 82 ¶¶ 12, 86.d–e, 86.g–j, 95–100, 109–10.

4. Those allegations plausibly place the conduct outside the scope of employment under District of Columbia law and warrant limited discovery and a hearing. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305–06 (11th Cir. 2022); *Mullane v. Moreno*, No. 21-13468, 2025 WL 1386666, at n.5 (11th Cir. May 14, 2025).

5. Plaintiffs request only: (a) Miller's deposition limited to those paragraphs and to her purpose; (b) the Lync messages among Miller, Wang, and McLeod concerning attorney-client communications and the 338 items; and (c) the reports, notes, and recordings of the Bertino interviews and the Lamond visit. They request that this discovery be completed within sixty days and that the Court then hold a hearing of no more than three hours on scope.

6. Plaintiffs do not seek to lift the requested stay of general discovery, if it has been granted by that time. They do not ask the Court to decide qualified immunity, *Bivens*, or the merits of malicious prosecution in this Motion. Those issues are briefed in the oppositions to Docs. 87 and 88, filed the same day.

8. A memorandum of law follows.

WHEREFORE, Plaintiffs request the relief set out in the Conclusion of the memorandum.

**MEMORANDUM OF LAW**

On August 20, 2026, the United States filed a certification that Special Agent Nicole Miller and former Defendant Jocelyn Ballantine were acting within the scope of their employment "at the time of the incident out of which" Count IV arose. Dkt. 88-1. Ballantine has been dismissed from this action without prejudice. Dkts. 92, 95. The certification as to her is therefore academic. The only live scope question is whether Special Agent Miller was acting within the scope of her employment when she committed the acts alleged in Count IV.

Plaintiffs challenge that certification. They have pled that Miller intercepted attorney-client communications, destroyed 338 items of evidence, coached a cooperator to authenticate a document no Plaintiff opened, and directed a visit that drove a defense witness off the stand — acts animated by personal animus, not by service of the Bureau. Dkt. 82 ¶¶ 12, 86.d–e, 86.g–j, 95–100, 109–10. Those

allegations, if true, take the conduct outside the scope of employment under District of Columbia law. The Court reviews the certification *de novo*. *Osborn v. Haley*, 549 U.S. 225, 229–31 (2007). Where, as here, the dispute is the employee's purpose, whether she was serving the Bureau or serving a personal animus — *de novo* review cannot be performed on a one-page certification. Limited discovery and a short evidentiary hearing are the means by which that review is conducted.

Plaintiffs previously moved for a hearing on an earlier certification. Dkt. 31. That motion addressed a different paper, a different complaint, and a superseded caption. That motion is withdrawn as moot. Plaintiffs do not ask the Court to rule on it. This motion is directed at Doc. 88-1 and at the Third Amended Complaint. Dkt. 82. It is filed the same day as Plaintiffs' oppositions to the U.S. and Miller's Motions to Dismiss. Dkts. 87 and 88.

**DISCUSSION OF AUTHORITY**

The government argues that Miller is immune from the common-law count because it has certified, under the Westfall Act, that she was acting within the scope of her employment as defined by District of Columbia law. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305–06 (11th Cir. 2022). That certification creates a rebuttable presumption. If it is sustained, the United States is substituted on Count IV and Miller is dismissed from that count. *Id.*; 28 U.S.C. § 2679(d)(1).

The certification is not a final judgment. The district court reviews it *de novo*. *Osborn*, 549 U.S. at 229–31, 252. The Westfall Act itself excludes from substitution claims "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Counts I through III, and the § 1985 / § 1986 counts, therefore stay against Miller whether this motion is granted or denied. What this motion decides is only Count IV: whether Miller remains the defendant on the District of Columbia malicious-prosecution claim, or whether the United States is substituted in her place.

There is a reason the Court should not treat Doc. 88-1 as self-executing. Substitution on a common-law malicious-prosecution claim, followed by an assertion of the discretionary-function exception and a premature-filing defense under *McNeil*, is the government's path to a world in which neither the officer nor the United States answers for the investigation. The FTCA does not require that result. Section 2680(h) restores liability for malicious prosecution committed by investigative or law-enforcement officers. *Millbrook v. United States*, 569 U.S. 50, 53-57 (2013). The certification cannot be used to skip the scope question, substitute the sovereign, and then declare the tort unusable. If Miller was outside the scope, she remains the defendant on Count IV. If she was inside it, the United States takes the count and must defend it on the merits of the FTCA—not by pretending the certification ended the inquiry.

The Eleventh Circuit "has not yet establish[ed] a standard for deciding whether a plaintiff is entitled to discovery to challenge such a certification." *Mullane v. Moreno*, No. 21-13468, 2025 WL 1386666, at n.5 (11th Cir. May 14, 2025) (citing *Omnipol*, 32 F.4th at 1310). It has said enough. "If a plaintiff pleads sufficient facts to plausibly allege that a defendant acted outside the scope of employment, the plaintiff 'may, if necessary, attain "limited discovery" to resolve any factual disputes.'" *Id*. (quoting *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009)). "If discovery is permitted, it should be limited in scope." *Id*. (citing *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 251 (4th Cir. 2018)). To rebut the certification the plaintiff "must submit specific evidence or the forecast of specific evidence that contradicts the [government's] certification decision." *Adigweme v. Dep't of Veterans Affairs*, 2015 U.S. Dist. LEXIS 173516, *14-15 (M.D. Fla. 2025) (citing *Omnipol*, 32 F.4th at 1305–06).

Whether Miller was acting within the scope of her employment is a question of District of Columbia law, because that is the law that governs the tort pleaded in Count IV and the law the Westfall Act incorporates for the certification. Conduct is within the scope only if it is of the kind the employee is employed to perform, occurs substantially within authorized time and space limits, and is actuated, at least in part, by a purpose to serve the master. *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (quoting Restatement (Second) of

Agency § 228 (1958)); *Wilson v. Libby*, 535 F.3d 697, 711-12 (D.C. Cir. 2008). Acts completely unrelated to the employee's duties, or actuated solely by personal motives, fall outside. *Haddon v. United States*, 68 F.3d 1420, 1424-25 (D.C. Cir. 1995) (abrogated on other grounds by *Osborn v. Haley*, 549 U.S. 225 (2007)).

**THE FORECAST OF EVIDENCE**

The Third Amended Complaint is not a conclusory denial of scope. It pleads the acts and the motive.

Miller intercepted Plaintiffs' attorney-client communications, including jail calls and emails, without a warrant. She flagged communications between Plaintiff Rehl and his attorney as "pertinent and interesting" and directed Special Agent T. Wang to them. Dkt. 82 ¶ 86.g. Because the five defense teams shared strategy, that intercept reached all five Plaintiffs. Dkt. 82 ¶¶ 86.h, 88.e, 90.

Miller participated with Special Agent K. McLeod in the destruction of 338 items of evidence after those searches, at least in part to conceal them. Dkt. 82 ¶¶ 86.i–j, 109–10.

Miller showed Jeremy Bertino the "1776 Returns" document, told him Tarrio wrote it, threatened him with twenty-five years, and coached him to authenticate a document Tarrio never opened, viewed, edited, or shared. Dkt. 82 ¶¶ 77, 84, 100.

Agents acting at Miller's direction visited Lieutenant Shane Lamond, a planned defense witness, and threatened obstruction charges if he gave exculpatory testimony. Dkt. 82 ¶¶ 12, 95–99.

Miller's own messages express personal hostility: hope that Rehl's house would go into foreclosure, and hostility to Tarrio's defense fundraising. Dkt. 82 ¶¶ 86.d–e.

Those are not the "kind" of acts the FBI employs a special agent to perform. Mining counsel's mail, burning case files, fabricating a cooperator's authentication, and running a defense witness off the stand are alleged crimes. 18 U.S.C. §§ 1512, 1519. They are pleaded as a personal and political campaign. Those pleaded facts are a forecast of specific evidence sufficient to open limited discovery on whether the certification should stand. The government cannot both certify scope and withhold the Lync messages, the destruction records, and Miller's purpose, and then announce that Plaintiffs have no evidence.

**THE DISCOVERY SOUGHT**

Plaintiffs do not seek merits discovery on every count. They seek discovery fitted to the District of Columbia test: the nature of the conduct, its time and place, its purpose, whether it was actuated by malice or by service of the Bureau, and the policies that governed it. Concretely:

1. Miller's deposition, limited to the acts alleged in Dkt. 82 ¶¶ 12, 77, 84, 86.d–j, 95–100, and 109–10, and to her purpose in those acts;
2. Production of the Lync messages among Miller, Wang, and McLeod concerning attorney-client communications and the 338 items;
3. Production of reports, notes, and recordings of the Bertino interviews and the Lamond visit in which Miller participated or which she directed.

After that record is made, the Court should hold an evidentiary hearing on the scope question before it decides whether the United States is the proper defendant on Count IV. Plaintiffs request that hearing by the separate Request for Evidentiary Hearing filed with this Motion under Local Rule 3.01(i), which states the time necessary; the hearing would proceed under Federal Rule of Civil Procedure 43.

This motion does not seek to hold Miller in Counts I–III, VI, or VII by way of *Westfall*. Those claims are preserved against her by statute. 28 U.S.C. § 2679(b)(2)(A).

This motion does not ask the Court to decide probable cause, qualified immunity, or the merits of malicious prosecution. Those issues are briefed in the contemporaneously filed oppositions.

The scope question should be resolved before the Court rules on Doc. 88, because the certification determines party status and which defenses are available: the FTCA exceptions the government invokes apply only if the United States is substituted for Miller on Count IV. Substitution is therefore a threshold question that should be decided on a developed record, not assumed in order to reach the FTCA defenses.

## LIMITATION AND TIMING

This request does not lift the stay of general discovery or of the case-management conference. It is confined to the three items listed above and to Miller's purpose in the acts alleged in Count IV. Plaintiffs ask that this discovery be completed within 30 days of the Court's order, that the parties file supplemental scope submissions seven days before the hearing, and that the Court defer only the substitution question on Count IV — not the *Bivens*, qualified-immunity, or § 1985 issues briefed in the opposition to Dkt. 87 — until the hearing is held.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Treat as withdrawn, as moot, Plaintiffs' prior motion for a hearing on the August 2025 certification, Dkt. 31;
2. Authorize limited discovery confined to:

a. the deposition of Special Agent Nicole Miller, limited to the acts alleged in Dkt. 82 ¶¶ 12, 77, 84, 86.d–j, 95–100, and 109–10, and to her purpose in those acts;

b. production of the Lync messages among Miller, Wang, and McLeod concerning attorney-client communications and the 338 items of evidence; and

c. production of reports, notes, and recordings of the Bertino interviews and the Lamond visit in which Miller participated or which she directed;

3. Require that this discovery be completed within sixty (60) days of the Court's order, and that the parties file supplemental submissions on scope no later than seven (7) days before the hearing;

4. Set the evidentiary hearing requested by Plaintiffs' accompanying Request for Evidentiary Hearing under Local Rule 3.01(i) and proceeding under Federal Rule of Civil Procedure 43 on whether Miller's alleged Count IV acts were within the scope of employment under District of Columbia law;

5. Defer substitution of the United States for Miller on Count IV until that hearing is concluded; and

6. Leave in place the stay of general discovery and of the case-management conference, if hereafter warranted and granted.

If Miller's conduct was undertaken to serve the Federal Bureau of Investigation, she can say so under oath and on a record. A one-page certification, which does not address the Lync messages, the 338 items, Bertino, or Lamond, is not a substitute for that record.

**Respectfully submitted this 10th day of September, *Anno Domini* 2026.**

__/s/ Thomas F. Ranieri______
Thomas F. Ranieri, Esq.
Va. Bar No. 93150
RANIERI & ASSOCIATES, PLC
212 East 6th Street, Suite B
Front Royal, Virginia 22630
Telephone: 540-551-2330
Email: ranieri@tra-lawfirm.com
*Counsel for Plaintiffs*

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that, on September 10, 2026, counsel conferred with Siegmund F. Fuchs, Esq., counsel for the United States, by email concerning the relief requested in this motion. The parties were unable to resolve the dispute. The United States opposes the motion.

___/s/ Thomas F. Ranieri____
Thomas F. Ranieri, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 10, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participants:

Siegmund F. Fuchs, Esq.

___/s/ Thomas F. Ranieri____
Thomas F. Ranieri, Esq.

**Certification Under Penalty of Perjury that Artificial Intelligence Was Used in the Preparation of This Filing**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: Westlaw and Lexis AI were used for legal research for this filing. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.